James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiffs and the proposed Classes*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MATTHEW OPHEIM, GRETA OPELA, KIA HOLYFIELD, KENNETH ELDRIDGE, CARL POPOLO, KEN BARTON, MATTHEW KIERAN BYRNE, WILLIAM HENDRA, MADELEN TEJADA, ALEXANDER BELL, MELISSA GALLO, SAARA MASSAHOOD, ROBERT MILLS, IVAN CUGEL, KATHY MADORE, LISA LAPRADE, and KELLEY MORGAN, on behalf of themselves and all others similarly situated, | Civil Action No. |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| VOLKSWAGEN AKTIENGESELLSCHAFT, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI AKTIENGESELLSCHAFT and AUDI OF AMERICA, INC., | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     JURISDICTION AND VENUE .......................................................................... 7

III.    PARTIES ............................................................................................................. 8

IV.     FACTUAL ALLEGATIONS ............................................................................ 17

    A.      The Class Vehicles ................................................................................ 17

    B.      Timing Chain Systems .......................................................................... 18

    C.      The Defective Timing Chain System .................................................... 21

    D.      Defendants' Knowledge of the Timing Chain System Defect ............... 29

        1.      Technical Service Bulletins and Technical Tips ....................... 31

        2.      National Highway Traffic Safety Administration Complaints ................. 35

V.      FURTHER ALLEGATIONS ............................................................................ 44

VI.     TOLLING OF THE STATUTE OF LIMITATIONS ....................................... 58

VII.    CLASS ACTION ALLEGATIONS .................................................................. 60

VIII.   CLAIMS FOR RELIEF .................................................................................... 68

    A.      Colorado Counts .................................................................................... 68

    B.      Florida Counts ....................................................................................... 91

    C.      Georgia Counts .................................................................................... 114

    D.      Illinois Counts ..................................................................................... 141

    E.      Massachusetts Counts ......................................................................... 162

    F.      Michigan Counts ................................................................................. 185

    G.      New Jersey Counts .............................................................................. 205

    H.      New York Counts ................................................................................ 228

    I.      North Carolina Counts ......................................................................... 250

    J.      Ohio Counts ......................................................................................... 272

    K.      Oregon Counts ..................................................................................... 295

    L.      Pennsylvania Counts ........................................................................... 317

    M.      Washington Counts ............................................................................. 338

IX.     PRAYER FOR RELIEF ................................................................................. 362

X.      DEMAND FOR JURY TRIAL ...................................................................... 363

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.    INTRODUCTION

1.    Plaintiffs Matthew Opheim, Greta Opela, Kia Holyfield, Kenneth Eldridge, Carl Popolo, Ken Barton, Matthew Kieran Byrne, William Hendra, Madelen Tejada, Alexander Bell, Melissa Gallo, Saara Massahood, Robert Mills, Ivan Cugel, Kathy Madore, Lisa LaPrade, and Kelly Morgan (collectively, "Plaintiffs") bring this class action against Volkswagen Aktiengesellschaft ("VWAG"), Volkswagen Group of America, Inc. ("VW America") (together, "VW"), Audi Aktiengesellschaft ("Audi AG"), and Audi of America, Inc. ("Audi America") (together, "Audi") (collectively, "Defendants"), individually and on behalf of all persons in the United States who purchased or leased a 2012 through 2019 model year VW or Audi vehicles containing the defective Timing Chain System in a 1.8L or 2.0L engine as defined below (the "Class Vehicles") from an authorized VW or Audi dealership, for Defendants' violations of common and statutory law and concealment of a known defect in the Class Vehicles.

2.    Defendants wrongfully and intentionally concealed a defect in the timing chain system of the Class Vehicles, which can fail at any time, forcing Plaintiffs and members of the Classes (defined below) to incur out of pocket costs to repair or replace the damaged engine parts or their entire engine.

---

[1] Counsel's investigation includes an analysis of publicly available information, including Defendants' Technical Service Bulletins, National Highway Traffic Safety Administration documents and consumer complaints, as well as expert analysis of the defective and redesigned timing chain tensioners and timing chains, field investigations conducted by counsel, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

3.      Specifically, the Timing Chain System contains a part known as a "hydraulic chain tensioner" that is designed to keep the camshaft and crankshaft sprockets properly engaged and synchronized by taking up chain slack and applying a certain level of force on the tensioning rail. The Timing Chain System is comprised of the hydraulic chain tensioner, timing chain, chain sprockets, guide rails and tensioning rail, *inter alia* (the "Timing Chain System").  The Timing Chain System is depicted in the figure at paragraph 53, *infra*.

4.      As explained in detail below, the Timing Chain System fails before the end of the useful life of the engine as the result of a defect in design, material, manufacturing, and/or workmanship (the "Timing Chain System Defect" or "Defect").  At a minimum, repairs will exceed $1,000.  In some cases, repairs can cost thousands of dollars.

5.      The engines in the Class Vehicles use a hydraulic timing chain tensioner actuated by engine oil pressure to regulate tension on the timing chain tensioning rail that applies tension to the timing chain.  This tension keeps the timing chain from jumping the teeth on the sprockets that are attached to the camshafts and crankshaft and maintains synchronization between rotating engine components, including the cylinder valves and pistons. Without proper timing chain tension and synchronization, the engine will run very poorly (if at all) and/or, if sufficient chain skip and mis-synchronization occur, its failure to function properly will cause cylinder valves and pistons to collide, resulting in severe internal damage to the engine and/or catastrophic engine failure.

6.      The Timing Chain System Defect presents a significant safety risk for Plaintiffs and members of the Classes because when the Timing Chain System suddenly and unexpectedly fails, Class Vehicles lose engine power, which causes a loss in the ability to accelerate, maintain speed, and/or adequately control the steering wheel or fully engage the brakes.  Thus, drivers and occupants of the Class Vehicles are at risk for rear-end collisions and other accidents as a result of

2

Defendants' failure to disclose the existence of the Timing Chain System Defect and corresponding safety risk.

7.     Despite Defendants' knowledge of the Timing Chain System Defect, Defendants have never disclosed to Plaintiffs and members of the Classes that the Defect exists or that drivers and occupants of the Class Vehicles are at risk.  Notwithstanding the fact that the Timing Chain System should operate normally in vehicles for at least 110,000 or 120,000 driven miles, on information and belief, Defendants have refused to repair or replace the Timing Chain System outside of the time periods covered by the manufacturer's warranties.  Thus, Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Timing Chain System and/or the entire engine, to Plaintiffs and members of the Classes by fraudulently concealing the existence of the Timing Chain System Defect, which Defendants know will typically occur after the expiration of the warranties.  Repairs can range in cost from approximately $1,200.00 (to replace the tensioner and timing chain) to over $10,000.00 (to replace the entire engine).

8.     The Class Vehicles are equipped with engines that contain the Timing Chain System Defect.  As a result of the Defect, these engines are prone to premature failure due to the defective Timing Chain Systems and before the end of the useful life of the engine and before 120,000 driven miles—the lowest number of miles Defendants recommend for regularly scheduled maintenance in Volkswagens. Audis only require inspection of the Timing Chain Systems at 110,000 driven miles. Defendants designed, manufactured, imported, distributed, marketed and/or sold Class Vehicles with the Timing Chain System Defect.

9.     On information and belief, the Timing Chain System Defect is contained in at least the following VW and Audi vehicles containing 1.8L or 2.0L engines: certain 2012-2014 VW

3

Beetle; 2015-2018 VW Beetle; certain 2013-2014 VW Beetle Convertible; 2015-2017 VW Beetle Convertible; certain 2012 VW CC; 2013-2017 VW CC; 2012 VW Eos; 2013-2016 VW Eos; certain 2012 VW GTI; 2013-2018 VW GTI;  2015-2018 VW Jetta Sedan; certain 2012-2014 VW Jetta GLI; 2015-2018 VW Jetta GLI; 2014-2019 VW Passat Sedan; certain 2012-2013 VW Tiguan; 2014-2018 VW Tiguan; 2015-2018 VW Golf; certain 2012 Audi A3; 2013-2018 Audi A3; certain 2012-2013 Audi A4; 2014-2018 Audi A4; certain 2012-2013 Audi A5; 2014-2018 Audi A5; certain 2012 Audi A6; 2013-2018 Audi A6; certain 2012 Audi TT; 2013-2018 Audi TT; certain 2012 Audi Q5; 2013-2018 Audi Q5; and 2015-2018 Audi Q3 (the "Class Vehicles").

10.    Based on Defendants' representations in the USA Warranty and Maintenance schedules for the Class Vehicles, the Timing Chain System is expected to last for the useful life of the engine or at least 120,000 miles without the need for maintenance, repair or replacement.  For example, owners and lessees of Class Vehicles were provided owner's manuals and USA Warranty and Maintenance schedules that do not show any Timing Chain System inspection or maintenance within the first 110,000-120,000 miles.[2]  Indeed, the Timing Chain System is omitted from the maintenance schedules in Volkswagen and Audi models entirely.

11.    Defendants provide warranty coverage for Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty that includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first" which

---

[2] *See, e.g.*, Exhibit A (summarizing maintenance schedule and not showing any scheduled Timing Chain System maintenance for 120,000 miles for VW vehicles); *see also* Exhibit B (not showing any scheduled Timing Chain System inspection for 110,000 miles for Audi vehicles).

covers "all internal [engine] parts."[3]  Under warranties provided to members of the Classes, Defendants promised to repair or replace defective Class Vehicle engine components arising out of defects in materials and/or workmanship, such as the Timing Chain System Defect, at no cost to owners or lessees of the Class Vehicles.  These warranties were provided in Class Vehicle window labels, owner's manuals and brochures, and advertised on Defendants' websites.

12.    Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Timing Chain System.  Because the Timing Chain System Defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Timing Chain System under the terms of the warranties.  Further, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures likely would occur outside of the warranty periods and have wrongfully transferred the costs of repair or replacement to Plaintiffs and members of the Classes through Defendants' fraudulent concealment of the Defect.  These costs are significant and range in the thousands of dollars, and no reasonable consumer expects to incur such costs during the useful life of the engine, especially given Defendants' representations in the USA Warranty and Maintenance schedules.

13.    Knowledge and information regarding the Timing Chain System Defect was in the exclusive and superior possession of Defendants and their dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the Defect through due

---

[3] Beginning for model year 2018, nearly all Volkswagen models were given a 6-year, 72,000 bumper to bumper warranty.

diligence.  Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers, *inter alia*, Defendants were aware of the premature failure of the Timing Chain System in the Class Vehicles and fraudulently concealed the Defect from Plaintiffs and members of the Classes.

14.    Defendants misrepresented the standard, quality or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the Timing Chain System Defect to increase profits and decrease costs by selling additional Class Vehicles and transferring the costs of repair or replacement of the Timing Chain System to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes.

15.    On information and belief, Defendants acknowledged the Timing Chain System Defect by releasing several Technical Service Bulletins ("TSBs") describing the issue to their exclusive network of dealerships beginning in or around June 2010.  After subsequently redesigning the timing chain tensioner in 2012, Defendants acknowledged that the Timing Chain System Defect persisted by releasing Technical Tips instructing their exclusive network of dealerships to inspect the tensioner for failure or the timing chain for stretching in or around October 2018.

16.    Plaintiffs and members of the Classes assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., unjust enrichment, and violations of consumer fraud and unfair and deceptive trade practices statutes under the laws of Colorado, Florida, Georgia, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Oregon, Pennsylvania, and Washington.

17.     Defendants knowingly omitted, concealed and suppressed material facts regarding the Timing Chain System Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs and members of the Classes. As alleged herein, Defendants' wrongful conduct has harmed owners and lessees of the Class Vehicles, and Plaintiffs and members of the Classes are entitled to damages and injunctive and declaratory relief.

18.     As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have suffered damages, including, *inter alia*: (1) deprivation of the benefit of their bargain by overpaying for the Class Vehicles at the time of sale or lease; (2) out-of-pocket expenses for repair or replacement of the Timing Chain System, other engine parts, or the entire engine; (3) costs for future repairs or replacements; (4) sale of their Class Vehicle at a loss; and/or (5) diminished value of their Class Vehicles.

## II.    JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendant is a citizen. This Court has jurisdiction over supplemental state law claims pursuant to 20 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

20.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because VW America is incorporated in New Jersey, and Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business

in the District.  Defendants' actions have caused harm to Plaintiffs Byrne and Tejada, New Jersey residents, as well as hundreds of members of the Classes residing in New Jersey.  VW America and Audi America maintain the following offices and/or facilities in New Jersey: (1) the "VW/Audi VCI Eastern Region" in Woodcliff, New Jersey; (2) the "VW/Audi Test Center" in Allendale, New Jersey; (3) the "Product Liaison Group" in Fort Lee, New Jersey; (4) and the "Parts/Region Distribution Center" in Cranbury, New Jersey.[4]  Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

## III.    PARTIES

### PLAINTIFFS

21.    Plaintiff Opheim is a citizen of the State of Colorado and resides in Highlands Ranch, Colorado.  On or around August 16, 2013, Plaintiff Opheim bought a 2013 Audi A4 equipped with a 2.0 TSI engine in Colorado for personal or household use.  On or around October 24, 2017, Plaintiff Opheim's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 91,000 miles.  As a result of the Timing Chain System Defect, Plaintiff Opheim was forced to pay approximately $6,039 to have his vehicle diagnosed and repaired.

22.    Plaintiff Opela is a citizen of the State of Florida and resides in Lithia, Florida.  On or around December 2014, Plaintiff Opela bought a 2014 Audi Q5 equipped with a 2.0 TSI engine

---

[4] *See Volkswagen Group of America Locations*, VOLKSWAGEN GROUP OF AMERICA, http://www.volkswagengroupofamerica.com/locations (last visited Mar. 5, 2020).

in Florida for personal or household use.  On or about December 3, 2016, Plaintiff Opela's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 60,000 miles.  As a result of the Timing Chain System Defect, Plaintiff Opela was forced to pay approximately $5,763 to have her vehicle diagnosed and repaired.

23.     Plaintiff Holyfield is a citizen of the State of Georgia and resides in Alpharetta, Georgia. On or around July 11, 2015, Plaintiff Holyfield bought a 2012 Audi Q5 equipped with a 2.0L TSI engine in Georgia for personal or household use.  On or around December 18, 2018, Plaintiff Holyfield's vehicle experienced the Timing Chain System Defect without any warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 79,740 miles.  As a result of the Timing Chain System Defect, Plaintiff Holyfield was forced to pay approximately $2,017 to have her vehicle diagnosed and repaired.

24.     Plaintiff Eldridge is a citizen of the State of Illinois and resides in McHenry, Illinois.  On or around February 2019, Plaintiff Eldridge bought a 2013 Audi Q5 equipped with a 2.0L TSI engine in Illinois for personal or household use.  On or around July 2, 2019, Plaintiff Eldridge's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 91,611 miles.  As a result of the Timing Chain System Defect, Plaintiff Eldridge was forced to pay approximately $3,239 to have his vehicle diagnosed and repaired.

25.    Plaintiff Popolo is a citizen of the Commonwealth of Massachusetts and resides in Carlisle, Massachusetts. On or around September 2016, Plaintiff Popolo bought a 2013 Audi A5 equipped with a 2.0L TSI engine in Massachusetts for personal or household use.  On or around May 5, 2019, Plaintiff Popolo's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 51,000 miles.  As a result of the Timing Chain System Defect, Plaintiff Popolo was forced to pay approximately $6,400 to have his vehicle diagnosed and repaired.

26.    Plaintiff Barton is a citizen of the State of Michigan and resides in Troy, Michigan. On or around August 21, 2015, Plaintiff Barton bought a 2013 Audi A4 equipped with a 2.0L TSI engine in Michigan for personal or household use.  On or around October 19, 2018, Plaintiff Barton's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 75,655 miles.  As a result of the Timing Chain System Defect, Plaintiff Barton was forced to pay approximately $3,900 to have his vehicle diagnosed and repaired.

27.    Plaintiff Byrne is a citizen of the State of New Jersey and resides in Boonton Township, New Jersey. On or around May 2, 2016, Plaintiff Byrne bought a 2013 Audi A4 equipped with a 2.0L TSI engine in New Jersey for personal or household use.  On or around June 29, 2018, Plaintiff Byrne's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem

with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 52,132 miles.  As a result of the Timing Chain System Defect, Plaintiff Byrne was forced to pay approximately $9,088 to have his vehicle diagnosed and repaired (and lost the use of his vehicle requiring $874.10 in rental car fees).

28.     Plaintiff Hendra is a citizen of the State of New Jersey and resides in Summit, New Jersey.  On or around May 3, 2013, Plaintiff Hendra bought a 2013 Audi Q5 equipped with a 2.0 TSI engine in New Jersey for personal or household use.  On or around September 5, 2017, Plaintiff Hendra's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 59,000 miles.  As a result of the Timing Chain System Defect, Plaintiff Hendra was forced to pay approximately $2,692 to have his vehicle diagnosed and repaired.

29.     Plaintiff Tejada is a citizen of the State of New Jersey and resides in Lincroft, New Jersey. On or around August 20, 2013, Plaintiff Tejada bought a 2014 Audi A4 equipped with a 2.0L TSI engine in New Jersey for personal or household use.  On or around late May/early June 2019, Plaintiff Tejada's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 49,005 miles.  As a result of the Timing Chain System Defect, Plaintiff Tejada was forced to pay approximately $5,607 to have her vehicle diagnosed and repaired.

30.     Plaintiff Bell is a citizen of the State of New York and resides in Buffalo, New York. On or around August 8, 2018, Plaintiff Bell bought a 2014 Audi A6 equipped with a 2.0L

TSI engine in New York for personal or household use.  On or around September 10, 2018, Plaintiff Bell's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 85,000 miles.  As a result of the Timing Chain System Defect, Plaintiff Bell was forced to pay approximately $2,000 to have his vehicle diagnosed and repaired.

31.    Plaintiff Gallo is a citizen of the State of New York and resides in Huntington, New York. On or around December 14, 2015, Plaintiff Gallo Bought a 2012 Audi Q5 equipped with a 2.0L TSI engine in New York for personal or household use.  On or around September 21, 2018, Plaintiff Gallo's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 84,172 miles.  As a result of the Timing Chain System Defect, Plaintiff Gallo was forced to pay approximately $5,985 to have her vehicle diagnosed and repaired.

32.    Plaintiff Massahood is a citizen of the State of New York and resides in Lindenhurst, New York.  On or around January 4, 2014, Plaintiff Massahood bought a 2014 Audi A5 Coupe equipped with a 2.0L TSI engine in New York for personal or household use.  On or around August 13, 2019, Plaintiff Massahood's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 58,565 miles.  As a result of the Timing System Chain Defect, Plaintiff Massahood was forced to pay approximately $2,070 to have her vehicle diagnosed and repaired.

33.    Plaintiff Mills is a citizen of the State of North Carolina and resides in Charlotte, North Carolina.  On or around May 26, 2014, Plaintiff Mills bought a 2014 Audi Q5 equipped with a 2.0L TSI engine in North Carolina for personal or household use.  On or around November 16, 2018, Plaintiff Mills's vehicle experienced a Timing Chain System Defect, which caused catastrophic engine failure, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as a result of the Timing Chain System Defect and occurred at or around 27,000 miles.  As a result of the Timing Chain System Defect, Plaintiff Mills was forced to pay approximately $2,077 to have his vehicle diagnosed and repaired.

34.    Plaintiff Cugel is a citizen of the State of Ohio and resides in University Heights, Ohio. On or around March 11, 2013, Plaintiff Cugel, bought a 2013 Audi Q5 equipped with a 2.0L TSI engine in Ohio for personal or household use.  On or around December 1, 2017, Plaintiff Cugel's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 85,488 miles.  As a result of the Timing Chain System Defect, Plaintiff Cugel was forced to pay approximately $3,010 to have his vehicle diagnosed and repaired.

35.    Plaintiff Madore is a citizen of the State of Oregon and resides in Portland, Oregon. On or around February 29, 2012, Plaintiff Madore bought a 2012 Audi A4 2.0T Avant equipped with a 2.0L TSI engine in Oregon for personal or household use.  On or around October 20, 2018, Plaintiff Madore's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine.  The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 75,391 miles.  As a result of the Timing Chain System

Defect, Plaintiff Madore was forced to pay approximately $4,738 to have her vehicle diagnosed and repaired.

36.     Plaintiff LaPrade is a citizen of the Commonwealth of Pennsylvania and resides in Limerick, Pennsylvania. On or around February 2013, Plaintiff LaPrade bought a 2013 Volkswagen CC Sport equipped with a 2.0L TSI engine in Pennsylvania for personal or household use. On or around June 10, 2017, Plaintiff LaPrade's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 81,500 miles. As a result of the Timing Chain System Defect, Plaintiff LaPrade was forced to pay approximately $4,610 to have her vehicle diagnosed and repaired.

37.     Plaintiff Morgan is a citizen of the State of Washington and resides in Olympia, Washington. On or around October, 2015, Plaintiff Morgan bought a 2013 A4 equipped with a 2.0L TSI engine in Washington State for personal and business use. On or around September 23, 2018, Plaintiff Morgan's vehicle experienced the Timing Chain System Defect, which caused catastrophic failure of the vehicle's engine, without any prior warning that there was a problem with the vehicle's engine. The engine failure was diagnosed as the result of the Timing Chain System Defect and occurred at or around 82,000 miles. As a result of the Timing Chain System Defect, Plaintiff Morgan was forced to pay approximately $4,067 to have her vehicle diagnosed and repaired.

38.     None of the advertisements reviewed or representations received by Plaintiffs and members of the Classes contained any disclosure relating to the Timing Chain System Defect or premature failure of the Timing Chain System in the Class Vehicles. Had Defendants disclosed

that the Timing Chain System Defect would require Plaintiffs to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts, and/or the engine, Plaintiffs and members of the Classes would not have purchased or leased their Class Vehicles, or would have paid less for their Class Vehicles.

39.     When Plaintiffs and members of the Classes purchased and/or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk. Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs and Members of the Classes would not have purchased or leased the Class Vehicles, or would have paid less for their Class Vehicles. Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs and members of the Classes would have demanded repair or replacement during the warranty periods at no cost to Plaintiffs and members of the Classes—as provided for in Defendants' warranties. Defendants represented that the class engine timing chain and associated components such as the chain tensioner and rails would be maintenance free up to and including 110,000 miles for Audi vehicles and 120,000 miles for Volkswagen vehicles.

40.     The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used. Plaintiffs and members of the Classes have suffered an ascertainable loss as a result of Defendants' deceptive conduct, breach of common law and statutory duties, and omissions and/or misrepresentations associated with the Timing Chain System Defect, including but not limited to, out-of-pocket losses and/or the costs of future repairs or replacements, and diminished performance and value of their respective vehicles.

41.     Neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs and members of the Classes of the Timing Chain System Defect prior to the purchase or lease of the Class Vehicles.

## DEFENDANTS

42.     Defendant VWAG is a German corporation with its principal place of business in Wolfsburg, Germany.  VWAG is one of the largest automobile manufacturers in the world, and is in the business of designing, developing, manufacturing, and selling automobiles.  VWAG is the parent corporation of VW America and Audi AG.

43.     Defendant VW America is a New Jersey corporation doing business throughout the United States.  VW America's corporate headquarters is located in Herndon, Virginia.  VW America is a wholly-owned U.S. subsidiary of VWAG, and it engages in business activities in furtherance of the interests of VWAG, including the advertising, marketing and sale of VW automobiles nationwide.

44.     Audi AG is a German corporation with its principal place of business in Ingolstadt, Germany and is a wholly-owned subsidiary of VW AG.  Audi AG is the parent of Audi America and the Audi Group.  Audi AG designs, develops, manufactures, and sells luxury automobiles under the Audi brand name.

45.     Audi America is a Delaware corporation with its principal place of business located in Herndon, Virginia.  Audi America is a wholly-owned U.S. subsidiary of Audi AG, and it engages in business, including the advertising, marketing, and sale of Audi automobiles nationwide.

46.     At all relevant times, VW America and Audi America acted as authorized agents, representatives, servants, employees and/or alter egos of VW AG and Audi AG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of

16

technical information, and monitoring the performance of VW and Audi vehicles in the United States, including substantial activities that occurred within this jurisdiction.

47.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the VW and Audi brand names throughout the United States.  Defendants and/or their agents designed, manufactured, and/or installed the Timing Chain System in the Class Vehicles.  Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

## IV.     FACTUAL ALLEGATIONS

### A.     The Class Vehicles

48.     Defendants are major manufacturers of vehicles sold under the VW and Audi brands throughout the United States.  Defendants designed, manufactured, imported, distributed, marketed, and/or sold the Class Vehicles in the United States.  Defendants also provided service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

49.     Plaintiffs and members of the Classes purchased, leased, and/or own Class Vehicles.

50.     The Class Vehicles are equipped with chain-driven engines containing the Timing Chain System Defect which is prone to premature failure, creating a safety risk, forcing Plaintiffs and members of the Classes to pay thousands of dollars to repair or replace the damaged engine parts or entire engine, and causing Plaintiffs and members of the Classes to overpay for their Class Vehicles at the time of sale or lease.

51.     Prior to the introduction of the chain-driven engines, VW and Audi used timing belts to synchronize the crankshaft and the camshafts.  Beginning in the model year 2008, VW and

17

Audi began to use engines with timing chains to synchronize the operation of the crankshaft with the camshafts.

52.    Generally, a timing chain and a timing belt perform the same function, synchronizing the crankshaft with the camshaft(s).  However, noise level, cost-savings, and maintenance considerations, among others, influence a vehicle manufacturer's decision to use a timing chain or timing belt system.  Timing chains usually last considerably longer than timing belts and are expected to last for the useful life of the engine.

**B.    Timing Chain Systems**

53.    In order for a conventional four stroke internal combustion engine to function, fuel and air must be mixed in a cylinder.  The resulting "combustion" causes the piston(s) to reciprocate and the crankshaft to rotate.  Waste products of the combustion process are then removed to permit further combustion to occur.  In a conventional gasoline powered automobile, the combustion occurs in an engine cylinder.  The addition of fuel and air and the removal of combustion products must occur in a carefully regulated sequence to permit the engine to operate.

54.    To regulate the addition of fuel and air and removal of byproducts, all Class Vehicles contain a timing system that controls the timing of the opening and closing of the engine's intake valves (responsible for releasing fuel and air into the engine cylinder) and exhaust valves (responsible for clearing the byproducts of combusted fuel and air).  A timing chain connects the crankshaft (connected to the pistons) to the camshaft—which opens and closes the cylinder valves. The camshaft is designed to open and close the intake valves and exhaust valves in specifically timed intervals synchronized to the pistons.

55.    The Class Vehicles have engines which use a double overhead camshaft ("DOHC") configuration with two camshafts connected to the crankshaft by a timing chain to ensure that the operating cycle is timed correctly.  These engines are a type of four-stroke engine in which one or

more of the intake valves or the exhaust valves, in the fully open position, extend into the area into which the piston also travels.  Thus, if the camshaft timing is sufficiently off due to a stretched, broken, or dislocated timing chain, catastrophic engine failure occurs because the pistons will slam into the valves, leading to damaged pistons or valves (or both) and requiring expensive repair or replacement of the engine.  Figure 1, below, is a diagram of the labeled components of a DOHC engine with one dedicated camshaft to regulate the intake valves and one dedicated camshaft to regulate the exhaust valves.

**E**: the exhaust camshaft

**I**: the intake camshaft

**S**: the spark plug

**V**: the valves



**P**: the piston

**R**: the Piston connecting rod

**C**: the crankshaft

**W**: water jacket for coolant flow

FIGURE 1

19

56.    The four-stroke cycle is demonstrated by Figures 2 through 5 below.

FIGURE 2                FIGURE 3                FIGURE 4                FIGURE 5



57.    Figure 2 shows the intake camshaft depressing the intake valve so that the fuel and air mixture can enter into the piston combustion chamber.  Figure 3 shows the intake valve camshaft and the exhaust valve camshaft disengaged from their respective valves so that the piston chamber is closed and the rising piston can compress the air and fuel right below the spark plug for optimal combustion.  Figure 4 shows the spark plug combusting the compressed air and fuel mixture in the now sealed chamber to drive the piston down.  And finally, Figure 5 shows the exhaust camshaft depressing the exhaust valve to open the valve so that the rising piston can expel the combusted air and fuel mixture.  The same process repeats itself for all of a vehicle's pistons in a synchronized fashion.

58.    For this four-stroke cycle to operate as designed, the crankshaft and the camshafts have to be connected so that piston movement and opening and closing of valves are fully synchronized.  A physical connection between the crankshaft and camshaft is typically maintained

through the use of a timing belt or a timing chain.  The Class Vehicles use a timing chain to make the connection between the crankshaft and the camshaft.  When the timing system fails, synchronization is lost and the four-stroke cycle will be disrupted causing an inability to start, accelerate or maintain speed, immediate power loss, and/or catastrophic engine failure.  When a piston drives into open valves, massive damage can be caused to the engine and it will suddenly fail.  Numerous dangerous conditions occur when the engine suddenly fails, including that the power assisted brakes and power steering system may cease operating.  Thus, additional force is required to steer and stop the vehicle.

59.    A properly functioning Timing Chain System is crucial to the safe and reliable operation of the Class Vehicles.

## C.    The Defective Timing Chain System

60.    Based on Defendants' representations in the USA Warranty and Maintenance schedules provided with the Class Vehicles, a Timing Chain System is intended and reasonably expected to last for the useful life of the engine and at least between 110,000 and 120,000 miles without the need for inspection, repair or replacement.  According to the Class Vehicles' maintenance schedules, the Timing Chain System in the Class Vehicles is expected to last beyond the warranty periods and should not require maintenance during the useful life of the engine.  For example, the Volkswagen 2015 Golf maintenance schedule does not require maintenance of the Timing Chain System within 120,000 miles (the highest number of miles shown in the maintenance schedule) and the 2015 Audi maintenance schedule (for all models) does not require maintenance of the Timing Chain System until 110,000 miles (the highest number of miles shown in the maintenance schedule).  *See* Exhibits A and B.  Thus, the failure of the Timing Chain System in the Class Vehicles occurs prematurely and before any reasonable consumer would expect the failure to occur.

21

61.    The figure below depicts the Timing Chain System in Class Vehicles:

FIGURE 6



62.    One part that has been identified as the source of the Defect in the Timing Chain System is labeled the "Hydraulic Tensioner, Camshaft Chain Drive" (the "Chain Tensioner") in the above illustration.  The Chain Tensioner is an internal engine component that automatically controls tension on the timing chain and prevents it from skipping.  The Chain Tensioner is critical because if tension is not maintained on the timing chain, the chain can "jump a tooth" on a camshaft drive sprocket and set off a chain reaction—causing bent valves, extensive damage to engine parts, and catastrophic failure of the engine.

63.    The Chain Tensioner controls tension by utilizing oil pressure augmented by an internal spring to push an integrated piston with a controlled force against a timing chain tensioning

rail that presses against the chain and keeps it in proper tension. There is only oil pressure, however, when the vehicle is turned on and the engine is running. When the vehicle is turned off and during startup, when there is no oil pressure or oil pressure is low, the Chain Tensioner uses a mechanical mechanism to keep the piston from collapsing and releasing the tension in order to keep the chain tight.

64.    A previously-used Chain Tensioner in Defendants' Timing Chain Systems, part number 06H 109 467 followed by the suffix N, AB, or T, was defective, as illustrated below:

FIGURE 7                                          FIGURE 8

 

FIGURE 9                                          FIGURE 10

 

65.    As shown in Figures 7, 8, and 9, the mechanical mechanism incorporates a steel retainer clip, piston retainer pin, ratchet pawl, and piston teeth to keep the piston in place when the vehicle is off and there is no oil pressure.

66.    As Figure 10 demonstrates, the ratchet pawl failed on this original defective tensioner and caused the tension on the timing chain to be lost when the engine was off, allowing the timing chain to "jump a tooth" during startup, leading to bent intake valves and catastrophic engine failure.

67.    With the exclusive and superior knowledge that the Chain Tensioner exhibited defects that caused the timing chain to skip a sprocket thereby disrupting the engine timing, Defendants redesigned the Chain Tensioner in or around 2012.  The redesigned chain tensioner is part number 06K 109 467 (with various letter suffixes) (the "Redesigned Tensioner").

68.    This Redesigned Tensioner, however, is also defective.  Plaintiffs retained a consultant with a Ph.D. in mechanical engineering and an extensive engineering mechanical design background to conduct a preliminary analysis of the Timing Chain System, including the Redesigned Tensioner.  Plaintiffs' consultant analyzed a defective Redesigned Tensioner that was taken from a Class Vehicle that experienced engine failure as a result of the Timing Chain System Defect.

69.    As described by Plaintiffs' consultant, this Redesigned Tensioner has an internal piston which forces the plunger to extend out to the left, when it is acted on by the engine oil pressure whenever the engine is running and tightens up the tension on the timing chain.  When the engine is shut off, the oil pressure goes to zero and the force from the piston against the plunger relaxes.  The plunger needs to remain in the extended position so that the chain will already be properly tensioned the next time the engine is started.  As a result, the Redesigned Tensioner has

an internal ratchet mechanism inside, which holds the plunger out in its extended position, and does not let it go back into the body of the tensioner, as seen in Figure 11.  If the tensioner was functioning properly, the plunger would remain in the extended position when the engine's crankshaft is rotated while the engine is shut off.

FIGURE 11



70.    However, when the crankshaft was rotated by hand and the chain was moved by rotation of the crankshaft sprocket, the tensioner's plunger moved in and out between a retracted position and an extended position. *See* Figures 12a (retracted position) and 12b (extended position), below.   This in-and-out movement of the plunger while the crankshaft is rotated indicates that the tensioner, and its internal ratchet mechanism, has failed.  This failure is similar to failure of the original Defective Tensioner.



FIGURE 12a                          FIGURE 12b

71.    Indeed, in the Class Vehicle inspected, timing marks on the timing chain and the sprockets indicated that the chain in the engine with the Redesigned Tensioner had "skipped a tooth" on the crankshaft sprocket, as shown in Figure 13, below.  The mark at location A on the exhaust camshaft sprocket should line up with the blank link at location B on the timing chain. The black chain link is seen to be "one tooth off" of aligning with the mark on the sprocket.  The resulting improper timing between the pistons, which are attached to the crankshaft, and the valves,

which are actuated by the camshafts, likely caused the valves to collide with the pistons, causing catastrophic engine damage.



FIGURE 13

72.    Based on this preliminary analysis of the Redesigned Tensioner, it is likely that a materially significant number of vehicles with the Redesigned Tensioner will experience early failures before the useful life of the Redesigned Tensioner is attained.  Given that the Redesigned Tensioner is integral to the engine and is time-consuming and expensive to replace, the useful life of the Chain Tensioner is co-extensive with the useful life of the engine.

73.    There are multiple blogs and websites maintained by automotive enthusiasts who have shared their timing chain failure with other Class Vehicle owners and individuals.  These sites have hundreds of entries and thousands of viewings concerning failed Timing Chain Systems

in VW and Audi vehicles, including the Class Vehicles.[5]  Independent Volkswagen and Audi vehicle repair shops also have posted a description of the Timing Chain System failures on their websites.[6]

74.     No reasonable consumer expects to spend thousands of dollars to repair or replace essential engine components (or the entire engine) during the useful life of the engine.  Further, Plaintiffs and members of the Classes do not reasonably expect their Timing Chain System to fail before the end of the useful life of the engine (*see supra*, ¶¶ 7-8 & n.3) or to pay to repair or replace their Timing Chain System or engine in the event of a Timing Chain System failure.  As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Classes have been or will be forced to pay thousands of dollars to replace or repair the Timing Chain System, other parts affected by the system's failure, and/or the entire engine and have overpaid for their Class Vehicles.

75.     As detailed herein, Plaintiffs and members of the Classes suffered deprivation of the benefit of their bargain at the time of sale or lease, diminished market value and other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' material misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Timing Chain System Defect.  The fact that the Timing Chain System is prone to premature failure is material to Plaintiffs and members of the Classes because it subjects Plaintiffs and members of the Classes to overpayment, unexpected costs of repair or replacement

---

[5]   *See, e.g.*, *Thread: 2014 audi a4 timing chain failure*, AUDIZINE, https://www.audizine.com/forum/showthread.php/837256-2014-audi-a4-timing-chain-failure (last visited Mar. 5, 2020).

[6] *See, e.g.*, *Stretched Timing Chain Audi A4*, FLUID MOTOR UNION, http://www.fluidmotorunion. com/audi-stretched-timing-chain/ (last visited Mar. 5, 2020); Greg Phillips, *Hydraulic Timing Chain Tensioner Failure in an Audi*, AUTOBAHN AUTOMOTIVE SERVICE (Mar. 24, 2019), https://www.autobahnautomotive.com/hydraulic-timing-chain-tensioner-failure-in-an-audi/.

ranging in the thousands of dollars, and because the sudden failure of the Timing Chain System presents a risk of injury and/or death to drivers and passengers of the Class Vehicles.

76.    The Timing Chain System is an integral component of the engines in the Class Vehicles and its failure can lead to the inability to accelerate or maintain speed and/or catastrophic engine failure.  These types of failures subject drivers and passengers of the Class Vehicles to safety risks, including the potential for rear-end collisions and other accidents.  As a result of Defendants' material misrepresentations and omissions, including the failure to disclose that the Class Vehicles contain the Timing Chain System Defect, Defendants have recklessly placed Plaintiffs and members of the Classes and the occupants of the Class Vehicles at risk.

**D.        Defendants' Knowledge of the Timing Chain System Defect**

77.    Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiffs and members of the Classes the Defect in the Class Vehicles even though Defendants knew or should have known of design and/or manufacturing defects in Class Vehicles if Defendants had adequately tested the Timing Chain Systems and engines in the vehicles.

78.    Knowledge and information regarding the Timing Chain System Defect were in the exclusive and superior possession of Defendants and their dealers, and that information was not provided to Plaintiffs and members of the Classes.  Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty and replacement part data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the Timing Chain System Defect in the Class Vehicles and fraudulently concealed the Defect and safety risk from Plaintiffs and members of the Classes.

Defendants knew, or should have known, that the Timing Chain System Defect was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

79.     Defendants had actual knowledge that design, manufacturing, materials and/or workmanship defects were causing the Timing Chain System Defect shortly after production of the Class Vehicles commenced.  Defendants engaged in extensive field research and quality investigations and analysis before redesigning the specifications for the defective part, rebidding the new part and manufacturing and distributing the new part, which was intended to replace a part they had previously determined to be defective.  In addition, Defendants have and continue to be under a legal obligation pursuant to federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them.  Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein in order to comply with their reporting obligations under federal law.

80.     Defendants knew that any defect that can potentially lead to engine failure, such as the Timing Chain System Defect, presents a serious safety risk.  Numerous dangerous conditions occur when the engine suddenly fails, including that the power assisted brakes may cease operating and the power steering system fails.  Thus, additional force is required to steer and stop the vehicle, and drivers and occupants are at risk for accidents.

81.     Notwithstanding Defendants' exclusive and superior knowledge of the Timing Chain System Defect, Defendants failed to disclose the Defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the Defect through and including the 2019 model year.  Defendants have intentionally

concealed that Timing Chain System Defect and that the Timing Chain System is prone to premature failure and presents a safety risk rather than disclosing the Defect and risk to consumers, including Plaintiffs, members of the Classes, and the public.

### 1.    Technical Service Bulletins and Technical Tips

82.    On information and belief, as a result of their exclusive and superior knowledge regarding the Timing Chain System Defect, Defendants released several TSBs describing the issue to their exclusive network of dealerships beginning in or around June 2010.

83.    On or around June 8, 2010, Defendants released a TSB (TSB-15-10-04) describing timing chain issues with the following 2009 model year Audi vehicles: Audi A3; Audi A4; and Audi TT.  NHTSA summarized the TSB as follows: "AUDI: MIL ON; **NOISE FROM TIMING CHAIN** (DTC P001600). MIL ON; **ENGINE DIFFICULT TO START**; SOMETIMES RATTLE IN ENGINE COMPARTMENT; BANK 1, CAMSHAFT POSITION G40/CRANKSHAFT POSITION SENSOR G28, WRONG ASSIGNMENT STORED IN ENGINE CONTROL UNIT, POSSIBLE DAMAGE TO CAMSHAFT OR CAMSHAFT BEAR SURFACES. *PE."  Exhibit C (emphasis added).

84.    On or around April 15, 2011, Defendants released a second TSB (TSB-15-11-21) describing timing chain issues with the following 2009 model year Audi vehicles: Audi A3; Audi A4; Audi TT.  NHTSA summarized the TSB as follows: "VOLKSWAGEN: MALFUNCTION LIGHT IS ON AND **THERE IS NOISE FROM THE TIMING CHAIN**. **ENGINE IS DIFFICULT TO START** AND THERE ARE TWO POSSIBLE TROUBLE CODES STORED. THERE IS POSSIBLE DAMAGE TO THE CAMSHAFT. *RM."  Exhibit D (emphasis added).

85.    On or around July 23, 2012, VW released a TSB describing problems associated with the Timing Chain System Defect in 2008-2013 model year vehicles with 2.0L CCTA and CBFA engines.  The TSB warned that owners or lessees of vehicles with the Timing Chain System

Defect may experience: "**Engine Rattling Noises after Start, Engine Doesn't Start, Timing Chain Slipped**." Exhibit E at 1 (the "2012 TSB").

86.    The 2012 TSB applied to the following VW vehicles: 2008-2010 and 2012 VW Beetle; 2009-2013 VW CC; 2008-2012 VW EOS; 2008-2012 VW Golf; 2008-2012 VW GTI; 2008-2012 VW Jetta; 2008-2012 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-2012 VW Routan; 2008-2012 VW Tiguan; 2008-2013 VW Touareg; and 2011 VW Touareg Hybrid.

87.    Under Technical Background, the 2012 TSB states: "[t]iming chain tension may be incorrect due to tensioner" and "[a]s a result, the timing chain can skip and causing [sic] contact between the pistons and valves." *Id.* at 1 (emphasis added).

88.    At the time the 2012 TSB was released, dealers were instructed to repair the Timing Chain System Defect when customers complained of (1) "[r]attling noises after engine start from front of vehicle or engine compartment"; (2) "[e]ngine does not start"; or (3) "MIL ON." *Id.* at 1.

89.    The 2012 TSB included the two images below depicting the correct and incorrect position of the piston within the Chain Tensioner body. *See id.* at 3. In Figure 14, the Chain Tensioner piston is in the wrong position because it is retracted and incapable of exerting force against the guide rail and timing chain—VW described it as "Timing chain tensioner incorrect." *Id.* In Figure 15, the Chain Tensioner piston is in the correct position because it is extended and capable of exerting force against the guide rail and timing chain—VW described it as "Timing chain tensioner correct." *Id.*

 

FIGURE 14                                      FIGURE 15

90.     The 2012 TSB superseded a previous TSB relating to the Timing Chain System

Defect, which was issued to VW dealerships on or around December 22, 2011 (T.B. V151104).

Minimal changes were made to the revised TSB, which simply removed "European exhaust

warning light reference in text" and added "additional model year applicability." *Id.* Although

the 2011 TSB is not publically available, NHTSA summarized the TSB as follows:

"**VOLKSWAGEN: CERTAIN MODELS ARE EXPERIENCING ENGINE NOT

STARTING, MAKING A RATTLING NOISE WHEN ENGINE HAS STARTED, TIMING

CHAIN KEEPS SLIPPING AND EXHAUST LIGHT COMES ON. \*PE.**"  Exhibit F (the

"2011 TSB").

91.     According to NHTSA, the 2011 TSB applied to the following vehicles: 2008-2010

VW Beetle; 2009-2011 VW CC; 2008-2011 VW EOS; 2008-2011 VW Golf; 2008-2011 VW GTI;

2008-2011 VW Jetta; 2008-2010 VW Passat; 2008-2011 VW R32; 2008-2010 VW Rabbit; 2009-

2011 VW Routan; 2008-2011 VW Tiguan; 2008-2011 VW Touareg; and 2011 VW Touareg

Hybrid.

92.     Subsequently, on October 19, 2018, VW released Technical Tip 10-18-01TT –

**Rattle Noise on Start Up, with Camshaft Timing Faults**.  Despite this issue being related to a

33

possible faulty camshaft, the first step in diagnosing and repairing the problem was related to the timing chain and the timing chain tensioner. "First check the timing chain for a failed tensioner or a stretched chain." This Technical Tip applied to 2010-2018 VW Jetta, Golf, GTI, Passat, CC, EOS, Beetle, Beetle Convertible, and Tiguan models, which included vehicles with the original Defective Tensioner and the Redesigned Tensioner. Notably, the Technical Tip emphasized that "**TECH TIPS ARE NOT ASSOCIATED WITH WARRANTY CLAIMING**." *See* Exhibit G.

93.    Plaintiffs and members of the Classes were never provided with copies of or information about the TSBs and Technical Tips described above. Further, on information and belief, the TSBs and Technical Tips were not directly communicated to consumers. Thus, despite the safety risk associated with the Timing Chain System Defect, which Defendants recognized was in the majority of VW and Audis, Defendants failed to disclose the Defect to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Classes, and, instead, intentionally concealed the Defect.

94.    Based on Plaintiffs' consultant's inspection and analysis of a defective Redesigned Tensioner, Defendants continued to use the same or substantially similar timing chain system in the Class Vehicles despite knowing that even as re-designed, the Timing Chain System Defect presents a serious safety risk.

95.    Defendants continued to use the same or substantially similar timing chain system in the Class Vehicles despite knowledge of the Timing Chain System Defect from the issuance of TSB-15-10-04, TSB-15-11-21, and the 2012 TSB, as well as from warranty claims and customer complaints regarding prior vehicle models equipped with the similar timing chain system.

96.    Defendants callously and intentionally failed to disclose to Plaintiffs and members of the Classes that the Redesigned Tensioner has not cured the Timing Chain System Defect.

97.     The TSBs, the Technical Tips, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, and testing performed in response to consumer complaints, evidence that since as early as 2008, Defendants have had exclusive and superior knowledge regarding the Timing Chain System Defect, and that since as early as 2012, Defendants have had exclusive and superior knowledge that that defect was not remedied by the Redesigned Tensioner.  Further, Defendants gained their knowledge of the Defect through sources not available to Plaintiffs and members of the Classes.

### 2.     National Highway Traffic Safety Administration Complaints

98.     In addition to the TSBs and other evidence of Defendants' knowledge of the Timing Chain System Defect, Defendants have knowledge of the Defect due to consumer complaints such as those made to the NHTSA, which Defendants should monitor as part of a continuous obligation to identify potential defects in their vehicles.[7]

99.     Despite these complaints, Defendants have yet to issue a recall or even inform owners and lessees of the Timing Chain System Defect and its safety risk.  Defendants' deceptive acts, misrepresentations and/or omissions regarding the Timing Chain System Defect create a safety risk for drivers and occupants of the Class Vehicles and members of the public who may be involved in accidents with Class Vehicles that experience a Timing Chain System failure while

---

[7] NHTSA-ODI does not share complainants' personal information with the general public. A complaint is added to a public NHTSA database only after NHTSA removes all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA.  There are penalties for submitting false statements.

they are being driven.  When the Timing Chain System fails, the Class Vehicles can experience an

inability to accelerate or maintain speed, or catastrophic engine failure causing the vehicle to come

to a complete stop while driving, and increasing the risk of rear-end collisions and other accidents.

The reasonable expectation that the Class Vehicles are safe and reliable to drive (and ride in) is

and was material to Plaintiffs and members of the Classes at all relevant times.

100.    Below is a sample of consumer complaints made to NHTSA regarding failures of

the Timing Chain System:

- **Date Complaint Filed:** 10/17/2018
  **Date of Incident:** 08/03/2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 1140782
  **Consumer Location:** SAN PABLO, CA
  **Vehicle MakeModelModel Year(s)**
  VOLKSWAGEN CC 2013
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WVWBP7AN6DE****

  **SUMMARY:**
  DRIVING HOME ON THE FREEWAY THE ENGINE STARTED MAKING
  ABNORMAL NOTICE (TICKING). CALLED THE DEALERSHIP WERE I
  PURCHASED THE CAR AND LET THEM KNOW I WAS BRINGING IT IN TO BE
  CHECKED OUT. ON THE WAY THERE THE ENGINE STOPPED RUNNING AND I
  PULLED OVER AND HAD IT TOWED TO THE DEALERSHIP. SEVERAL DAYS
  LATER DEALERSHIP CALLED AND TOLD ME THE TIMING CHAIN BROKE AND
  CATASTROPHICLY DESTORYED THE ENGINE. PURCHASED THE VEHICLE
  CERTIFIED USED WITH 25,578 MILES. AT THE TIME OF THE ENGINE FAILURE
  IT HAD 62,569 MILES. THE TIMING CHAIN THAT DESTROYED THE ENGINE
  PREMATURELY FAILED.  I HEARED ABOUT A CLASS ACTION LAWSUIT
  SETTLEMENT IN NEW JERSEY FORE THIS PROBLEM AND IT APPEARED MY
  MAKE AND MODEL VEHICLE WAS IN THE GORUP TO BE REIMBURSED FOR
  DAMAGES. WITH NO OTHER OPTIONS I HAD TO TAKE MONEY FROM MY
  RETIREMENT SAVING AND REPLACE THE ENGINE. AFTER ABOUT ONE
  MONTH I RECEIVED A TEXT FROM THE DEALERSHIP SAYING THEY HAD BAD
  NEWS. APPARENTLY AFTER REPLACING THE ENGINE, THEY STARTED THE
  CAR IN TWO MINUTES THEY HEARD AN ABNORMAL KNOCK COMING FROM

THE ENGINE AND TOLD ME THE NEW ENGINE WAS GOING TO NEED TO BE REPLACED. NOW I JUST FOUND THAT MY YEAR VEHICLE 2013 CC VW IS NOT PART OF THE CLASS ACTION LAWSUIT. ALL THE EXACT ISSUES I HAVE BEEN READING ABOUT HAVE HAPPENED TO MY VEHICLE. OBVIOUSLY THIS DEFECT IS NOT LIMITED TO ONLY THE VEHICLES IN THIS THE CLASS ACTION LAWSUIT. I PURCHASED THIS VEHICLE AND PAID EXTRA FOR IT BECAUSE IT WAS CERTIFIED USED. I NEEDED A VERY RELIABLE COMMUTE VEHICLE TO GET TO WORK AND BACK HOME SAFELY. AFTER THE DEALERSHIP HAVING MY CAR FOR OVER TWO MONTHS, I WAS DRIVING A COUPLE DAYS LATER AND THE CAR HESITATED AT A STOP AND THE SERVICE ENGINE LIGHT CAME ON. HAD IT TOWED BACK TO THE DEALERSHIP AND THEY TOLD ME ONE OF THE FUEL INJECTORS WAS "ACTING UP". VWOF A KNEW ABOUT THIS PROBLEM AND SHOULD HAVE RECALLED THE TIMING CHAIN. NOW I HAVE TO GIVE THEM MORE MONEY!!!

- **Date Complaint Filed**: 09/22/2018
  **Date of Incident**: 06/12/2017
  **Component(s):** ENGINE
  **ID Number:** 11130798
  **Consumer Location**: PROVO, UT
  **Vehicle Make Model Model Year(s**)
  Volkswagen GTI 2013
  Manufacturer: Volkswagen Group of America, Inc.
  Vehicle Identification No. (VIN): WVWHV7AJ7DW****
  Crash: No
  Fire: No
  No Number of Injuries: 0
  Number of Deaths: 0

  **SUMMARY:**

  MY CAR'S ENGINE MAKES A TICKING SOUND WHEN I START IT AND WHEN IT'S IN IDLE. I WAS TOLD THAT IT COULD BE THE TIMING CHAIN TENSIONER, SINCE THERE HAVE BEEN ISSUES WITH THAT SINCE THE 2013 MODELS. I DON'T WANT TO WAIT UNTIL MY ENGINE IS RUINED. TIMING CHAIN TENSIONER SHOULD NOT BE GOING BAD OR SHOWING SYMPTOMS WITH ONLY 71,500 MILES YET. I CAN'T SHOW YOU PICTURES SINCE IT IS HARD TO REMOVE THE CAP COVERING THE TIMING CHAIN.

- **Date Complaint Filed:** 04/10/2019
  **Date of Incident:** 04/03/2019
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11195520
  **Consumer Location:** MOCKSVILLE, NC
  **Vehicle MakeModelModel Year(s)**
  Volkswagen Jetta 2015

Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** 3VW4S7AJ0FM****

**SUMMARY:**

THE TIMING BELT TENSIONER WENT BAD CAUSING THE TIMING CHAIN TO
JUMP TIME AT 72K MILES. THIS DID NOT CAUSE ANY INTERNAL ENGINE
DAMAGE BUT DID COST A TON OF MONEY. APPARENTLY THIS IS A COMMON
ISSUE IN OLDER JETTA'S, BUT IT APPEARS THAT THE NEWER MODELS JUST
HAVEN'T BEEN GIVEN ENOUGH TIME TO SCREW UP. IT ALSO HAD TO HAVE
THE HIGH PRESSURE FUEL PUMP REPLACED DUE TO FAILURE. THE CAR WAS
STATIONARY IN MY DRIVEWAY AND WOULD NOT START.

- **Date Complaint Filed:** 01/10/2019
  **Date of Incident:** 01/08/2019
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11166220
  **Consumer Location:** DUNDALK, MD
  **Vehicle MakeModelModel Year(s)**
  Volkswagen Passat 2014
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** 1VWAT7A35EC****

  **SUMMARY:**

  WHILE DRIVING MY VEHICLE IT STOPPED. THE VEHICLE WAS TAKEN TO A
  MECHANIC AND I WAS TOLD THAT MY TIMING CHAIN WAS BROKEN. I
  FOUND IT IRONIC THAT THERE WAS RECALL ON OTHER MODELS BUT NOT
  MINE.

- **Date Complaint Filed:** 09/05/2018
  **Date of Incident:** 08/16/2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11124655
  **Consumer Location:** MOUNT VERNON, ME
  **Vehicle MakeModelModel Year(s)**
  Volkswagen Passat 2014
  Crash: No

Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):** 1VWAT7A32EC****

**SUMMARY:**

WE TOOK THE CAR IN FOR MAINTENANCE TO THE DEALERSHIP A MONTH
AGO. IT WAS A LITTLE LOUD WHICH WAS EVIDENT. THE DEALERS
MECHANIC SAID THE CAR WAS FINE. A FEW WEEKS AGO THE CHECK
ENGINE LIGHT CAME ON (STEADY NOT BLINKING). WE TOOK IT INTO THE
DEALERSHIP AND FOUND OUT THAT THE TIMING TENSIONER (APPARENTLY
A KNOWN VEHICLE ISSUE ACCORDING TO THE MECHANIC), AND THAT IT
HAD DAMAGED THE ENGINE TO THE POINT IT NEEDED TO BE REPLACED. IT
HAS A 1.8T, AND I AM CURIOUS EXACTLY HOW PREVALENT THIS PROBLEM
IS.

- **Date Complaint Filed:** 03/16/2018
  **Date of Incident:** 03/12/2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11079784
  **Consumer Location:** BRENTWOOD, MO
  **Vehicle MakeModelModel Year(s)**
  Volkswagen Passat 2014
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** 1VWAT7A3XEC****

**SUMMARY:**

STARTING GETTING TIMING CODE ERRORS. TOOK IT TO THE DEALER AND
THEY SAID THE TIMING CHAIN IS BAD AND WILL COST NEARLY $4000 TO
REPLACE. LOOKED ONLINE AND THIS IS A COMMON OCCURENCE WITH THE
MAKE AND MODEL OF THIS CAR. WANT TO MAKE SURE THEY DON'T GET
AWAY WITH THIS. THEY SHOULD BE RECALLING THIS AND MAKING THE
REPAIRS.

- **Date Complaint Filed:**  04/09/2019
  **Date of Incident:**  03/25/2019
  **NHTSA ID Number:** 11195264
  **Vehicle MakeModelYear(s)**
  Volkswagen Passat 2015

Crash:  No
Fire:  No
Number of Injuries:  0
Number of Deaths:  0
**Manufacturer:**  Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):**  1VWBT7A36FC****

**SUMMARY:**

TIMING CHAIN SKIPPED. 82,000 MILES ON THE CAR. WHEN IT WAS
STATIONARY IT WOULD NOT START.

- **Date Complaint Filed:**  06/12/2018
  **Date of Incident:**  05/21/2018
  **Components:**  ENGINE, POWERTRAIN
  **NHTSA ID Number:**  11097184
  **Consumer Location:**  WEST TOWNSEND, MA
  **Vehicle MakeModelYear(s)**
  Volkswagen Passat 2016
  Crash:  No
  Fire:  No
  Number of Injuries:  0
  Number of Deaths:  0
  **Manufacturer:**  Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):**  1VWAT7A38GC****

**SUMMARY:**

ON MAY 21, 2018, I WAS DRIVING TO WORK. I STOPPED AT A GAS STATION,
AND WHEN I WENT TO LEAVE MY CAR DIED. I HAD THE CAR TOWED TO
QUIRK VW IN MANCHESTER, NH AND THEY TOLD ME THAT THE ENGINE
WAS BLOWN. THEY TOLD ME THAT IT HAD JUMPED TIME AND VALVES OF
ENGINE MOST LIKELY HAVE CONTACTED PISTONS, ETC. NEEDS ENGINE
AND TURBO ASSEMBLY. THERE IS A KNOWN TIMING CHAIN TENSIONER
LAWSUIT OUT ON THESE CARS. LUCKILY THIS DID NOT HAPPEN ON THE
HIGHWAY AND THERE WAS NOT A DEADLY ACCIDENT.

- **Date Complaint Filed:**  11/20/2018
  **Date of Incident:**  10/30/2018
  **Components:**  ENGINE
  **NHTSA ID Number:**  11152665
  **Consumer Location:**  ROUND ROCK, TX
  **Vehicle MakeModelYear(s)**
  Volkswagen Tiguan 2014
  Crash:  No
  Fire:  No
  Number of Injuries:  0

Number of Deaths:  0
**Manufacturer:**  Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):**  VWGAV3AX2EW****

**SUMMARY:**

MY VOLKSWAGEN TIGUAN'S CHECK ENGINE LIGHT TURNED ON AND THE
DEALERSHIP SAID THAT THE TENSION ON THE TIMING CHAIN IS OUTSIDE
SAFE PARAMETERS AND CAN CAUSE THE ENGINE TO FAIL. MY TIGUAN IS
ONLY A 2014 AND ONLY HAS ABOUT 80,000 MILES. MY UNDERSTANDING IS
THAT TIMING CHAINS ARE SUPPOSED TO LAST THE LIFE OF THE VEHICLE
AND ITS ONLY 4 YEARS OLD. THIS SEEMS TO ME TO BE A FACTORY
DEFECT.

- **Date Complaint Filed:**  07/16/2019
  **Date of Incident:**  07/13/2019
  **Components:**  ENGINE
  **NHTSA ID Number:**  11232160
  **Consumer Location:**  RALEIGH, NC
  **Vehicle MakeModelYear(s)**
  Audi A4 2013
  Crash:  No
  Fire:  No
  Number of Injuries:  0
  Number of Deaths:  0
  **Manufacturer:**  Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):**  WAUFFAFL5DN****

  **SUMMARY:**

  ENGINE LIGHT CAME ON. CAR STOPPED RUNNING--WAS UNABLE TO START
  IT. AUDI DEALERSHIP SERVICE IDENTIFIED IT TIMING TENSIONER FAILURE
  AT JUST 70000 MILES. REPAIR COST ESTIMATED AT $3100. RECENT CLASS
  ACTION SETTLEMENT IDENTIFIES THIS AS A CONSISTENT PROBLEM WITH
  AUDI/VW BUT DOES NOT INCLUDE MY VIN. HOWEVER, THIS IS IDENTICAL
  ISSUE AS OTHER AUDI UNDER RECALL

- **Date Complaint Filed:**  09/05/2017
  **Date of Incident:**  08/18/2017
  **Components:**  ENGINE
  **NHTSA ID Number:**  11021660
  **Consumer Location:**  LANGLEY, WA
  **Vehicle MakeModelYear(s)**
  Audi A4 2013
  Crash:  No
  Fire:  No

Number of Injuries:  0
Number of Deaths:  0
**Manufacturer:**  Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):**  WAUFFCFL5DN****

**SUMMARY:**

TIMING CHAIN TENSIONER FAILURE AT 114KM , CAUSED THE TIMING
CHAIN TO SKIPS A TOOTH OR TWO, RESULTS IN ENGINE DAMAGED TO THE
HEAD VALVES AND ENTIRE ENGINE SHUT DOWN, THIS COULD RESULT IN
FATAL CAR ACCIDENTS DURING DRIVING TO EVERYONE.

- **Date Complaint Filed:**  01/09/2018
  **Date of Incident:**  01/04/2018
  **Components:**  ENGINE
  **NHTSA ID Number:**  11061499
  **Consumer Location:**  NASHVILLE, IN
  **Vehicle MakeModelYear(s)**
  Audi A5 2014
  Crash:  No
  Fire:  No
  Number of Injuries:  0
  Number of Deaths:  0
  **Manufacturer:**  Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):**  WAUMFAFR7EA****

**SUMMARY:**

CHECK ENGINE LIGHT CAME ON WHILE ON THE HIGHWAY, TRANSMISSION
WOULD NOT AUTOMATICALLY SHIFT UP BEYOND 6TH GEAR (8 SPEED
TRANSMISSION) AT HIGHWAY SPEEDS. TRANSMISSION COULD BE SHIFTED
MANUALLY INTO 7TH AND 8TH GEARS, BUT ENGINE WAS LUGGING ON
LEVEL HIGHWAY AT 60MPH. AUDI SERVICE CENTER STATES THE
HYDRAULIC TIMING CHAIN TENSIONER HAS FAILED, CAUSING ENGINE
TIMING ISSUES THAT COULD RESULT IN CATASTROPHIC FAILURE IF
DRIVEN FURTHER. THE CAR HAS APPROXIMATELY 87K MILES ON IT AND
HAS BEEN METICULOUSLY MAINTAINED SINCE PURCHASED NEW. THERE
ARE NUMEROUS INTERNET SITES DETAILING AN ONGOING PROBLEM WITH
VW / AUDI ENGINE PROBLEMS RESULTING FROM THE HYDRAULIC TIMING
CHAIN TENSION MECHANISMS. MANY CONSUMERS ARE REPORTING
REPAIRS OF SEVERAL THOUSAND DOLLARS.
MY CONCERN (ASIDE FROM REPAIR COSTS FOR A KNOWN PROBLEM) IS
WHAT HAPPENS TO AN ENGINE THAT HAS A CATASTROPHIC FAILURE AT
HIGH SPEEDS ON A BUSY INTERSTATE?
IRONICALLY I HAD MADE AN APPOINTMENT FOR SAFETY RECALL
CAMPAIGN 80C5-AUXILLARY HEATER. THE VEHICLE WAS BROUGHT INTO

THE AUDI SERVICE CENTER IN BLOOMINGTON INDIANA ON FRIDAY, JANUARY 5, 2018, AT 9:45AM AND REPAIRS ARE NOT YET COMPLETE WITH NO ESTIMATED TIME FOR COMPLETION AS OF TUESDAY, JANUARY 9TH.

- **Date Complaint Filed:** 07/19/2018
  **Date of Incident:** 07/13/2018
  **Components:** ENGINE
  **NHTSA ID Number:** 11112389
  **Consumer Location:** COUNTRYSIDE, IL
  **Vehicle MakeModelYear(s)**
  Audi Q5 2013
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** WA1LFAFP9DA****

  **SUMMARY:**

  RECENTLY BOUGHT MY 2013 AUDI Q5 IN MAY OF 2017 AND SEVEN DAYS AGO I BEGAN TO HAVE AN ISSUE WITH MY VEHICLE ROUGHLY VIBRATING AND EXPERIENCING LOW ACCELERATION. I WAS BLOCKS AWAY FROM MY HOME, BUT HAVING IT BE RUSH HOUR AND DEALING WITH THE CURRENT ISSUES OF MY CAR SUDDENLY LOSING POWER I AM LUCKY TO HAVE MADE IT HOME. SINCE MY CAR WILL NO LONGER START AND NOT HAVING THE FUNDS TO HAVE IT TOWED TO MY NEAREST AUDI DEALER SHIP, I PAID TO HAVE A MECHANIC SERVICE COME AND INSPECT THE VEHICLE. UPON HAVING THE MECHANIC INSPECT MY VEHICLE, I GOT THE UNFORTUNATE NEWS OF WHAT WAS WRONG WITH MY CAR. IT SEEMED TO BE HAVING A KNOWN ISSUE WITH THE VW/ AUDI 2.0 TIMING CHAIN. SO, I WAS LOOKING AT ROUGHLY $2,500 IN REPAIRS ON A TIMING CHAIN REPLACEMENT FOR MY PERFECTLY MAINTAINED AND WELL CARED FOR AUDI. WITH FURTHER INVESTIGATION MY MECHANIC NOTIFIED ME THAT NOT ONLY MY VEHICLE IS SUFFERING FROM THE WELL KNOW TIMING CHAIN ISSUE BUT BECAUSE OF THAT IT ALSO RESULTED IN CATASTROPHIC ENGINE FAILURE. I AM NOW LOOKING AT A BILL OF OVER $7,000 FOR A NEW ENGINE ON MY FAIRLY NEW AUDI.

- **Date Complaint Filed:** 08/16/2017
  **Date of Incident:** 07/28/2017
  **Components:** ENGINE
  **NHTSA ID Number:** 11015735
  **Consumer Location:** SUTTONS BAY, MI
  **Vehicle MakeModelYear(s)**
  Audi Q5 2013

Crash:  No
Fire:  No
Number of Injuries:  0
Number of Deaths:  0
**Manufacturer:**  Volkswagen Group of America, Inc.
**Vehicle Identification No. (VIN):**  WA1LFAFPXDA****

**SUMMARY:**

AT 74,000 MILES, OUR VEHICLE QUIT RUNNING. THE TIMING CHAIN HAD
SLIPPED AND NEEDED TO BE REPLACES ALONG WITH A TIMING CHAIN
TENSIONER, GUIDE RAILS AND 8 INTAKE VALVES. JUST PRIOR TO
QUITTING, THE MOTOR WAS REVVING WHILE AT STOP LIGHTS.
FORTUNATELY, NO ACCIDENT OCCURRED. OUR REPAIR SHOP INDICATED
THIS IS A VERY COMMON DEFECT WITH THE AUDI Q5 2.0 MOTORS AND
THAT SAFETY OF DRIVING IS AT RISK WITH THIS COMMON DEFECT.

- **Date Complaint Filed:** 06/29/2019
  **Date of Incident:** 06/23/2019
  **Components:** ENGINE
  **NHTSA ID Number:** 11228416
  **Consumer Location:** MIAMI, FL
  **Vehicle MakeModelYear(s)**
  Volkswagen Jetta 2014
  Crash: No
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Volkswagen Group of America, Inc.
  **Vehicle Identification No. (VIN):** 3VWB17AJ5EM****

  **SUMMARY:**

  MY 2014 VW JETTA (86000 MILES) WAS PARKED.  I TRIED TO TURN IT ON; IT
  WOULD CRANK BUT WOULDN'T START. GOT IT TOWED TO THE VW
  DEALERSHIP WERE THEY TOLD ME THE TIMING BELT AND TENSIONER
  HAD TO BE REPLACED. THE OPENED THE ENGINE TO INSPECT FOR
  FURTHER DAMAGE AND FOUND SEVERAL BENT VALVES.

## V.    FURTHER ALLEGATIONS

101.    Defendants failed to inform Class Vehicle owners and lessees prior to purchase or

lease of the Class Vehicles and during the express warranty period that the Timing Chain System

was defective and would fail shortly after the express warranty period expired.  Defendants

misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of the Timing Chain System Defect in the Class Vehicles.

102.    Defendants also failed to inform Class Vehicle owners and lessees at the time of purchase or lease that the Timing Chain System in their Class Vehicles had been inadequately tested prior to placing the car in production and the time of vehicle sale or lease.

103.    Defendants also failed to inform Class Vehicle owners that they had attempted to correct the problem with a Redesigned Tensioner, which ultimately could still cause Timing Chain System failure while purchasers' vehicles were within the durational limitation of the express warranty period, including the powertrain limited warranty of "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service."[8]  Specifically, this powertrain limited warranty covered "all internal [engine] parts" including the Timing Chain System.  This warranty promised to repair or replace covered defective class engine components arising out of defects in materials and/or workmanship for a period of 5 years or 60,000 miles, whichever occurs first for non-commercial purchasers.

104.    By as early as 2010 but no later than 2012, Defendants knew that Class Vehicles were experiencing premature Timing Chain System failures due to the Timing Chain System Defect.  Despite this knowledge, Defendants continued to sell Class Vehicles with the Timing Chain System Defect.  This knowledge is imputed to all Defendants because VW America was monitoring warranty claims and Class Vehicle performance in the United States, and reporting back to its affiliated and parent companies located in Germany and the United States.

---

[8] Audi vehicles were covered by a general vehicle warranty of "4 years or 50,000 miles, whichever occurs first."  Volkswagens from model year 2018 and on are covered by a bumper to bumper warranty of 6 years or 72,000 miles, whichever occurs first.

105.    Certain Plaintiffs were informed by representatives of VW America that it would not provide assistance in repairing Timing Chain Systems or engines because the Timing Chain System failure occurred outside of the express warranty period.

106.    Defendants refused to fully reimburse or compensate certain Plaintiffs for vehicle repair expenses or provide a suitable substitute or replacement vehicles.

107.    Although their Class Vehicles' Timing Chain System failure occurred outside the unilateral express warranty period (which was neither seen nor bargained for prior to purchase), certain Plaintiffs' Class Vehicles exhibited unmistakable symptoms (known only by Defendants) of the Timing Chain System Defect within the express warranty period.

108.    Despite actual and constructive knowledge of the Timing Chain System Defect as described in this complaint, Defendants failed to cure the Timing Chain System Defect within the express warranty period and thereby breached the terms of the express warranty.

109.    Through no fault of their own, Plaintiffs and members of the Classes did not possess sufficient technical expertise to recognize symptoms of the Timing Chain System Defect.  This information, however, was well known to Defendants, but not revealed.

110.    Plaintiffs and members of the Classes relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of Defendants at the time of purchase or lease, including but not limited to the useful and expected life of Class Vehicles and the recommended Class Vehicle maintenance program.

111.    Defendants' misrepresentations and fraudulent statements were received by Plaintiffs and members of the Classes prior to and at the point of their Class Vehicle purchase or lease, including misrepresentations and omissions in the owner's manual and the USA Warranty and Maintenance pamphlets.  The representations created a reasonable belief that the useful life

expectancy of Class Vehicles without a major engine failure was in excess of at least 110,000 to 120,000 miles.  These representations specifically related that the Timing Chain System was a non-maintenance engine component.

112.    Defendants actively concealed the true reasonably expected duration of Class Vehicle components, including but not limited to the Timing Chain System, from the Plaintiffs and all Class Vehicle purchasers and lessees.  Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a Timing Chain System Defect that would cause the Timing Chain System to prematurely fail within the reasonably expected useful life of the vehicle.

113.    Defendants intentionally failed to inform Class Vehicle purchasers and lessees that the Timing Chain System incorporated in Class Vehicles results in higher operational costs than alternative conventional timing chain systems or other competitive technology because the Timing Chain System Defect causes the Timing Chain System to prematurely fail within the reasonably expected useful life of the vehicle.

114.    Defendants actively and fraudulently concealed the existence of the Timing Chain System Defect (including defects covered under Class Vehicle warranties concerning materials and workmanship) and that the owner's manual accompanying Class Vehicles incorporated improper maintenance recommendations and maintenance intervals.

115.    Plaintiffs and members of the Classes did not learn that their respective Class Vehicle was defectively designed and/or manufactured until after their Timing Chain System failed.

116.    On information and belief, authorized Volkswagen and Audi dealers did not have knowledge of and/or were counseled not to admit that any defects existed in Class Vehicles or that

improper maintenance recommendations were incorporated in the owner's manual. Volkswagen and Audi dealers (who also had a vested financial interest in concealing and suppressing the actual cause of Class Vehicle failures) improperly blamed Class Vehicle failures on certain conditions for which Defendants would not be responsible and/or denied the existence of the Timing Chain System Defect.

117.    Defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that Class Vehicles were defective with respect to their Timing Chain System, suffered from the Timing Chain System Defect during the warranty period and did not have a normal and/or reasonable useful life before sales of Class Vehicles commenced in the United States.  This information was technical in nature, proprietary and not known by the ordinary consumer or the public, including Plaintiffs and members of the Classes.  Plaintiffs and members of the Classes were ignorant of this technical information through no fault of their own.

118.    Defendants acted to conceal the Timing Chain System Defect during the warranty period so that repair costs would be shifted to Plaintiffs and members of the Classes once the warranty expired and the Timing Chain System failed.

119.    Although Defendants knew the Timing Chain System Defect in Class Vehicles caused premature failure of the Timing Chain System, Defendants knowingly and actively concealed material information from prospective and actual purchasers and lessees with the intent to deceive purchasers and lessees and promote Class Vehicle sales.

120.    Defendants' knowledge of the Timing Chain System Defect was derived from warranty claims, claims supervisors, customer complaints and monitoring of performance of Class Vehicles by VW America quality assurance employees.  Additionally, the number of replacement components and subsequent component revisions would have placed Defendants on notice of the

Timing Chain System Defect in Class Vehicles.  Knowledge of Class Vehicle defects is further imputed to Defendants prior to sale or lease of certain model year Class Vehicles because predecessor models using substantially similar or identical Timing Chain System components were also prematurely failing within their reasonably expected life.  Defendants elected to place into the stream of commerce Class Vehicles that they knew would be adversely affected by the failure to adequately design and manufacture the Timing Chain System.

121.    Additional information supporting allegations of fraud and fraudulent conduct is in the control of Defendants.  This information includes but is not limited to technical root cause analyses, communications with Class Vehicle owners, remedial measures, warranty claims and internal corporate communications concerning how to deal with consumers who claim their class engines' timing chain tensioner was defective.

122.    Material information fraudulently concealed and/or actively suppressed by Defendants includes but is not limited to the Timing Chain System Defect described in the preceding paragraphs.

123.    Material information was fraudulently concealed and/or actively suppressed in order to sell Class Vehicles to uninformed consumers (including Plaintiffs and members of the Classes) premised on affirmations and representations of reliable, high quality, long-life vehicles with low maintenance, inexpensive operating costs, superior performance and durability.  Class Vehicles incorporated a known Timing Chain System Defect that would severely affect the useful life of the vehicle.

124.    Defendants (and particularly the sales and marketing executives at VW America) advertised and otherwise created the reasonable expectation (including but not limited to scheduled class engine maintenance recommendations) that Class Vehicles would last over 120,000 miles or

ten years before experiencing Timing Chain System failure. Material information was fraudulently concealed and/or actively suppressed in order to protect Defendants' (and authorized vehicle dealers') corporate profits from loss of sales from adverse publicity, to reduce warranty repair costs and to limit VW and Audi's brand disparagement.

125.    Defendants had a duty to disclose the Timing Chain System Defect to Class Vehicle owners and lessees and that the owner's manuals set forth the wrong maintenance recommendations and maintenance intervals.

126.    This duty arose because Defendants knew that there were defects in the Class Vehicles and inaccuracies in the owner's manuals that affected vehicle operation and safety while Class Vehicle owners and lessees were not, and could not reasonably be, cognizant of these defects and dangers.

127.    Defendants continuously and affirmatively concealed the actual characteristics of Class Vehicles from Plaintiffs and other purchasers and lessees. Defendants breached their affirmative duty of disclosure to Class Vehicle owners and lessees.[9]

128.    Defendants breached express and implied warranties and actively and affirmatively misrepresented, fraudulently concealed and suppressed the existence of the Timing Chain System Defect in Class Vehicles and omissions in accompanying owner's manual and USA Warranty and Maintenance pamphlet.

129.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge

_____

[9] Since unexpected engine failure is a serious safety issue, Defendants had an affirmative duty to disclose the Timing Chain System Defect together with associated risks.

50

that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase durational warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including but not limited to durational warranties that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when Class Vehicles prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models substantially similar to the Class Vehicles without the Timing Chain System Defect.

130.    Purchasers and lessees of Class Vehicles reasonably expect vehicles to function well in excess of the Class Vehicles' durational warranties before requiring extensive expensive repairs.  This is particularly true where the purchasers and lessees of Class Vehicles were led to believe by Defendants' representations and typical consumer expectations in a commercial context that the useful expected life of the vehicles was in excess of 120,000 miles and there was no scheduled inspection or maintenance for the timing chain system within this period.

131.    Given the conduct of Defendants and the design, manufacture, materials and/or workmanship defects in Class Vehicles (that Defendants knew were inherently defective prior to the time of sale or lease), the durational limitations of the warranties are oppressive, unreasonable and unconscionable because the warranty disclaimers of the proposed class representative and proposed members of the Classes were neither knowing nor voluntary.

132.    The contractual terms were unreasonably favorable to Defendants since Defendants were fully aware of defects in the Class Vehicles that substantially reduced the expected useful

life of the vehicle. Plaintiffs and members of the Classes were unaware of defects in the Class Vehicles at the time of purchase or lease.

133.    The bargaining position of Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers and lessees, including Plaintiffs and members of the Classes.  This is because Defendants knew there were defects in the Class Vehicles.

134.    Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous and had been inadequately tested.

135.    Defendants knew defects in Class Vehicle components would cause certain expensive repair failures within one-half of the useful expected life of the vehicle.  Defendants artificially limited the duration of the warranty period to avoid performing warranty repairs in order to maximize profits through the sale of defective vehicles.

136.    Defendants unconscionably sold and leased defective Class Vehicles to Plaintiffs and members of the Classes without informing these purchasers and lessees that the Class Vehicles were defective and that the Timing Chain Systems in their Class Vehicles should be replaced prior to the expiration of the warranty.

137.    Defendants' conduct renders the vehicle purchase and/or lease contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

138.    The durational limitation of the express warranties accompanying the Class Vehicles is unreasonable and unconscionable since Defendants actively concealed known vehicle

defects and issued incorrect maintenance recommendations and maintenance intervals. Plaintiffs and members of the Classes had no notice of or ability to detect the Defects.

139.    Defendants restricted the limited power train warranty (including the class engine) duration to 5 years or 60,000 miles (whichever occurs first) for Class Vehicles in an effort to avoid the cost of repairs because they were cognizant of Class Vehicle defects that existed at the time of sale.

140.    Engines in competitive vehicles manufactured and sold or leased at the time the Class Vehicles were manufactured and sold or leased ordinarily last longer than warranted by the limited power train warranty accompanying Class Vehicles.

141.    Defendants engaged in unconscionable fraudulent commercial practices and attempted to conceal Class Vehicle materials defects, workmanship defects, manufacturing defects, design defects and improperly recommended maintenance.

142.    Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

143.    Defendants failed to adequately test Class Vehicles in appropriate consumer environments prior to marketing, distribution and sale.

144.    Defendants' unconscionable conduct precludes any exclusion of incidental and consequential damages or any other limitation of remedies. Defendants' upper level management orchestrated this wrongful conduct.

145.    Even if Class Vehicles do not fail entirely, Class Vehicle owners have sustained an ascertainable financial loss, including but not limited to overpayment damages at the time of sale or lease, increased maintenance costs for Timing Chain System inspections, and/or premature

replacement of the Timing Chain System, related parts or the entire engine, and/or substantially reduced engine performance, as well as diminution of the resale value of their Class Vehicles.

146.    The proposed class representatives and proposed members of the Classes have not received the benefit of their bargain concerning their respective purchase or lease of the Class Vehicles.

147.    Defendants are persons within the context of the consumer protection laws of Colorado, Florida, Georgia, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Oregon, Pennsylvania, and Washington and committed wrongful conduct described in this complaint including conduct that caused ascertainable financial harm and/or economic loss to Plaintiffs and members of the Classes.

148.    Defendants created an over-all misleading impression through their failure to disclose material information concerning the fact that Class Vehicles incorporated the Timing Chain System Defect and were accompanied by an owner's manual and USA Warranty and Maintenance pamphlet that incorporated incorrect engine service and maintenance recommendations.  Plaintiffs and members of the Classes were deceived by Defendants' conduct as described in this complaint with respect to their purchase or lease of Class Vehicles.

149.    Defendants violated the consumer protection laws of Colorado, Florida, Georgia, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, and Washington with their oppressive and unconscionable conduct described in this complaint including but not limited to their failure to disclose material information that caused ascertainable financial harm to Plaintiffs and members of the Classes.

150.    Defendants were under a duty to disclose defects in Class Vehicles and associated safety risks as described in this complaint but failed to disclose to Plaintiffs and members of the

Classes the characteristics of Class Vehicles with respect to defects in violation of the consumer protection laws of Colorado, Florida, Georgia, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, and Washington.  Defendants' omissions (that Timing Chain Systems were defective and that this defect constituted a safety risk) deceived purchasers and lessees (including but not limited to Plaintiffs and members of the Classes).  Those disclosure omissions include the fact that Class Vehicle defects had a significant impact on the value, durability, and future care of Class Vehicles.  This failure to disclose additional information concerning Class Vehicle defects had the capacity to, and in fact did, deceive purchasers and lessees (including Plaintiffs and members of the Classes) in a material respect.

151.    If Plaintiffs and members of the Classes had been made aware of the Defects in their respective Class Vehicles and the attendant ramifications of value, durability, maintenance expenses, safety and care, they would not have purchased or leased the Class Vehicles or would have paid less for their vehicles since members of the Classes were led to believe that they were purchasing a vehicle that was free of major defects and were not fully informed of the true characteristics and attributes of Class Vehicles.

152.    Defendants fraudulently, intentionally, negligently, and/or recklessly concealed from Plaintiffs and members of the Classes defects in Class Vehicles even though Defendants knew or should have known that information concerning these defects was material and central to the marketing and sale or lease of Class Vehicles to prospective purchasers and lessees including Plaintiffs and members of the Classes.

153.    Defendants violated the consumer protection laws of Colorado, Florida, Georgia, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, and Washington by failing to inform Class Vehicle owners and lessees at the time

of purchase or lease that Class Vehicles had known defects, that the vehicles would prematurely require major engine repairs and/or prematurely fail with resulting catastrophic failure and/or would have a significant effect on the vehicle's value.

154.    As a direct result of these omissions, Plaintiffs and members of the Classes purchased or leased Class Vehicles and sustained economic harm since they purchased vehicles worth considerably less than represented, with an increased cost of vehicle ownership, and an increasing risk of injury that was not disclosed to or reasonably anticipated by consumers at the time of purchase or lease.

155.    The wrongful conduct of Defendants in violation of the consumer protection laws of Colorado, Florida, Georgia, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, and Washington occurred within the limitations period set out in the respective statutes and/or the limitations period is tolled by Defendants' conduct.

**What the Omissions Were:**

156.    Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information concerning the Timing Chain System Defect, in an effort to deceive purchasers and lessees as described in this complaint.  At the time of purchase or lease, Defendants fraudulently omitted to disclose material matter regarding the Defects in Class Vehicles, including their impact on future repairs, costs and vehicle reliability.  Defendants fraudulently concealed from Plaintiffs and members of the Classes defects in Class Vehicles even though Defendants knew or should have known that information concerning these defects was material and central to the marketing, sale and lease of Class Vehicles to prospective purchasers and lessees, including Plaintiffs and members of the Classes.  Defendants concealed from Plaintiffs and members of the Classes during their warranty periods that a defect existed with the Timing Chain System which could have and should have been fixed during the

warranty period, particularly as it was a safety issue, and Defendants' withholding of this material information deprived Plaintiffs and members of the Classes of the right to have such defective part replaced for free under the warranty.

**The Person(s) Responsible for the Failure to Disclose:**

157.    Plaintiffs and members of the Classes are entitled to the reasonable inference that Defendants' sales, marketing, engineering, and warranty departments and their executives were involved in the omissions.  This is particularly true given Defendants' recent conduct involving compliance certification and pollution control defeat devices involved in the sale of diesel powered passenger vehicles around the world and particularly in the United States.

**The Context of the Omissions and the Manner in which they Misled:**

158.    Material information was fraudulently concealed and/or actively suppressed in order to sell or lease Class Vehicles to uninformed consumers (including Plaintiffs and members of the Classes) premised on affirmations and representations as described in this complaint.

159.    If Plaintiffs and members of the Classes had been informed of defects in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or would have paid substantially less.  If Plaintiffs and members of the Classes had been made aware of the Defects in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased or leased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without major defects and were not fully informed of true characteristics and attributes of Class Vehicles.  If Plaintiffs and members of the Classes had been informed of the Timing Chain System Defect during the warranty period, they would have had the defective part replaced under warranty. Defendants' conduct that violated the consumer fraud statutes alleged herein deprived Plaintiffs and members of the Classes of that remedy.

**What Defendants Obtained through the Fraud:**

160.    Material information concerning Class Vehicles was concealed and/or actively suppressed in order to protect Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity and limit brand disparagement.  Purchasers believed they were obtaining vehicles as having different attributes than described and purchased or leased and were accordingly deprived of economic value and paid a price premium for their Class Vehicles. Defendants had a uniform policy of not properly disclosing Class Vehicle defects in order to promote sales and increase profits as described in this complaint.

161.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs and members of the Classes purchased or leased Class Vehicles and sustained an ascertainable loss, including but not limited to financial harm as described in this complaint.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

162.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Timing Chain System Defect and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiffs and members of the Classes were deceived regarding the Timing Chain System Defect and could not reasonably discover the latent nature of the Defect.

163.    Plaintiffs and members of the Classes could not reasonably discover Defendants' deception with respect to the Timing Chain System Defect in the Class Vehicles prior to experiencing a failure and being informed of the reason for the failure.  Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Timing Chain System Defect.

164.    Class Vehicle owners do not possess the requisite technical skills in automotive engineering to discern the design, manufacture, materials, and workmanship defects in their vehicles or the requisite technical skills to surmise the proper vehicle maintenance and maintenance intervals for Class Vehicles.

165.    Plaintiffs and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a latent defect and/or that the Class Vehicles contained a Timing Chain System prone to premature failure or safety risk.  As alleged herein, the existence of the Timing Chain System Defect and safety risk were material to Plaintiffs and members of the Classes at all relevant times.

166.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality, and grade of the Class Vehicles and to disclose the Timing Chain System Defect and potential safety risk associated with the premature failure of the system.

167.    Defendants knowingly, actively, and affirmatively concealed the facts alleged herein including the Timing Chain System Defect.  Plaintiffs and members of the Classes reasonably relied on Defendants' knowing, active and affirmative concealment.

168.    Defendants fraudulently attributed the Timing Chain System failures to other factors and/or exculpating conditions for which Defendants had no responsibility when, in reality, the Timing Chain System Defect was due to design, manufacture, materials and/or workmanship defects.

169.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII.    CLASS ACTION ALLEGATIONS

170.    Plaintiffs bring this proposed action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) on behalf of themselves and on behalf of the following Class and Sub-Classes (or any other class authorized by the court) defined as follows:

**Nationwide Class**: All persons or entities in the United States that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Nationwide Class" or "Class");

**Colorado Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Colorado and all persons or entities in the State of Colorado that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Colorado Sub-Class");

**Florida Class**: All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Florida and all persons or entities in the State of Florida that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Florida Sub-Class");

**Georgia Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Georgia and all persons or entities in the State of Georgia that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Georgia Sub-Class");

**Illinois Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Illinois and all persons or entities in the State of Illinois that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Illinois Sub-Class");

**Massachusetts Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the Commonwealth of Massachusetts and all persons or entities in the Commonwealth of Massachusetts that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Massachusetts Sub-Class");

**Michigan Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Michigan and all persons or entities in the State of Michigan that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Michigan Sub-Class");

**New York Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of New York and all persons or entities in the State of New York that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "New York Sub-Class");

**New Jersey Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of New Jersey and all persons or entities in the State of New Jersey that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "New Jersey Sub-Class");

**North Carolina Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of North Carolina and all persons or entities in the State of North Carolina that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "North Carolina Sub-Class");

**Ohio Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Ohio and all persons or entities in the State of Ohio that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Ohio Sub-Class");

**Oregon Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Oregon and all persons or entities in the State of Oregon that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Oregon Sub-Class");

**Pennsylvania Class:** All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the Commonwealth of Pennsylvania and all persons or entities in the Commonwealth of Pennsylvania that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Pennsylvania Sub-Class"); and

**Washington Class**: All persons or entities that purchased or leased a Class Vehicle from a VW or Audi authorized dealership in the State of Washington and all persons or entities in the State of Washington that purchased or leased a Class Vehicle from a VW or Audi authorized dealership (the "Washington Sub-Class") (together with the Colorado Sub-Class, Florida Sub-Class, Georgia Sub-Class, Illinois Sub-Class, Massachusetts Sub-Class, Massachusetts Sub-Class, Michigan Sub-Class, New Jersey Sub-Class, New York Sub-Class, North Carolina Sub-Class, Ohio Sub-Class, Oregon Sub-Class, and Pennsylvania Sub-Class (the "Sub-Classes")).

171.    Excluded from the Class and Sub-Classes are Defendants and their parents, subsidiaries and corporate affiliates, officers, directors, employees, assigns, and successors, the court, court staff, Defendants' counsel, and all respective immediate family members of the excluded entities described above. Plaintiffs reserve the right to revise the definitions of the Class and Sub-Classes based upon subsequently discovered information and reserve the right to establish

additional sub-classes where appropriate. The Class and Sub-Classes are collectively referred to herein as the "Classes."

**Numerosity of the Class: Fed. R. Civ. P 23(a)(1)**

172.    The proposed Classes are so numerous that individual joinder of all potential members is impracticable under Fed. R. Civ. P. 19 or 20. It is estimated there are hundreds of thousands of Class Vehicles. Additional information regarding the Class Vehicles is obtainable through discovery from the Defendants.

**Existence of Common Questions of Law and Fact: Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

173.    Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

(a) Whether there is a Timing Chain System Defect in the Class Vehicles;

(b) Whether the Timing Chain System installed in the Class Vehicles contains a design defect and/or a defect in material, manufacturing and/or workmanship;

(c) Whether the Timing Chain System Defect presents a safety risk;

(d) Whether Defendants knew or should have known that the Timing Chain System installed in the Class Vehicles is defective and/or prone to premature failure and presents a safety risk;

(e) Whether Defendants had a duty to disclose the Timing Chain System Defect, that the Timing Chain System is prone to premature failure, and/or that the Timing Chain System Defect presents a safety risk;

(f) Whether Defendants breached their duty to disclose the Timing Chain System Defect, that the Timing Chain System is prone to premature failure, and/or that the Timing Chain System Defect presents a safety risk;

(g) Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the Timing Chain System Defect, that the Timing Chain System is prone to premature failure, and/or that the Timing Chain System Defect presents a safety risk;

(h) Whether Defendants negligently or falsely misrepresented or omitted material facts regarding the Timing Chain System Defect, that the Timing Chain System is prone to premature failure, and/or that the Timing Chain System Defect presents a safety risk;

(i) Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the Timing Chain System Defect;

(j) Whether Class Vehicles were sold with an owner's manual and/or USA Warranty and Maintenance manual that incorporated incorrect inspection and service intervals for the Timing Chain System;

(k) Whether Defendants breached their express warranties (including but not limited to the powertrain limited warranty) in that Class Vehicles were defective with respect to engine design and manufacture, including workmanship and materials;

(l) Whether Defendants breached their implied warranties in that Class Vehicles contain the Timing Chain System Defect and are not fit for their ordinary purpose;

(m) Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* and/or any other statutory duties under state laws;

(n) Whether Defendants were unjustly enriched by the conduct alleged herein;

(o) Whether members of the Classes would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the Timing Chain System Defect, that the Timing

Chain System is prone to premature failure, and/or that the Timing Chain System Defect presents a safety risk;

(p) Whether members of the Classes would have purchased a Class Vehicle if Defendants, at the time of purchase or lease, disclosed the Timing Chain System Defect, that the Timing Chain System is prone to premature failure, and/or that the Timing Chain System Defect presents a safety risk;

(q) Whether members of the Classes would have had the Timing Chain System repaired or replaced if Defendants had disclosed, prior to the expiration of the warranty periods, the Timing Chain System Defect, that the Timing Chain System is prone to premature failure during the useful lief of the engine, and/or that the Timing Chain System Defect presents a safety risk;

(r) Whether Defendants actively concealed or omitted material facts from Plaintiffs and members of the Classes in order to, *inter alia,* sell more Class Vehicles and/or transfer the costs associated with repair or replacement of the Timing Chain System and/or the entire engine to Plaintiffs and the Classes;

(s) Whether Defendants committed unfair and deceptive business act practices by failing to inform owners and lessees of Class Vehicles prior to purchase and/or lease and/or during the post-sale express warranty period that the Timing Chain System was defective and would fail shortly after the warranty period expired and cause damage to the engine, and that this defect posed a significant safety risk;

(t) Whether Defendants violated the Colorado Consumer Protection Act, COLO. REV. STAT. § 6-1-101 *et seq.*;

(u) Whether Defendants violated the Florida Unfair & Deceptive Trade Practices Act, FLA. STAT. § 501.201 *et seq.*;

(v) Whether Defendants violation the Georgia Uniform Deceptive Trade Practices Act, GA. CODE ANN. §§ 10-1-370 *et seq*.;

(w) Whether Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.;

(x) Whether Defendants violated the Massachusetts Consumer Protection Act, MASS. GEN. LAWS 93A, § 1, *et seq.*

(y) Whether Defendants violated the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901, *et seq*.;

(z) Whether Defendants violated the New Jersey Consumer Fraud Act , N.J. STAT. ANN. § 56:8-2 *et seq.;*

(aa) Whether Defendants violated the New York General Business Law, N.Y. GEN. BUS. Law § 349;

(bb) Whether Defendants violated the North Carolina Deceptive Trade Practices Act, N.C. GEN. STAT. § 75-1.1 *et seq.*;

(cc) Whether Defendants violated the Ohio Consumer Sales Practices Act, OHIO REV. CODE § 1345.01, *et seq*.;

(dd) Whether Defendants violated the Oregon Unlawful Trade Practices Act, OR. REV. STAT. § 646.605, *et seq.;*

(ee) Whether Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1, *et seq*.;

(ff) Whether Defendants violated the Washington Consumer Protection Act, WASH. REV. CODE § 19.86.010 *et seq.*;

(gg) Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

(hh) Whether the court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct.

## Typicality of Claims or Defenses of a Definable Class: Fed. R. Civ. P. 23(a)(3)

174.    Plaintiffs' claims and defenses are typical of the claims and defenses of the Classes Plaintiffs seek to represent.  Class claims arise out of ownership or lease of Class Vehicles as defined in ¶ 1.  As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same illegal actions and conduct by Defendants.   Defendants have no claims or defenses unique to Plaintiffs or different from the proposed Members of the Classes.

## Adequate Representation: Fed. R. Civ. P. 23(a)(4)

175.    Plaintiffs currently own their respective class vehicles and have no conflicting interests with any other proposed Class member.  The claims of Plaintiffs and members of the Classes are so interrelated that the interests of members of the Classes will be fairly and adequately protected in their absence.

176.    Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to or in conflict with the interests of the other members of the Classes.

177.    Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Classes. Plaintiffs will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

178.    Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

**Superiority of a Class Action and Predominance of Common Questions: Fed. R. Civ. P. 23(b)(3)**

179.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

180.    Maintenance of a class action in one court is the most economical procedural device to litigate the Class Vehicle and class engine claims for Class Vehicle owners and the Defendants. Prosecution of separate actions by individual members of the Classes could create risk of inconsistent or varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for the party opposing the Classes as recognized by Fed. R. Civ. P. 23(b)(1)(A).

181.    Prosecution of separate actions by individual members of the Classes could create risk of adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members of the Classes who are not parties to the adjudications or substantially impair or impede their ability to protect their interests as recognized by Fed. R. Civ. P. 23(b)(1)(B).

182.    Class action status is warranted under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to members of the Classes predominate over any questions affecting any individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

183.    The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

184.    There is a substantial likelihood that the Defendants will oppose this class action and will further act or refuse to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole impractical as recognized by Fed. R. Civ. P. 23(b)(2).

185.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical.  The Classes have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

186.    The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

## VIII.   CLAIMS FOR RELIEF

### A.    Colorado Counts

**COUNT I**
**VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT,**
**COLO. REV. STAT. § 6-1-101 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF OPHEIM AND THE COLORADO SUB-CLASS)**

187.    Plaintiff Opheim incorporates and re-alleges each preceding paragraph as though fully set forth herein.

188.    Plaintiff Opheim asserts this count on behalf of himself and members of the Colorado Sub-Class.

189.   Defendants are each a person within the context of the Colorado Consumer Protection Act, COLO. REV. STAT. § 6-1-101 *et seq.* (the "CCPA").  *See* COLO. REV. STAT. § 6-1-102(6).

190.   As alleged herein, Defendants committed unfair and deceptive acts or practices in the conduct of trade or commerce in violation of CCPA.  *See* COLO. REV. STAT. § 6-1-101.

191.   Defendants violated the CCPA by *inter alia*:

> (e) [k]nowingly mak[ing] a false misrepresentation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods . . . ; (g) [r]epresent[ing] that goods, food, services, or property are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another . . . ; (i) [a]dvertis[ing] goods, services, or property with intent not to sell as advertised . . . ; and (u) [f]ail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction.

COLO. REV. STAT. § 6-1-105.

192.   In violation of the CCPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles.  Defendants knowingly failed to disclose, concealed, suppressed, and/or omitted materials facts regarding the Timing Chain System Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff Opheim and the Colorado Sub-Class.

193.   Defendants actively suppressed the fact that the timing chain in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects.  Further, Defendants employed unfair and deceptive trade practices to deny

repair or replacement of the Timing Chain System Defect within a reasonable time in violation of the CCPA.  Defendants also breached its warranties as alleged herein in violation of the CCPA.

194.    Defendants' unfair and deceptive trade practices were likely to deceive a reasonable consumer.  Plaintiff Opheim and members of the Colorado Sub-Class had no reasonable way to know that Class Vehicles contained a Timing Chain System Defect within their engines which were defective in materials, workmanship, design, and/or manufacture and posed a safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the existence of the Timing Chain System Defect and associated safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as Plaintiff Opheim and members of the Colorado Sub-Class did.

195.    Defendants intentionally and knowingly misrepresented and omitted facts regarding the Timing Chain System Defect and associated safety hazard with the intent to mislead Plaintiff Opheim and the Colorado Sub-Class members.  Defendants knew, or should have known, of the existence of the Timing Chain System Defect and its associated safety hazard, including the sudden loss of power or ability to steer while driving.

196.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety hazard to Plaintiff Opheim and Colorado Sub-Class members because Defendants possessed superior and exclusive knowledge regarding the Defect and the hazard associated with it.  Further, once Defendants made representations to the public about safety, quality, functionality, and reliability, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  Rather than disclose the Defect, Defendants engaged in unfair

and deceptive trade practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the defective timing chain tensioners and/or the engines of Class Vehicles.

197.    Defendants' unfair and deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the Timing Chain System Defect were intended to mislead consumers and mislead Plaintiff Opheim and the members of the Colorado Sub-Class.

198.    At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentations, and/or omissions regarding the Timing Chain System Defect and its corresponding safety hazard were material to Plaintiff Opheim and the members of the Colorado Sub-Class.  When Plaintiff Opheim and the members of the Colorado Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' would be free from material defects and/or pose an unavoidable safety hazard.  Had Defendants disclosed that the engines in Class Vehicles had a Timing Chain System Defect and would be subject to premature catastrophic engine failure and/or pose an unavoidable safety hazard, Plaintiff Opheim and the members of the Colorado Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

199.    Defendants had a continuous duty to Plaintiff Opheim and members of the Colorado Sub-Class to refrain from unfair and deceptive practices under the CCPA and to disclose the Timing Chain System Defect and associated safety hazard.  Defendants' unfair and deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the Timing Chain System Defect and corresponding safety hazard are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment, and/or omission of the Timing Chain System Defect and associated safety hazard in violation of the CCPA, Plaintiff Opheim and members of the Colorado Sub-Class have suffered harm and/or continue to suffer harm by the

threat of being exposed to an unavoidable safety hazard, loss of the use of their vehicles, and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Timing Chain System Defect, loss of the benefit of the bargain, and diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of its business.

200.    Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

201.    Defendants' unlawful acts and practices affect the public interest and trade and commerce in the State of Colorado, were in bad faith, and present a continuing safety hazard to Plaintiff Opheim and members of the Colorado Sub-Class.

202.    As a direct and proximate result of the Defendants' violations of the CCPA, Plaintiff Opheim and members of the Colorado Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair, and/or replacement of the Timing Chain System Defect and other related costs; (2) loss of the benefit of the bargain, including the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Timing Chain System Defect; and/or (3) the diminished resale value of the Class Vehicles containing the Timing Chain System Defect.

203.    Plaintiff Opheim and members of the Colorado Sub-Class seeks actual damages against Defendants in an amount to be determined at trial and statutory, treble, and/or punitive damages under the CCPA.

204.    Plaintiff Opheim and members of the Colorado Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees, and restitution, disgorgement of funds, and any other just and proper relief available under the CCPA.

**COUNT II**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFF OPHEIM AND THE COLORADO SUB-CLASS)**

205.    Plaintiff Opheim incorporates and re-alleges each preceding paragraph as though full set forth herein.

206.    Plaintiff Opheim brings this count on behalf of himself and the members of the Colorado Sub-Class.

207.    Defendants intentionally and knowingly concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the Class Vehicles contain a Timing Chain System Defect and corresponding safety risk, with the intent that Plaintiff Opheim and members of the Colorado Sub-Class rely on Defendants' omissions.  As a direct result of Defendants' fraudulent conduct, Plaintiff Opheim and members of the Colorado Sub-Class have suffered actual damages.

208.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a Timing Chain System Defect, concealed the Defect, and never intended to repair or replace the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Opheim and members of the Colorado Sub-Class with a repair or remedy for the Timing Chain System Defect.

209.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Opheim and members of the Colorado Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect.    Further,

Defendants had a duty to disclose any information relating to the safety, quality, functionality, and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.

210.    Once Defendants made representations to the public about the safety, quality, functionality, and reliability of the Class Vehicles, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed, and/or omitted materials facts including the standard, quality, or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

211.    The Timing Chain System Defect is material to Plaintiff Opheim and members of the Colorado Sub-Class because Plaintiff Opheim and members of the Colorado Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Timing Chain System Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk.  No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials, or workmanship, such as the Timing Chain System Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measure or safely remove the vehicle from the road.

212.    Plaintiff Opheim and members of the Colorado Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material

facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

213.    Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Opheim and members of the Colorado Sub-Class from seeking replacement or repair of the Timing Chain System Defect during the applicable warranty periods. Further, Defendants intended to induce Plaintiff Opheim and members of the Colorado Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Timing Chain System Defect in order to decrease costs and increase profits.

214.    Defendants acted with malice, oppression, and fraud.

215.    Plaintiff Opheim and members of the Colorado Sub-Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Timing Chain System Defect and associated safety risk, Plaintiff Opheim and members of the Colorado Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFF OPHEIM AND THE COLORADO SUB-CLASS)**

216.    Plaintiff Opheim incorporates and re-alleges each preceding paragraph as though fully set forth herein.

217.    Plaintiff Opheim asserts this count on behalf of himself and members of the Colorado Sub-Class.

218.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Opheim and members of the Colorado Sub-Class because

Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure. Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

219. Defendants negligently misrepresented and omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants, and members of the public to safety risks. As a direct result of Defendants' negligent conduct, Plaintiff Opheim and members of the Colorado Sub-Class have suffered actual damages.

220. As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Opheim and members of the Colorado Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts, and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Opheim and members of the Colorado Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

221. The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Timing Chain System fails, drivers may be

unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials, or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

222.    Plaintiff Opheim and members of the Colorado Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiff Opheim and members of the Colorado Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

223.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles, and/or the Timing Chain System Defect, Plaintiff Opheim and members of the Colorado Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**COLO. REV. STAT. §§ 4-2-313, 4-2.5-103, AND 4-2-210**
**(ON BEHALF OF PLAINTIFF OPHEIM AND THE COLORADO SUB-CLASS)**

224.    Plaintiff Opheim incorporates and re-alleges each preceding paragraph as though fully set forth herein.

225.    Plaintiff Opheim bring this count on behalf of himself and the Colorado Sub-Class.

226.    Defendants are and were at all relevant times "merchants" with respect of motor vehicles under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

227.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

228.    The Class Vehicles are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-105(1) and 4-2.5-103(1)(h).

229.    Defendants provided Plaintiff Opheim and members of the Colorado Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first," or 4 years or 50,000 miles, whichever occurs first, or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Class, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside the warranty periods.

230.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace, or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff

Opheim and members of the Colorado Sub-Class's decisions to purchase or lease the Class Vehicles.

231.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects.  These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Opheim and members of the Colorado Sub-Class.

232.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

233.    Under the warranties provided to Plaintiff Opheim and members of the Colorado Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

234.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Opheim and members of the Colorado Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

235.    Plaintiff Opheim and members of the Colorado Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform

Plaintiff Opheim and members of the Colorado Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

236.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

237.    On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free or charge for Plaintiff Opheim and members of the Colorado Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

238.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanships, design, and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service materials for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

239.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because the engine materials, workmanship, design, and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

240.    Plaintiff Opheim and members of the Colorado Sub-Class have had sufficient direct dealings with Defendant and their agent, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Opheim and members of the Colorado Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Opheim and each of the other members of the Classes are intended third-party beneficiaries of contracts

between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

241.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

242.    Defendants were further provided notice by Plaintiff Opheim of their breach of express warranties by letter dated February 20, 2020. Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

243.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Opheim and members of the Colorado Sub-Class. Among other things, Plaintiff Opheim and members of the Colorado Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and

Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

244.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Opheim and members of the Colorado Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

245.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Opheim and members of the Colorado Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

246.    Plaintiff Opheim and members of the Colorado Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff Opheim and members of the Colorado Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Opheim and members of the Colorado Sub-Class.

247.    Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe, reliable transportation.

248.    Plaintiff Opheim and the members of the Colorado Sub-Class could not have reasonably discovered the Timing Chain System Defect.

249.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Opheim and members of the Colorado Sub-Class have been damaged in an amount to be determined at trial.

250.    Finally, because Defendants' breach of express warranty as set forth herein, Plaintiff Opheim and members of the Colorado Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of goods and the return to Plaintiff Opheim and members of the Colorado Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT V**
**BREACH OF IMPLIED WARRANTY**
**COLO. REV. STAT. §§ 4-2-313, 4-2.5-103, AND 4-2.5-212**
**(ON BEHALF OF PLAINTIFF OPHEIM AND THE COLORADO SUB-CLASS)**

251.    Plaintiff Opheim incorporates and re-alleges each preceding paragraph as though fully set forth herein.

252.    Plaintiff Opheim brings this count on behalf of himself and the Colorado Sub-Class.

253.    Plaintiff Opheim and members of the Colorado Sub-Class purchased or leased the Class Vehicles, manufactured by Defendants, from Defendants, by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

254.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under COLO. REV. STAT. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

255.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under COLO. REV. STAT. § 4-2.5-103(1)(p).

256.    The Class Vehicles are and were at all relevant times "goods" within the meaning of COLO. REV. STAT. §§ 4-2-314 and 4-2.5-212.

257.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for ordinary purpose for which vehicles are used pursuant to COLO. REV. STAT. § 4-2-314.

258.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation pursuant to COLO. REV. STAT. § 4-2-315.  The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached the implied warranty of merchantability.

259.    Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair, or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair, or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

260.    Plaintiff Opheim and members of the Colorado Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Opheim and members of the Colorado Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Opheim

and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

261.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

262.    Defendants were further provided notice by Plaintiff Opheim of their breach of implied warranties by letter dated February 20, 2020. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

263.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Opheim and members of the Colorado Sub-Class have been damaged in an amount to be proven at trial.

264.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff

Opheim and members of the Colorado Sub-Class.  Among other things, Plaintiff Opheim and members of the Colorado Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Colorado Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

265.    Plaintiff Opheim and members of the Colorado Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

266.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT VI**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,**
**ALTERNATIVELY, ON BEHALF OF PLAINTIFF OPHEIM AND**
**THE COLORADO SUB-CLASS)**

267.    Plaintiff Opheim incorporates and re-alleges each preceding paragraph as though fully set forth herein.

268.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Opheim brings this count on behalf of himself and the members of the Colorado Sub-Class.

269.    Plaintiff Opheim satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

270.    Plaintiff Opheim and members of the Colorado Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

271.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

272.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

273.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

274.    Defendants provided Plaintiff Opheim and members of the Colorado Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles. However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

275.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also

unconscionable and inadequate to protect Plaintiff Opheim and members of the Colorado Sub-Class.  Among other things, Plaintiff Opheim and members of the Colorado Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

276.     The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

277.     Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants.  Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

278.     Plaintiff Opheim and members of the Colorado Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Opheim and members of the Colorado Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided

with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

279.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

280.    Plaintiff Opheim and members of the Colorado Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Opheim and members of the Colorado Sub-Class have not re-accepted their Class Vehicles by retaining them.

281.    Defendants were provided notice by letter dated February 20, 2020 that Plaintiffs would pursue claims on behalf of a class.

282.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

283.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT VII**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF OPHEIM AND THE COLORADO SUB-CLASS)**

284.    Plaintiff Opheim incorporates and re-alleges each preceding paragraph as though fully set forth herein.

285.    Plaintiff Opheim asserts this count on behalf of himself and members of the Colorado Sub-Class.

286.    Plaintiff Opheim and members of the Colorado Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

287.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Timing Chain System Defect in the Class Vehicles.

288.    As a proximate result of Defendants' false representations, omissions, and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits, and profits, Defendants have been unjustly enriched at the expense of Plaintiff Opheim and members of the Colorado Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Opheim and members of the Colorado Sub-Class.

289.    Plaintiff Opheim and members of the Colorado Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits, and profits, including interest, resulting from their unlawful, unjust, and inequitable conduct.

290.    Plaintiff Opheim and members of the Colorado Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Opheim and members of the Colorado Sub-Class, together with interest, in a manner to be determined by the Court.

**B.    Florida Counts**

**COUNT VIII**
**VIOLATION OF FLORIDA'S DECEPTIVE & UNFAIR TRADE PRACTICES ACT**
**("FDUTPA"), FLA. STAT. §§ 501.201, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF OPELA AND THE FLORIDA SUB-CLASS)**

291.    Plaintiff Opela incorporates and re-alleges each preceding paragraph as though fully set forth herein.

292.    Plaintiff Opela brings this count on behalf of herself and the Florida Sub-Class.

293.    Plaintiff Opela and the members of the Florida Sub-Class are "consumers" within the meaning of the FDUTPA, FLA. STAT. § 501.203(7).

294.    Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

295.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).    Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

296.    In the course of their businesses, Defendants failed to disclose and actively concealed the Timing Chain System Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

297.    In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles.    Defendants knowingly concealed, suppressed, and omitted material facts regarding the Timing Chain System Defect and associated

91

safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff Opela and the members of the Florida Sub-Class.

298.    Defendants actively suppressed the fact that the Timing Chain System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects.  Further, Defendants employed unfair and deceptive trade practices by denying repairs or replacement of the Timing Chain System Defect within a reasonable time in violation of FDUTPA.  Defendants also breached warranties as alleged below in violation of FDUTPA.

299.    As alleged above, Defendants have known of the Timing Chain System Defect contained in the Class Vehicles since at least 2010.  Prior to installing the defective Timing Chain Systems in the engines in the Class Vehicles, Defendants knew or should have known the engines in Class Vehicles contained the Timing Chain System Defect due to pre-production testing and failure mode analysis.  Defendants also knew about the Timing Chain System Defect after releasing TSBs describing the issue to their exclusive network of dealerships beginning in or around June 2010.  Finally, Defendants also should have known about the Timing Chain System Defect after monitoring numerous consumer complaints sent to NHTSA.  Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and engines with the Timing Chain System Defect installed in them.

300.    By failing to disclose and by actively concealing the Timing Chain System Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Timing Chain System

Defect to cause a pre-mature failure on the Timing Chain System, well prior to the end of the reasonably foreseeable useful life of the engine, causing cylinder valves and pistons to collide, causing catastrophic engine failure as well as the corresponding safety hazard to vehicle occupants, to ensure that consumers would purchase the Class Vehicles and spend money on useless remedies and repairs.

301.    Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer.  Plaintiff Opela and the members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Timing Chain System Defect, which were defective in materials, workmanship, design, and/or manufacture and posed a serious and significant health and safety risk.  Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Timing Chain System Defect within their engines and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiff Opela and the members of the Florida Sub-Class did.

302.    Defendants intentionally and knowingly misrepresented material facts and omitted material facts regarding the Class Vehicles and the Timing Chain System Defect within the engines installed in Class Vehicles with an intent to mislead Plaintiff Opela and the members of the Florida Sub-Class.

303.    Defendants knew or should have known that its conduct violated the FDUTPA.

304.    Defendants made materials statements and/or omissions about the safety and reliability of the Class Vehicles and/or the Timing Chain System Defect installed in them that were either false or misleading.    Defendants' misrepresentations, omissions, statements, and

commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Timing Chain System Defect and its corresponding safety hazard.

305.    To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay for component parts and expensive repairs to remedy the Timing Chain System Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles and the engines with the Timing Chain System Defect installed in them.  Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

306.    Defendants owed Plaintiff Opela and the members of the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Timing Chain System Defect because Defendants:

(a)    Possessed exclusive knowledge of the Timing Chain System Defect and its associated safety hazard;

(b)    Intentionally concealed the foregoing from Plaintiff Opela and the members of the Florida Sub-Class; and/or

(c)    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff Opela and the members of the Florida Sub-Class that contradicted these representations.

307.    Because Defendants fraudulently concealed the Timing Chain System Defect in the engines of Class Vehicles, and now that the Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise

would be.  Further, Plaintiff Opela and the members of the Florida Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

308.    Defendants' failure to disclose and active concealment of the Timing Chain System Defect in the Class Vehicles were material to Plaintiff Opela and the members of the Florida Sub-Class.  A vehicle made by an honest and reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports on and remedies them.

309.    Plaintiff Opela and the members of the Florida Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had Plaintiff Opela and the members of the Florida Sub-Class been aware of the Timing Chain System Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiff Opela and the members of the Florida Sub-Class either would have not paid as much for their vehicles or would not have purchased or leased them at all.  Plaintiff Opela and the members of the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

310.    Plaintiff Opela and the members of the Florida Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of FDUTPA, and these violations present a continuing risk to Plaintiff Opela, the Florida Sub-Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.

311.    As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiff Opela and the members of the Florida Sub-Class have suffered injury-in-fact and/or actual damage.

312.    Plaintiff Opela and the members of the Florida Sub-Class are entitled to recover their actual damages, under FLA. STAT. § 501.211(2), and attorneys' fees under FLA. STAT. § 501.2105(1).

313.    Plaintiff Opela and the members of the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

**COUNT IX**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFF OPELA AND THE FLORIDA SUB-CLASS)**

314.    Plaintiff Opela incorporates and re-alleges each preceding paragraph as though full set forth herein.

315.    Plaintiff Opela brings this count on behalf of herself and the members of the Florida Sub-Class.

316.    Defendants intentionally and knowingly concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the Class Vehicles contain a Timing Chain System Defect and corresponding safety risk, with the intent that Plaintiff Opela and members of the Florida Sub-Class rely on Defendants' omissions. As a direct result of Defendants' fraudulent conduct, Plaintiff Opela and members of the Florida Sub-Class have suffered actual damages.

317.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a Timing Chain System Defect, concealed the Defect and never intended to repair or replace the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Opela and members of the Florida Sub-Class with a repair or remedy for the Timing Chain System Defect.

318.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Opela and members of the Florida Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect.    Further, Defendants had a duty to disclose any information relating to the safety, quality, functionality, and reliability of Class Vehicles because they consistently marketed the Class Vehicles as safe.

319.    Once Defendants made representations to the public about the safety, quality, functionality, and reliability of the Class Vehicles, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated.  One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed, and/or omitted materials facts including the standard, quality, or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

320.    The Timing Chain System Defect is material to Plaintiff Opela and members of the Florida Sub-Class because Plaintiff Opela and members of the Florida Sub-Class had a reasonable expectation that the vehicles would not contain a defect, such as the Timing Chain System Defect, that leads to exorbitant repair costs and exposes them and other vehicle occupants to a safety risk. No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials, or workmanship, such as the Timing Chain System Defect, that can lead to thousands of dollars in repair or replacement costs, and can cause catastrophic engine failure with little to no warning or time to take preventative measure or safely remove the vehicle from the road.

321.    Plaintiff Opela and members of the Florida Sub-Class would not have purchased or leased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

322.    Defendants knew their concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Opela and members of the Florida Sub-Class from seeking replacement or repair of the Timing Chain System Defect during the applicable warranty periods. Further, Defendants intended to induce Plaintiff Opela and members of the Florida Sub-Class into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Timing Chain System Defect in order to decrease costs and increase profits.

323.    Defendants acted with malice, oppression, and fraud.

324.    Plaintiff Opela and members of the Florida Sub-Class reasonably relied upon Defendants' knowing concealment and omissions.  As a direct and proximate result of Defendants' omissions and active concealment of material facts regarding the Timing Chain System Defect and associated safety risk, Plaintiff Opela and members of the Florida Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT X**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFF OPELA AND THE FLORIDA SUB-CLASS)**

325.    Plaintiff Opela incorporates and re-alleges each preceding paragraph as though fully set forth herein.

326.    Plaintiff Opela asserts this count on behalf of herself and members of the Florida Sub-Class.

98

327.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Opela and members of the Florida Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

328.    Defendants negligently misrepresented and omitted material facts including the standard, quality, or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants, and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Opela and members of the Florida Sub-Class have suffered actual damages.

329.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Opela and members of the Florida Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts, and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Opela and members of the Florida Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

330.    The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

331.    Plaintiff Opela and members of the Florida Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff Opela and members of the Florida Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

332.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Opela and members of the Florida Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## COUNT XI
## BREACH OF EXPRESS WARRANTY
### FLA. STAT. §§ 672.313, 680.21, AND 680.1031
### (ON BEHALF OF PLAINTIFF OPELA AND THE FLORIDA SUB-CLASS)

333.    Plaintiff Opela incorporates and re-alleges each preceding paragraph as though fully set forth herein.

334.    Plaintiff Opela bring this count on behalf of herself and the Florida Sub-Class.

335.    Defendants are and were at all relevant times "merchants" with respect of motor vehicles under FLA. STAT. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

336.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under FLA. STAT. § 680.1031(1)(p).

337.    The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§ 672.105(1) and 680.1031(1)(h).

338.    Defendants provided Plaintiff Opela and members of the Florida Sub-Class with one or more express warranties. For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first," or 4 years or 50,000 miles, whichever occurs first, or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles," which covers "all internal [engine] parts" including the Timing Chain System. Under warranties provided to members of the Class, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles. However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside the warranty periods.

339.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace, or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff Opela and members of the Florida Sub-Class's decisions to purchase or lease the Class Vehicles.

340.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects.  These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Opela and members of the Florida Sub-Class.

341.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

342.    Under the warranties provided to Plaintiff Opela and members of the Florida Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

343.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Opela and members of the Florida Sub-Class purchased or leased their Class Vehicles. Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

344.    Plaintiff Opela and members of the Florida Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the

102

existence of the Defect and associated safety risk, which were known and concealed by Defendants. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Opela and members of the Florida Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

345. Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

346. On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free or charge for Plaintiff Opela and members of the Florida Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

347. Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanships, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service materials for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

348. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because the engine materials, workmanship, design, and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

349. Plaintiff Opela and members of the Florida Sub-Class have had sufficient direct dealings with Defendant and their agent, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Opela and members of the Florida

Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff Opela and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

350.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

351.    Defendants were further provided notice by Plaintiff Opela of their breach of express warranties by letter dated February 20, 2020. Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

352.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Opela and members of the Florida Sub-Class. Among other things, Plaintiff Opela and members of the Florida Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross

disparity in bargaining power exited between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

353. Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Opela and members of the Florida Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

354. Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Opela and members of the Florida Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

355. Plaintiff Opela and members of the Florida Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants. Despite the existence of the warranties, Defendants failed to inform Plaintiff Opela and members of the Florida Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Opela and members of the Florida Sub-Class.

356. Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe, reliable transportation.

357.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Opela and members of the Florida Sub-Class have been damaged in an amount to be determined at trial.

358.    Finally, because Defendants' breach of express warranty as set forth herein, Plaintiff Opela and members of the Florida Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of goods and the return to Plaintiff Opela and members of the Florida Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT XII**
**BREACH OF IMPLIED WARRANTY**
**FLA. STAT. §§ 672.314, 372.315, AND 680.1031**
**(ON BEHALF OF PLAINTIFF OPELA AND THE FLORIDA SUB-CLASS)**

359.    Plaintiff Opela incorporates and re-alleges each preceding paragraph as though fully set forth herein.

360.    Plaintiff Opela brings this count on behalf of herself and the Florida Sub-Class.

361.    Plaintiff Opela and members of the Florida Sub-Class purchased or leased the Class Vehicles, manufactured by specific defendants, from specific defendant by and through its authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

362.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under FLA. STAT. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

363.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under FLA. STAT. § 680.1031(1)(p).

364.    The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§ 672.105(1) and 680.1031(1)(h).

365.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for ordinary purpose for which vehicles are used pursuant to FLA. STAT. § 672.314.

366.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation pursuant to FLA. STAT. § 672.315.  The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached the implied warranty of merchantability.

367.    Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair, or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair, or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

368.    Plaintiff Opela and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Opela and members of the Florida Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Opela

and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

369.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

370.    Defendants were further provided notice by Plaintiff Opela of their breach of implied warranties by letter dated February 20, 2020. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

371.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Opela and members of the Florida Sub-Class have been damaged in an amount to be proven at trial.

372.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Opela

and members of the Florida Sub-Class.  Among other things, Plaintiff Opela and members of the Florida Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Florida Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

373.    Plaintiff Opela and members of the Florida Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

374.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XIII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,**
**ALTERNATIVELY, ON BEHALF OF PLAINTIFF OPELA AND**
**THE FLORIDA SUB-CLASS)**

375.    Plaintiff Opela incorporates and re-alleges each preceding paragraph as though fully set forth herein.

376.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Opela brings this count on behalf of herself and the members of the Florida Sub-Class.

377.    Plaintiff Opela satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

378.    Plaintiff Opela and members of the Florida Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

379.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

380.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

381.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

382.    Defendants provided Plaintiff Opela and members of the Florida Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

383.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also

unconscionable and inadequate to protect Plaintiff Opela and members of the Florida Sub-Class. Among other things, Plaintiff Opela and members of the Florida Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

384.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

385.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect. Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality, or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

386.    Plaintiff Opela and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Opela and members of the Florida Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided

with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

387.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

388.    Plaintiff Opela and members of the Florida Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants. Thus, Plaintiff Opela and members of the Florida Sub-Class have not re-accepted their Class Vehicles by retaining them.

389.    Defendants were provided notice by letter dated February 20, 2020 that Plaintiffs would pursue claims on behalf of a class.

390.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

391.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XIV
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF OPELA AND THE FLORIDA SUB-CLASS)

392.    Plaintiff Opela incorporates and re-alleges each preceding paragraph as though fully set forth herein.

393.    Plaintiff Opela asserts this count on behalf of herself and members of the Florida Sub-Class.

394.    Plaintiff Opela and members of the Florida Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

395.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Timing Chain System Defect in the Class Vehicles.

396.    As a proximate result of Defendants' false representations, omissions, and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits, and profits, Defendants have been unjustly enriched at the expense of Plaintiff Opela and members of the Florida Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Opela and members of the Florida Sub-Class.

397.    Plaintiff Opela and members of the Florida Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits, and profits, including interest, resulting from their unlawful, unjust, and inequitable conduct.

398.    Plaintiff Opela and members of the Florida Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Opela and members of the Florida Sub-Class, together with interest, in a manner to be determined by the Court.

C.    **Georgia Counts**

**COUNT XV**
**VIOLATION OF THE GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT,**
**GA. CODE ANN. §§ 10-1-370 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF HOLYFIELD AND THE GEORGIA SUB-CLASS)**

399.    Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

400.    Plaintiff Holyfield asserts this count on behalf of herself and members of the Georgia Sub-Class.

401.    Plaintiff Holyfield and members of the Georgia Sub-Class are persons within the context of the Georgia Uniform Deceptive Trade Practices Act (hereinafter "GUDTPA"), GA. CODE ANN. §§ 10-1-370 *et seq.* and specifically § 10-1-371(5).

402.    Plaintiff Holyfield and members of the Georgia Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

403.    Defendants are persons within the context of GUDTPA, GA. CODE ANN. §§ 10-1-370 *et seq.* and specifically § 10-1-371(5).

404.    Defendants are engaged in deceptive trade practices in Georgia within the context of GUDTPA, GA. CODE ANN. §§ 10-1-372(5), (7), (9) and (12) as described in this complaint.

405.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of the GUDTPA as described in this complaint.

406.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff Holyfield and members of the Georgia Sub-Class would

rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

407.    Defendants    fraudulently,    intentionally,    negligently,    and/or    recklessly misrepresented to Plaintiff Holyfield and members of the Georgia Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

408.    Defendants    fraudulently,    intentionally,    negligently    and/or    recklessly misrepresented to Plaintiff Holyfield and members of the Georgia Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs. Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and also included an engine life exceeding 120,000 miles. In fact, engines in Class Vehicles contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

409.    Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

410.    Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning the Timing Chain System Defect.

411.     Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

412.     One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible. Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the GUDTPA.

413.     Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Holyfield and members of the Georgia Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles. As reasonable consumers, Plaintiff Holyfield and members of the Georgia Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

414.     If Defendants had not concealed class engine defects from Plaintiff Holyfield and members of the Georgia Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

415.     Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

416.    Defendants violated the GUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

417.    Defendants violated the GUDTPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

418.    Defendants further violated the GUDTPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

419.    Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the GUDTPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the failures of Class Vehicles owned by Holyfield and members of the Georgia Sub-Class.

420.    The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of GUDTPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

421.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Holyfield and members of the Georgia Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

422.    Plaintiff Holyfield and members of the Georgia Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

423.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

424.    Plaintiff Holyfield and members of the Georgia Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

**COUNT XVI**
**VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT OF 1975,**
**GA. CODE ANN. §§ 10-1-390 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF HOLYFIELD AND THE GEORGIA SUB-CLASS)**

425.    Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

426.    Plaintiff Holyfield asserts this count on behalf of herself and members of the Georgia Sub-Class.

427.    Plaintiff Holyfield and members of the Georgia Sub-Class are consumers within the context of the Georgia Fair Business Practices Act Of 1975 (hereinafter "GFBPA"), GA. CODE ANN. §§ 10-1-390 *et seq*. and specifically GA. CODE ANN. § 10-1-392(6).

428.    Plaintiff Holyfield and members of the Georgia Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

429.    Defendants are engaged in consumer transactions in Georgia within the context of GFBPA, GA. CODE ANN. §§ 10-1-392(10).

430.    Defendants are engaged in unfair and deceptive consumer transactions practices within the context of GFBPA, GA. CODE ANN. §§ 10-1-393(b)(2), (b)(7) and (b)(9) *inter alia*, as described in this complaint.

431.    Defendants committed unconscionable, deceptive and unfair trade practices in the course of trade and commerce within the context of GFBPA as described in this complaint.

432.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Timing Chain System with intent that Plaintiff Holyfield and members of the Georgia Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

433.    Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Holyfield and members of the Georgia Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

434.    Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Holyfield and members of the Georgia Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs. Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and

also included an engine life exceeding 120,000 miles. In fact, engines in Class Vehicles contained a known defect as described in this complaint that caused the Timing Chain System to prematurely fail.

435.    Defendants actively suppressed the fact that Timing Chain Systems and engines in Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

436.    Defendants secretly repaired some Timing Chain Systems in Class Vehicles to prevent dissemination of knowledge concerning the Timing Chain System Defect.

437.    Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost of repairs to individual vehicle owners.

438.    One scheme included blaming Timing Chain System failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible. Rather than conduct an open and fair inspection and repair procedure for all Timing Chain Systems, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the GFBPA.

439.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff Holyfield and members of the Georgia Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles. As reasonable consumers, Plaintiff Holyfield and members of the Georgia Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture. Any reasonable consumer under

the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

440.    If Defendants had not concealed class engine defects from Plaintiff Holyfield and members of the Georgia Sub-Class within the express warranty period, Timing Chain Systems would have been repaired without cost to purchasers as promised under the original warranty.

441.    Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

442.    Defendants violated the GFBPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

443.    Defendants violated the GFBPA by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that Class Vehicles contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

444.    Defendants further violated the GFBPA by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

445.    Defendants committed unfair and deceptive trade practices as described in this complaint.   Defendants repeatedly violated the GFBPA on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations

concerning *inter alia,* the causes of the failures of Class Vehicles owned by Holyfield and members of the Georgia Sub-Class.

446.    The secret warranty programs for Class Vehicles initiated by Defendants and other wrongful conduct of Defendants in violation of GFBPA occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

447.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Holyfield and members of the Georgia Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

448.    Plaintiff Holyfield and members of the Georgia Sub-Class experienced premature class engine failure, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

449.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

450.    Plaintiff Holyfield and members of the Georgia Sub-Class fully complied with the pre-litigation written notice requirements of GFBPA, GA. CODE ANN. § 10-1-399(b) with notice dated January 17, 2020. The Defendants failed to file a timely response to the written demand of Plaintiff Holyfield and members of the Georgia Sub-Class.   When the Defendants finally responded to the written demand, they declined to provide any assistance to Plaintiff Holyfield and members of the Georgia Sub-Class with respect to repair of their Class Vehicles' Timing Chain System.   The Defendants' conduct in responding to the written demand was unreasonable in relation to the injuries suffered by Plaintiff Holyfield and members of the Georgia Sub-Class.

451.    Plaintiff Holyfield and members of the Georgia Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

**COUNT XVII**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFF HOLYFIELD AND THE GEORGIA SUB-CLASS)**

452.    Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

453.    Plaintiff Holyfield asserts this count on behalf of herself and members of the Georgia Sub-Class.

454.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Holyfield and members of the Georgia Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

455.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Holyfield and members of the Georgia Sub-Class with a repair or remedy for the Timing Chain System Defect.

456.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Holyfield and members of the Georgia Sub-Class because

Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles. Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

457.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Holyfield and members of the Georgia Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

458.    The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also

at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road. Plaintiff Holyfield and members of the Georgia Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

459. Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Holyfield and members of the Georgia Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods. Further, Defendants intended to induce Plaintiff Holyfield and members of the Georgia Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Holyfield and members of the Georgia Sub-Class, in order to decrease costs and increase profits.

460. Defendants acted with malice, oppression, and fraud.

461. Plaintiff Holyfield and members of the Georgia Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Holyfield and

members of the Georgia Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XVIII**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFF HOLYFIELD AND THE GEORGIA SUB-CLASS)**

462.    Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

463.    Plaintiff Holyfield asserts this count on behalf of herself and members of the Georgia Sub-Class.

464.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Holyfield and members of the Georgia Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

465.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Holyfield and members of the Georgia Sub-Class have suffered actual damages.

466.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Holyfield and members of the Georgia Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine,

or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Holyfield and members of the Georgia Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

467.    The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

468.    Plaintiff Holyfield and members of the Georgia Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff Holyfield and

members of the Georgia Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

469.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Holyfield and members of the Georgia Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT XIX**
**BREACH OF EXPRESS WARRANTY**
**GA. CODE ANN. §§ 11-2-313, 11-2A-103, AND 11-2A-210**
**(ON BEHALF OF PLAINTIFF HOLYFIELD AND THE GEORGIA SUB-CLASS)**

470.    Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

471.    Plaintiff Holyfield brings this count on behalf of herself and the Georgia Sub-Class.

472.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under GA. CODE ANN. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" and "lessors" of motor vehicles under §§ 11-2-103(1)(d) and 11-2A-103(1)(p).

473.    The Class Vehicles are and were at all relevant times "goods" within the meaning of GA. CODE ANN. § 11-2-105(1) and 11-2A-103(1)(h).

474.    Defendants provided Plaintiff Holyfield and members of the Georgia Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties

provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles. However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

475. Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles. Such representations formed the basis of the bargain in Plaintiff Holyfield and members of the Georgia Sub-Class's decisions to purchase or lease the Class Vehicles.

476. Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Holyfield and members of the Georgia Sub-Class.

477. In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

478. Under the warranties provided to Plaintiff Holyfield and members of the Georgia Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time. As alleged herein, Defendants breached these warranties.

479.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Holyfield and members of the Georgia Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

480.    Plaintiff Holyfield and members of the Georgia Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Holyfield and members of the Georgia Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

481.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

482.    On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Holyfield and members of the Georgia Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

483.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

484.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

485.    Plaintiff Holyfield and members of the Georgia Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Holyfield and members of the Georgia Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Holyfield and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

486.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

487.    Defendants were further provided notice by Plaintiff Holyfield of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

488.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Holyfield and members of the Georgia Sub-Class.  Among other things, Plaintiff Holyfield and members of the Georgia Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

489.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Holyfield and members of the Georgia Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

490.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Holyfield and members of the Georgia Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

491.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Holyfield and members of the Georgia Sub-Class purchased or leased their Class Vehicles.

492.    Plaintiff Holyfield and members of the Georgia Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge

of the existence of the Defect, which was known and concealed by Defendants. Despite the existence of the warranties, Defendants failed to inform Plaintiff Holyfield and members of the Georgia Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Holyfield and members of the Georgia Sub-Class.

493.     Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

494.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Holyfield and members of the Georgia Sub-Class have been damaged in an amount to be determined at trial.

495.     Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Holyfield and members of the Georgia Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Holyfield and members of the Georgia Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### COUNT XX
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### GA. CODE ANN. §§ 11-2A-2013, 11-2A-212, 11-2-314, AND 11-2-315
### (ON BEHALF OF PLAINTIFF HOLYFIELD AND THE GEORGIA SUB-CLASS)

496.     Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

497.     Plaintiff Holyfield brings this count on behalf of herself and the Georgia Sub-Class.

498.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under GA. CODE ANN. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" and "lessors" of motor vehicles under §§ 11-2-103(1)(d) and 11-2A-103(1)(p).

499.    The Class Vehicles are and were at all relevant times "goods" within the meaning of GA. CODE ANN. § 11-2-105(1) and 11-2A-103(1)(h).

500.    Plaintiff Holyfield and members of the Georgia Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

501.    A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to GA. CODE ANN. §§11-2-314 and 11-2A-212.

502.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Timing Chain System Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

503.    Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain

System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

504.    Plaintiff Holyfield and members of the Georgia Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Holyfield and members of the Georgia Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Holyfield and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

505.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

506.    Defendants were further provided notice by Plaintiff Holyfield of their breach of implied warranties by letter dated January 17, 2020.   Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

507.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Holyfield and members of the Georgia Sub-Class have been damaged in an amount to be proven at trial.

508.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Holyfield and members of the Georgia Sub-Class. Among other things, Plaintiff Holyfield and members of the Georgia Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Georgia Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

509.    Plaintiff Holyfield and members of the Georgia Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

510.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XXI**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,**
**ALTERNATIVELY, ON BEHALF OF PLAINTIFF HOLYFIELD AND**
**THE GEORGIA SUB-CLASS)**

511.    Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

512.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Holyfield brings this count on behalf of herself and the members of the Georgia Sub-Class.

513.    Plaintiff Holyfield satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

514.    Plaintiff Holyfield and members of the Georgia Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

515.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

516.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

517.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

518.    Defendants provided Plaintiff Holyfield and members of the Georgia Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners

and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

519.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Holyfield and members of the Georgia Sub-Class.  Among other things, Plaintiff Holyfield and members of the Georgia Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

520.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

521.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants.  Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

522. Plaintiff Holyfield and members of the Georgia Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Holyfield and members of the Georgia Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

523. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

524. Plaintiff Holyfield and members of the Georgia Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants. Thus, Plaintiff Holyfield and members of the Georgia Sub-Class have not re-accepted their Class Vehicles by retaining them.

525.    Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

526.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

527.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XXII
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF HOLYFIELD AND THE GEORGIA SUB-CLASS)

528.    Plaintiff Holyfield incorporates and re-alleges each preceding paragraph as though fully set forth herein.

529.    Plaintiff Holyfield asserts this count on behalf of herself and members of the Georgia Sub-Class.

530.    Plaintiff Holyfield and members of the Georgia Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

531.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

532.    As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Holyfield and members of the Georgia Sub-Class.  It would be inequitable for

Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Holyfield and members of the Georgia Sub-Class.

533.    Plaintiff Holyfield and members of the Georgia Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

534.    Plaintiff Holyfield and members of the Georgia Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Holyfield and members of the Georgia Sub-Class, together with interest, in a manner to be determined by the Court.

    **D.**    **Illinois Counts**

**COUNT XXIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILL. COMP. STAT § 505/1 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF ELDRIDGE AND THE ILLINOIS SUB-CLASS)**

535.    Plaintiff Eldridge incorporates and re-alleges each preceding paragraph as though fully set forth herein.

536.    Plaintiff Eldridge asserts this count on behalf of himself and members of the Illinois Sub-Class.

537.    Defendants' practices, acts, policies and course of conduct, as described above, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, misrepresentations, and/or the knowing concealment, suppression, or omission of material facts with the intent that consumers, including Plaintiff Eldridge and members of the Illinois Sub-Class, rely upon such concealment, suppression, omission in connection with the sale or advertisement of merchandise of Class Vehicles in violation of the Illinois Consumer Fraud and Deceptive Business Practice Act (ICFA), 815 ILL. COMP. STAT. § 505/1 *et seq.* (the "Consumer Fraud Act"),

141

when purchasing and/or leasing their respective Class Vehicles with the Timing Chain System Defect.

538.    Defendants intentionally concealed, suppressed and omitted to Plaintiff Eldridge and members of the Illinois Sub-Class at the time of purchase or lease, that the Class Vehicles contained manufacturing, materials and/or workmanship defects, with the intent that Plaintiff Eldridge members of the Illinois Sub-Class rely upon such concealment, suppression, failure to disclose or omission.

539.    Defendants knew and intentionally concealed, suppressed and omitted to consumers who purchased or leased the Class Vehicles, including Plaintiff Eldridge and members of the Illinois Sub-Class, the existence of defects and problems in the Timing Chain System, despite the fact that Defendants possessed prior knowledge of the inherent defects to the Class Vehicles' Timing Chain Systems.

540.    Defendants actively concealed from Plaintiff Eldridge and members of the Illinois Sub-Class the fact that the Timing Chain System was defective, despite the fact that Defendants learned of such defects in as early as 2008.

541.    Defendants represented to Plaintiff Eldridge and members of the Illinois Sub-Class that the Class Vehicles were of merchantable quality, in proper working order, and fit for the ordinary purposes for which passenger vehicles are used when in fact the Class Vehicles were not of merchantable quality, were not in proper working order, and/or were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacture defects which cause premature Timing Chain System failure, engine failure, and/or failed performance.

542.    Defendants' acts of commission and omission were done with knowledge and intent to induce Plaintiff Eldridge and members of the Illinois Sub-Class to rely upon Defendants' deceptive misrepresentations and decide to purchase and/or lease a Class Vehicle.

543.    Defendants' deceptive acts of commission and omission were material and in regard to facts material to a consumer's decision to purchase and/or lease a Class Vehicle.

544.    Defendants' conduct was in the course of conduct involving trade or commerce in the sale and/or lease of the Class Vehicles and/or related activities.

545.    Defendants' acts of commission and omission caused Plaintiff Eldridge and members of the Illinois Sub-Class to suffer ascertainable losses of money and property in that they were forced to expend sums of money at its dealerships and elsewhere to repair and/or replace the Timing Chain System and/or Timing Chain System components of their Class Vehicles, despite the fact that Defendants had prior knowledge of the Defects at the time of placing Class Vehicles into the stream of commerce.

546.    In addition to direct monetary losses, Plaintiff Eldridge and members of the Illinois Sub-Class suffered an ascertainable loss by paying for the repair out of pocket and by receiving less value than what was promised to them at the time of purchase and/or lease.  Specifically, Plaintiff Eldridge and members of the Illinois Sub-Class paid for a vehicle that is now worth significantly less because of the existence of the Timing Chain System Defect, because of the damage it causes to the Class Vehicles, and because the purchase price of the Class Vehicles included a warranty program that was supposed to provide free repairs for all defects in materials or workmanship that occurred during the warranty period, but instead were deprived of the value of this warranty due to Defendants' knowing concealment.

547.    A causal relationship exists between Defendants' deceptive and unlawful conduct and the ascertainable losses suffered by Plaintiff Eldridge and members of the Illinois Sub-Class. Consumers, including Plaintiff Eldridge and members of the Illinois Sub-Class, relied upon Defendants' misrepresentations, concealments, and omissions in deciding to purchase and/or lease their Class Vehicles.  Had the Timing Chain System Defect in the Class Vehicles been disclosed, they would not have purchased them, would have paid less for the Class Vehicles had they decided to purchase them, or taken affirmative steps to prevent the catastrophic damage to their Class Vehicles' Timing Chain System and engine during the warranty period.

548.    Plaintiff Eldridge and members of the Illinois Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

### COUNT XXIV
### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT
### (ON BEHALF OF PLAINTIFF ELDRIDGE AND THE ILLINOIS SUB-CLASS)

549.    Plaintiff Eldridge incorporates and re-alleges each preceding paragraph as though fully set forth herein.

550.    Plaintiff Eldridge asserts this count on behalf of himself and members of the Illinois Sub-Class.

551.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Eldridge and members of the Illinois Sub-Class rely on Defendants'

misrepresentations and omissions. As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

552. Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods. To date, Defendants have not provided Plaintiff Eldridge and members of the Illinois Sub-Class with a repair or remedy for the Timing Chain System Defect.

553. Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Eldridge and members of the Illinois Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles. Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

554. As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Eldridge

and members of the Illinois Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

555.    The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.  Plaintiff Eldridge and members of the Illinois Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

556.    Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Eldridge and members of the Illinois Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods. Further, Defendants intended to induce Plaintiff Eldridge and members of the Illinois Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or

repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Eldridge and members of the Illinois Sub-Class, in order to decrease costs and increase profits.

557.    Defendants acted with malice, oppression, and fraud.

558.    Plaintiff Eldridge and members of the Illinois Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Eldridge and members of the Illinois Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XXV**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFF ELDRIDGE AND THE ILLINOIS SUB-CLASS)**

559.    Plaintiff Eldridge incorporates and re-alleges each preceding paragraph as though fully set forth herein.

560.    Plaintiff Eldridge asserts this count on behalf of himself and members of the Illinois Sub-Class.

561.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Eldridge and members of the Illinois Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

562.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed

147

in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Eldridge and members of the Illinois Sub-Class have suffered actual damages.

563.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Eldridge and members of the Illinois Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Eldridge and members of the Illinois Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

564.    The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic

engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

565.    Plaintiff Eldridge and members of the Illinois Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiff Eldridge and members of the Illinois Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

566.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Eldridge and members of the Illinois Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## COUNT XXVI
## BREACH OF EXPRESS WARRANTY,
## 810 ILL. COMP. STAT. §§ 5/2-313, 5/2A-103, AND 5/2A-210
## (ON BEHALF OF PLAINTIFF ELDRIDGE AND THE ILLINOIS SUB-CLASS)

567.    Plaintiff Eldridge incorporates and re-alleges each preceding paragraph as though fully set forth herein.

568.    Plaintiff Eldridge brings this count on behalf of himself and the Illinois Sub-Class.

569.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 ILL. COMP. STAT. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" and "lessors" of motor vehicles under § 5/2-103(1)(d) and 5/2A-103(1)(p).

570.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. §§ 5/2-105(1) and 5/2A-103(1)(h).

571.    Defendants provided Plaintiff Eldridge and members of the Illinois Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

572.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff Eldridge and members of the Illinois Sub-Class's decisions to purchase or lease the Class Vehicles.

573.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Eldridge and members of the Illinois Sub-Class.

574.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

575.    Under the warranties provided to Plaintiff Eldridge and members of the Illinois Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

576.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Eldridge and members of the Illinois Sub-Class purchased or leased their Class Vehicles. Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

577.    Plaintiff Eldridge and members of the Illinois Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Eldridge and members of the Illinois Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

578.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

579.    On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Eldridge and members of the Illinois Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

580.     Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

581.     Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

582.     Plaintiff Eldridge and members of the Illinois Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Eldridge and members of the Illinois Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Eldridge and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

583.     Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and

concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

584.    Defendants were further provided notice by Plaintiff Eldridge of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

585.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Eldridge and members of the Illinois Sub-Class.  Among other things, Plaintiff Eldridge and members of the Illinois Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

586.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Eldridge and members of the Illinois Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

587.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Eldridge and members of the Illinois Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

588.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Eldridge and members of the Illinois Sub-Class purchased or leased their Class Vehicles.

589.    Plaintiff Eldridge and members of the Illinois Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff Eldridge and members of the Illinois Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Eldridge and members of the Illinois Sub-Class.

590.    Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

591.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Eldridge and members of the Illinois Sub-Class have been damaged in an amount to be determined at trial.

592.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Eldridge and members of the Illinois Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Eldridge and members of the Illinois Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT XXVII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,
## 810 ILL. COMP. STAT. §§ 5/2-314, 5/2A-103, 5/2A-212, AND 5/2-315
## (ON BEHALF OF PLAINTIFF ELDRIDGE AND THE ILLINOIS SUB-CLASS)

593.    Plaintiff Eldridge incorporates and re-alleges each preceding paragraph as though fully set forth herein.

594.    Plaintiff Eldridge brings this count on behalf of himself and the Illinois Sub-Class.

595.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 ILL. COMP. STAT. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" and "lessors" of motor vehicles under § 5/2-103(1)(d) and 5/2A-103(1)(p).

596.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILL. COMP. STAT. §§ 5/2-105(1) and 5/2A-103(1)(h).

597.    Plaintiff Eldridge and members of the Illinois Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

598.    A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILL. COMP. STAT. § 5/2-314.

599.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Timing Chain System

Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

600. Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

601. Plaintiff Eldridge and members of the Illinois Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Eldridge and members of the Illinois Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff Eldridge and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

602. Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

603.   Defendants were further provided notice by Plaintiff Eldridge of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

604.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Eldridge and members of the Illinois Sub-Class have been damaged in an amount to be proven at trial.

605.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Eldridge and members of the Illinois Sub-Class.  Among other things, Plaintiff Eldridge and members of the Illinois Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Illinois Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

606.   Plaintiff Eldridge and members of the Illinois Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

607.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XXVIII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,**
**ALTERNATIVELY, ON BEHALF OF PLAINTIFF ELDRIDGE AND THE**
**ILLINOIS SUB-CLASS)**

608.    Plaintiff Eldridge incorporates and re-alleges each preceding paragraph as though fully set forth herein.

609.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Eldridge brings this count on behalf of himself and the members of the Illinois Sub-Class.

610.    Plaintiff Eldridge satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

611.    Plaintiff Eldridge and members of the Illinois Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

612.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

613.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

614.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

615.    Defendants provided Plaintiff Eldridge and members of the Illinois Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first;

158

and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

616.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Eldridge and members of the Illinois Sub-Class. Among other things, Plaintiff Eldridge and members of the Illinois Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

617.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

618.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to

premature failure and fails to operate as represented by Defendants.  Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

619.    Plaintiff Eldridge and members of the Illinois Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Eldridge and members of the Illinois Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

620.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

621.    Plaintiff Eldridge and members of the Illinois Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Eldridge and members of the Illinois Sub-Class have not re-accepted their Class Vehicles by retaining them.

622.    Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

623.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

624.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT XXIX
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF ELDRIDGE AND THE ILLINOIS SUB-CLASS)

625.    Plaintiff Eldridge incorporates and re-alleges each preceding paragraph as though fully set forth herein.

626.    Plaintiff Eldridge asserts this count on behalf of himself and members of the Illinois Sub-Class.

627.    Plaintiff Eldridge and members of the Illinois Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

628.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

629. As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Eldridge and members of the Illinois Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Eldridge and members of the Illinois Sub-Class.

630. Plaintiff Eldridge and members of the Illinois Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

631. Plaintiff Eldridge and members of the Illinois Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Eldridge and members of the Illinois Sub-Class, together with interest, in a manner to be determined by the Court.

E.     **Massachusetts Counts**

**COUNT XXX**
**VIOLATION OF THE MASSACHUSETTS CONSUMER PROTECTION ACT,**
**MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF POPOLO AND THE MASSACHUSETTS SUB-CLASS)**

632. Plaintiff Popolo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

633. Plaintiff Popolo asserts this count on behalf of himself and members of the Massachusetts Sub-Class.

634. Plaintiff Popolo, members of the Massachusetts Sub-Class, and Defendants are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, §1(a) who purchased and/or leased Class Vehicles for personal, family or household use.

635.    Defendants were and are engaged in "trade or commerce" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(b).

636.    The Massachusetts Consumer Protection Act ("Massachusetts CPA") prohibits "unfair or deceptive act or practices in the conduct of any trade or commerce."  MASS. GEN. LAWS ch. 93A, § 2.

637.    In the course of Defendants' business, Defendants violated the Massachusetts CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective Timing Chain Systems installed in them, as described above.  Specifically, in marketing, offering for sale, and selling the Class Vehicles with defective Timing Chain Systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices: representing that the Class Vehicles and/or the defective Timing Chain Systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent no to sell them as advertised.

638.    Defendants have known of the Timing Chain System Defect in their Class Vehicles and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Timing Chain Systems installed in them.

639.    By failing to disclose and by actively concealing the Timing Chain System Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair and deceptive business practices in violation of the Massachusetts CPA.  Defendants deliberately withheld the information about the propensity of the defective Timing Chain Systems to fail well before the useful life of the engine had run, possibly destroying engine components and

necessitating thousands of dollars in repairs, in order to ensure that consumer would purchase the Class Vehicles.

640.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Massachusetts Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective Timing Chain Systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

641.    Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the Timing Chain System Defect with an intent to mislead the members of the Massachusetts Sub-Class.

642.    Defendants knew or should have known that their conduct violated the Massachusetts CPA.

643.    As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective Timing Chain Systems installed in them that were either false or misleading.

644.    To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective Timing Chain Systems installed in them and their associated safety risk, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

645. Defendants owed members of the Massachusetts Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Timing Chain System Defect because Defendants:

(a)    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)    Intentionally concealed the foregoing from the Class; and/or

(c)    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

646. Because Defendants fraudulently concealed the Timing Chain System Defect in Class Vehicles, and disclosure of the Timing Chain System Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, members of the Massachusetts Sub-Class overpaid for the Class Vehicles and the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

647. Defendants' failure to disclose and active concealment of the dangers and risks posed by the Timing Chain System Defect in Class Vehicles were material to members of the Massachusetts Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

648. Members of the Massachusetts Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Timing Chain System Defect that existed in the Class Vehicles, and Defendants'

complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all.  The members of the Massachusetts Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

649.    Members of the Massachusetts Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

650.    As a direct and proximate result of Defendants' violations of the Massachusetts CPA, members of the Massachusetts Sub-Class have suffered injury-in-fact and/or actual damage.

651.    Pursuant to MASS. GEN. LAWS ch. 93A, §9, members of the Massachusetts Sub-Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each member of the Class.  Because Defendants' conduct was committed willfully and knowingly, the members of the Massachusetts Sub-Class are entitled to recover, for each member, up to three times actual damages, but no less than two times actual damages.

652.    Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above.  In addition, on January 17, 2020, a notice letter was sent on behalf of members of the Massachusetts Sub-Class to Defendants pursuant to MASS. GEN. LAWS ch. 93A, §9(3).  Because Defendants failed to remedy their unlawful conduct within the requisite time period, members of the Massachusetts Sub-Class seek all damages and relief to which they are entitled.

**COUNT XXXI**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFF POPOLO AND THE MASSACHUSETTS SUB-CLASS)**

653.    Plaintiff Popolo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

654.    Plaintiff Popolo asserts this count on behalf of himself and members of the Massachusetts Sub-Class.

655.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Popolo and members of the Massachusetts Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

656.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Popolo and members of the Massachusetts Sub-Class with a repair or remedy for the Timing Chain System Defect.

657.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Popolo and members of the Massachusetts Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

658.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature

167

failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Popolo and members of the Massachusetts Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

659.    The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.  Plaintiff Popolo and members of the Massachusetts Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

660.    Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Popolo and members of the Massachusetts Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods.    Further, Defendants intended to induce Plaintiff Popolo and members of the Massachusetts Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Popolo and members of the Massachusetts Sub-Class, in order to decrease costs and increase profits.

661.    Defendants acted with malice, oppression, and fraud.

662.    Plaintiff Popolo and members of the Massachusetts Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Popolo and members of the Massachusetts Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XXXII**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFF POPOLO AND THE MASSACHUSETTS SUB-CLASS)**

663.    Plaintiff Popolo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

664.    Plaintiff Popolo asserts this count on behalf of himself and members of the Massachusetts Sub-Class.

665.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Popolo and members of the Massachusetts Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

666.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Popolo and members of the Massachusetts Sub-Class have suffered actual damages.

667.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Popolo and members of the Massachusetts Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Popolo and members of the Massachusetts Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

668.    The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

669.    Plaintiff Popolo and members of the Massachusetts Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff Popolo and members of the Massachusetts Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

670.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Popolo and members of the Massachusetts Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT XXXIII**
**BREACH OF EXPRESS WARRANTY,**
**MASS. GEN. LAWS CH. 106, §§ 2-313, 2A-103, AND 2A-210 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF POPOLO AND THE MASSACHUSETTS SUB-CLASS)**

671.     Plaintiff Popolo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

672.     Plaintiff Popolo brings this count on behalf of himself and the Massachusetts Sub-Class.

673.     Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MASS. GEN. LAWS ch. 106 § 2-104(a), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

674.     The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under MASS. GEN. LAWS ch. 106 § 2-103(1)(a).

675.     The Class Vehicles are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

676.     Defendants provided Plaintiff Popolo and members of the Massachusetts Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent

nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

677.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff Popolo and members of the Massachusetts Sub-Class's decisions to purchase or lease the Class Vehicles.

678.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Popolo and members of the Massachusetts Sub-Class.

679.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

680.    Under the warranties provided to Plaintiff Popolo and members of the Massachusetts Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

681.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Popolo and members of the Massachusetts Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Timing Chain System Defect, Defendants knew or should

have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

682.    Plaintiff Popolo and members of the Massachusetts Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Popolo and members of the Massachusetts Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

683.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

684.    On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Popolo and members of the Massachusetts Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

685.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

686.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

687.    Plaintiff Popolo and members of the Massachusetts Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Popolo and members of the Massachusetts Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Popolo and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

688.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

689.    Defendants were further provided notice by Plaintiff Popolo of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time

690.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Popolo and members of the Massachusetts Sub-Class.  Among other things, Plaintiff Popolo and members of the Massachusetts Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

691.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Popolo and members of the Massachusetts Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

692.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Popolo and members of the Massachusetts Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

693.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Popolo and members of the Massachusetts Sub-Class purchased or leased their Class Vehicles.

694. Plaintiff Popolo and members of the Massachusetts Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants. Despite the existence of the warranties, Defendants failed to inform Plaintiff Popolo and members of the Massachusetts Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Popolo and members of the Massachusetts Sub-Class.

695. Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

696. As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Popolo and members of the Massachusetts Sub-Class have been damaged in an amount to be determined at trial.

697. Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Popolo and members of the Massachusetts Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Popolo and members of the Massachusetts Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

### BREACH OF IMPLIED WARRANTY, MASS. GEN. LAWS CH. 106 §§ 2-314 AND 2A-212 (ON BEHALF OF PLAINTIFF POPOLO AND THE MASSACHUSETTS SUB-CLASS)

698. Plaintiff Popolo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

699.    Plaintiff Popolo brings this count on behalf of himself and the Massachusetts Sub-Class.

700.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MASS. GEN. LAWS ch. 106 §2-104(1), and "sellers" and "lessors" of motor vehicles under §2-103(1)(d) and §2A-103(1)(p).

701.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

702.    Plaintiff Popolo and members of the Massachusetts Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

703.    A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MASS. GEN. LAWS ch. 106 §§2-314 and 2A-212.

704.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

705.    Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before

110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

706.    Plaintiff Popolo and members of the Massachusetts Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Popolo and members of the Massachusetts Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Popolo and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

707.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

708.    Defendants were further provided notice by Plaintiff Popolo of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

709.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Popolo and members of the Massachusetts Sub-Class have been damaged in an amount to be proven at trial.

710.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Popolo and members of the Massachusetts Sub-Class.  Among other things, Plaintiff Popolo and members of the Massachusetts Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Massachusetts Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

711.    Plaintiff Popolo and members of the Massachusetts Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

712.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT XXXIV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,**
**ALTERNATIVELY, ON BEHALF OF PLAINTIFF POPOLO AND THE**
**MASSACHUSETTS SUB-CLASS)**

713.    Plaintiff Popolo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

714.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Popolo brings this count on behalf of himself and the members of the Massachusetts Sub-Class.

715.    Plaintiff Popolo satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

716.    Plaintiff Popolo and members of the Massachusetts Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

717.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

718.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

719.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

720.    Defendants provided Plaintiff Popolo and members of the Massachusetts Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners

and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

721.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Popolo and members of the Massachusetts Sub-Class.  Among other things, Plaintiff Popolo and members of the Massachusetts Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

722.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

723.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants.  Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

724.    Plaintiff Popolo and members of the Massachusetts Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Popolo and members of the Massachusetts Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

725.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

726.    Plaintiff Popolo and members of the Massachusetts Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Popolo and members of the Massachusetts Sub-Class have not re-accepted their Class Vehicles by retaining them.

727.    Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

728.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

729.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT XXXV**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF POPOLO AND THE MASSACHUSETTS SUB-CLASS)**

730.    Plaintiff Popolo incorporates and re-alleges each preceding paragraph as though fully set forth herein.

731.    Plaintiff Popolo asserts this count on behalf of himself and members of the Massachusetts Sub-Class.

732.    Plaintiff Popolo and members of the Massachusetts Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

733.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

734.    As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Popolo and members of the Massachusetts Sub-Class.  It would be inequitable

for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Popolo and members of the Massachusetts Sub-Class.

735.    Plaintiff Popolo and members of the Massachusetts Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

736.    Plaintiff Popolo and members of the Massachusetts Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Popolo and members of the Massachusetts Sub-Class, together with interest, in a manner to be determined by the Court.

F.    **Michigan Counts**

**COUNT XXXVI**
**VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT, ("MCPA"),**
**MICH. COMP. LAWS § 445.901, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF BARTON AND THE MICHIGAN SUB-CLASS)**

737.    Plaintiff Barton incorporates and re-alleges each preceding paragraph as though fully set forth herein.

738.    Plaintiff Barton brings this count on behalf of himself and members of the Michigan Sub-Class.

739.    Plaintiff Barton and members of the Michigan Sub-Class are "persons" within the meaning of the MCPA.  *See* MICH. COMP. LAWS § 445.902(1)(d).

740.    Plaintiff Barton and members of the Michigan Sub-Class are permitted to bring this action for injunctive relief and actual damages under the MCPA.  *See* MICH. COMP. LAWS § 445.911.

741.    Defendants are "persons" engaged in "trade or commerce" within the meaning of the MCPA.  *See* MICH. COMP. LAWS § 445.902(1)(d) and (g).

742.     The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . ." MICH. COMP. LAWS § 445.903(1). Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the MCPA, including, inter alia: "[r]epresenting that goods or services have . . . characteristics . . . that they do not have"; "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another"; "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

743.     Defendants violated the MCPA by employing unfair, unconscionable, or deceptive acts or practices, and/or by engaging in fraud, misrepresentations, concealment, suppression and/or omissions of material facts with the intent that others rely upon such concealment, suppression and/or omissions, in connection with the sale and/or lease of Class Vehicles.

744.     Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Timing Chain System Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff Barton and members of the Michigan Sub-Class.  Plaintiff Barton and members of the Michigan Sub-Class could not reasonably have known about the Timing Chain System Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

745. Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Timing Chain System Defect with the intent to mislead Plaintiff Barton and members of the Michigan Sub-Class. Defendants knew, or should have known, that the Timing Chain System Defect was a latent defect and that the Timing Chain System was likely to fail outside of the periods of the manufacturer's warranties. Defendants also knew, or should have known, that the Timing Chain System Defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating. Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

746. Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Barton and members of the Michigan Sub-Class because they possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System. Rather than disclose the Defect, Defendants engaged in unfair, unconscionable and deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System to Plaintiff Barton and members of the Michigan Sub-Class.

747. Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or material omissions regarding the Timing Chain System Defect were intended to mislead consumers and misled Plaintiff Barton and members of the Michigan Sub-Class.

748. At all relevant times, Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or omissions regarding the Timing Chain System Defect and

its corresponding safety risk were material to Plaintiff Barton and members of the Michigan Sub-Class. When Plaintiff Barton and members of the Michigan Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems were free from latent defects and would last beyond the periods of the manufacturer's warranties. Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiff Barton and members of the Michigan Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiff Barton and members of the Michigan Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

749. Defendants had a continuous duty to Plaintiff Barton and members of the Michigan Sub-Class to refrain from unfair and deceptive practices under the MCPA and to disclose the Timing Chain System Defect. Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or material omissions regarding the Timing Chain System Defect and corresponding safety risk are substantially injurious to consumers. As a result of Defendants knowing, intentional concealment, suppression and/or omission of the Timing Chain System Defect in violation of the MCPA, Plaintiff Barton and members of the Michigan Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished

value of their vehicles as a result of Defendants' unfair, unconscionable and deceptive acts and practices in the course of their business.

750.    Defendants' unfair, unconscionable and deceptive acts and practices occurred in the conduct of trade or commerce.

751.    Defendants have knowingly and willfully engaged in the unfair, unconscionable and deceptive acts and practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

752.    Defendants' unfair, unconscionable and deceptive acts and practices affect the public interest and present a continuing safety risk to Plaintiff Barton and members of the Michigan Sub-Class as well as the public.

753.    As a direct and proximate result of Defendants' violations of the MCPA, Plaintiff Barton and members of the Michigan Sub-Class have suffered actual damages and/or injury in fact.

754.    As a result of Defendants' unlawful conduct, Plaintiff Barton and members of the Michigan Sub-Class are entitled to actual damages, costs of litigation, attorneys' fees, injunctive and other equitable relief.  *See* Mich. Comp. Laws § 445.911.

### COUNT XXXVII
### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT
### (ON BEHALF OF PLAINTIFF BARTON AND THE MICHIGAN SUB-CLASS)

755.    Plaintiff Barton incorporates and re-alleges each preceding paragraph as though fully set forth herein.

756.    Plaintiff Barton asserts this count on behalf of himself and members of the Michigan Sub-Class.

757.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Barton and members of the Michigan Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

758.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Barton and members of the Michigan Sub-Class with a repair or remedy for the Timing Chain System Defect.

759.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Barton and members of the Michigan Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

760.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their

vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Barton and members of the Michigan Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

761.    The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road. Plaintiff Barton and members of the Michigan Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

762.    Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would

sell more Class Vehicles and would discourage Plaintiff Barton and members of the Michigan Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods. Further, Defendants intended to induce Plaintiff Barton and members of the Michigan Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Barton and members of the Michigan Sub-Class, in order to decrease costs and increase profits.

763.    Defendants acted with malice, oppression, and fraud.

764.    Plaintiff Barton and members of the Michigan Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Barton and members of the Michigan Sub-Class have suffered actual damages in an amount to be determined at trial.

## COUNT XXXVIII
## BREACH OF EXPRESS WARRANTY,
## MICH. COMP. LAWS §§ 440.2313, 440.2803, AND 440.2860
## (ON BEHALF OF PLAINTIFF BARTON THE MICHIGAN SUB-CLASS)

765.    Plaintiff Barton incorporates and re-alleges each preceding paragraph as though fully set forth herein.

766.    Plaintiff Barton brings this count on behalf of himself and the Michigan Sub-Class.

767.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MICH. COMP. LAWS §440.2104(1), and "sellers" and "lessors" of motor vehicles under § 440.2103(1)(c)and § 440.2803(1)(p).

768.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

769.    Defendants provided Plaintiff Barton and members of the Michigan Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

770.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff Barton and members of the Michigan Sub-Class's decisions to purchase or lease the Class Vehicles.

771.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Barton and members of the Michigan Sub-Class.

772.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

773.    Under the warranties provided to Plaintiff Barton and members of the Michigan Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

774.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Barton and members of the Michigan Sub-Class purchased or leased their Class Vehicles. Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

775.    Plaintiff Barton and members of the Michigan Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Barton and members of the Michigan Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

776.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

777.    On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Barton and members of the Michigan Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

778.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

779.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

780.    Plaintiff Barton and members of the Michigan Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Barton and members of the Michigan Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Barton and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

781.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and

through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

782.    Defendants were further provided notice by Plaintiff Barton of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

783.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Barton and members of the Michigan Sub-Class.  Among other things, Plaintiff Barton and members of the Michigan Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

784.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Barton and members of the Michigan Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

196

785.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Barton and members of the Michigan Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

786.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Barton and members of the Michigan Sub-Class purchased or leased their Class Vehicles.

787.    Plaintiff Barton and members of the Michigan Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff Barton and members of the Michigan Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Barton and members of the Michigan Sub-Class.

788.    Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

789.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Barton and members of the Michigan Sub-Class have been damaged in an amount to be determined at trial.

790.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Barton and members of the Michigan Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Barton and members of the Michigan Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT XXXIX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,
## MICH. COMP. LAWS §§ 440.2314 AND 440.2860
## (ON BEHALF OF PLAINTIFF BARTON AND THE MICHIGAN SUB-CLASS)

791.    Plaintiff Barton incorporates and re-alleges each preceding paragraph as though fully set forth herein.

792.    Plaintiff Barton brings this count on behalf of himself and the Michigan Sub-Class.

793.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MICH. COMP. LAWS § 440.2104(1), and "sellers" and "lessors" of motor vehicles under § 440.2103(1)(c) and § 440.2803(1)(p).

794.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

795.    Plaintiff Barton and members of the Michigan Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

796.    A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MICH. COMP. LAWS §§ 440.2314 and 440.2862.

797.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Timing Chain System

Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

798. Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

799. Plaintiff Barton and members of the Michigan Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Barton and members of the Michigan Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff Barton and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

800. Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

801.    Defendants were further provided notice by Plaintiff Barton of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

802.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Barton and members of the Michigan Sub-Class have been damaged in an amount to be proven at trial.

803.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Barton and members of the Michigan Sub-Class.  Among other things, Plaintiff Barton and members of the Michigan Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Michigan Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

804.    Plaintiff Barton and members of the Michigan Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

805.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT XL
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),
## 15 U.S.C. § 2301 *ET SEQ.*
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,
## ALTERNATIVELY, ON BEHALF OF PLAINTIFF BARTON AND
## THE MICHIGAN SUB-CLASS)

806.    Plaintiff Barton incorporates and re-alleges each preceding paragraph as though fully set forth herein.

807.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Barton brings this count on behalf of himself and the members of the Michigan Sub-Class.

808.    Plaintiff Barton satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

809.    Plaintiff Barton and members of the Michigan Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

810.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

811.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

812.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

813.    Defendants provided Plaintiff Barton and members of the Michigan Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first;

and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

814.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Barton and members of the Michigan Sub-Class.  Among other things, Plaintiff Barton and members of the Michigan Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

815.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

816.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to

premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

817.    Plaintiff Barton and members of the Michigan Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Barton and members of the Michigan Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

818.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

819.    Plaintiff Barton and members of the Michigan Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Barton and members of the Michigan Sub-Class have not re-accepted their Class Vehicles by retaining them.

820.    Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

821.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

822.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT XLI**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF BARTON AND THE MICHIGAN SUB-CLASS)**

823.    Plaintiff Barton incorporates and re-alleges each preceding paragraph as though fully set forth herein.

824.    Plaintiff Barton asserts this count on behalf of himself and members of the Michigan Sub-Class.

825.    Plaintiff Barton and members of the Michigan Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

826.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

827.    As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Barton and members of the Michigan Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Barton and members of the Michigan Sub-Class.

828.    Plaintiff Barton and members of the Michigan Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

829.    Plaintiff Barton and members of the Michigan Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Barton and members of the Michigan Sub-Class, together with interest, in a manner to be determined by the Court.

G.    New Jersey Counts

**COUNT XLII**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA"),**
**N.J. STAT. ANN. § 56:8-2 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS BYRNE, HENDRA, TEJADA AND**
**THE NEW JERSEY SUB-CLASS)**

830.    Plaintiffs Byrne, Hendra, and Tejada incorporate and re-allege each preceding paragraph as though fully set forth herein.

831.    Plaintiffs Byrne, Hendra, and Tejada bring this claim on behalf of themselves and the members of the New Jersey Sub-Class.

832.    The NJCFA prohibits

[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of

> any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J. STAT. ANN. § 56:8-2.

833.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class are consumers who purchased or leased Class Vehicles for personal, family, or household use.

834.    In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Timing Chain System Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the Timing Chain System Defect and corresponding safety risk in violation of the NJCFA.

835.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class. When Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk. Had Defendants disclosed that the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class would have demanded repair or replacement during the warranty

periods at no cost to Plaintiffs and members of the Classes—as provided for in Defendants' warranties.

836.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Timing Chain System Defect and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

837.    Defendants knew that the Timing Chain System Defect would cause the Timing Chain System to fail before the useful life of the engine and unconscionably limited the manufacturer's warranty coverage so that the Timing Chain System would fail beyond the warranty periods, thereby unlawfully transferring the costs of repair of the Timing Chain System to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

838.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure. Rather than disclose the Defect, Defendants intentionally concealed the Defect with the intent to mislead Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System or failed engine to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.

839.    Defendants knew, or should have known, that the Timing Chain System Defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while

the vehicle was operating. Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

840.    Had Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class known about the Timing Chain System Defect at the time of purchase, including the safety hazard posed by the Defect and the monetary cost of repair, they would not have bought the Class Vehicles or would have paid much less for them.

841.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have suffered and continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial. Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

842.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial.  *See* N.J. STAT. ANN. § 56:8-19.  Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J. STAT. ANN. § 56:8-19.

**COUNT XLIII**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFFS BYRNE, HENDRA, TEJADA AND**
**THE NEW JERSEY SUB-CLASS)**

843.    Plaintiffs Byrne, Hendra, and Tejada incorporate and re-allege each preceding paragraph as though fully set forth herein.

844.    Plaintiffs Byrne, Hendra, and Tejada bring this claim on behalf of themselves and the members of the New Jersey Sub-Class.

845.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

846.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class with a repair or remedy for the Timing Chain System Defect.

847.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing

Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

848.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

849.    The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or

safely remove the vehicle from the road.  Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

850.    Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods.  Further, Defendants intended to induce Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class, in order to decrease costs and increase profits.

851.    Defendants acted with malice, oppression, and fraud.

852.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT XLIV**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFFS BYRNE, HENDRA, AND TEJADA AND**
**THE NEW JERSEY SUB-CLASS)**

853.    Plaintiffs Byrne, Hendra, and Tejada incorporate and re-allege each preceding paragraph as though fully set forth herein.

854.    Plaintiffs Byrne, Hendra, and Tejada bring this claim on behalf of themselves and the members of the New Jersey Sub-Class.

855.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

856.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have suffered actual damages.

857.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to

spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

858.    The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

859.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

860.    As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT XLV**
**BREACH OF EXPRESS WARRANTY,**
**N.J. STAT. ANN. §§ 12A:2-314 AND 12A:2A-210**
**(ON BEHALF OF PLAINTIFFS BYRNE, HENDRA, TEJADA AND**
**THE NEW JERSEY SUB-CLASS)**

861.    Plaintiffs Byrne, Hendra, and Tejada incorporate and re-allege each preceding paragraph as though fully set forth herein.

862.    Plaintiffs Byrne, Hendra, and Tejada bring this count on behalf of themselves and the New Jersey Sub-Class.

863.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. STAT. ANN. § 12A:2-104(1), and "sellers" and "lessors" of motor vehicles under § 12A:2-103(1)(d) and § 12A:2A-103(1)(p).

864.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§ 12A:2-105(1) and 2A-103(1)(h).

865.    Defendants provided Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain

Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles. However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

866.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles. Such representations formed the basis of the bargain in Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class's decisions to purchase or lease the Class Vehicles.

867.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.

868.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

869.    Under the warranties provided to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class, Defendants promised to repair or replace covered

components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time. As alleged herein, Defendants breached these warranties.

870. Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class purchased or leased their Class Vehicles. Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

871. Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

872. Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

873. On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

874. Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were

accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

875.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

876.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs Byrne, Hendra, and Tejada and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

877.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

878.   Defendants were further provided notice by Plaintiff Byrne of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

879.   Defendants were further provided notice by Plaintiff Hendra of their breach of express warranties by letter dated February 20, 2020. Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

880.   Defendants were further provided notice by Plaintiff Tejada of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

881.   Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.  Among other things, Plaintiff Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

882.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

883.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

884.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class purchased or leased their Class Vehicles.

885.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants. Despite the existence of the warranties, Defendants failed to inform Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.

886.    Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

887.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have been damaged in an amount to be determined at trial.

888.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT XLVI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,**
**N.J. STAT. ANN. §§ 12A:2-314, 12A:2A-103, AND 12A:2A-212**
**(ON BEHALF OF PLAINTIFFS BYRNE, HENDRA, TEJADA AND**
**THE NEW JERSEY SUB-CLASS)**

889.    Plaintiffs Byrne, Hendra, and Tejada incorporate and re-allege each preceding paragraph as though fully set forth herein.

890.    Plaintiffs Byrne, Hendra, and Tejada bring this count on behalf of themselves and the New Jersey Sub-Class.

891.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. STAT. ANN.§ 12A:2-104(1), and "sellers" and "lessors" of motor vehicles under § 12A:2-103(1)(d) and § 12A:2A-103(1)(p).

892.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§ 12A:2-105(1) and 2A-103(1)(h).

893.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class

220

Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

894.    A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. STAT. ANN. §§ 12A:2- 314 and 2A-212.

895.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

896.    Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

897.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs Byrne, Hendra, and Tejada and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their

dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

898.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

899.    Defendants were further provided notice by Plaintiff Byrne of their breach of implied warranties by letter dated January 17, 2020. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

900.    Defendants were further provided notice by Plaintiff Hendra of their breach of implied warranties by letter dated February 20, 2020. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

901.    Defendants were further provided notice by Plaintiff Tejada of their breach of implied warranties by letter dated January 17, 2020. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

902.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have been damaged in an amount to be proven at trial.

903.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.  Among other things, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the New Jersey Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

904.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

905.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT XLVII
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),
## 15 U.S.C. § 2301 *ET SEQ.*
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,
## ALTERNATIVELY, ON BEHALF OF PLAINTIFFS BYRNE, HENDRA, TEJADA AND
## THE NEW JERSEY SUB-CLASS)

906.    Plaintiffs Byrne, Hendra, and Tejada incorporate and re-allege each preceding paragraph as though fully set forth herein

907.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiffs Byrne, Hendra, Tejada brings this count on behalf of themselves and the members of the New Jersey Sub-Class.

908.    Plaintiffs Byrne, Hendra, and Tejada satisfy the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

909.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

910.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

911.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

912.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

913.    Defendants provided Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000

miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

914.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.  Among other things, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

915.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

916.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing

Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

917. Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

918. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal

dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

919.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class have not re-accepted their Class Vehicles by retaining them.

920.    Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

921.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

922.    Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

### COUNT XLVIII
### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFFS BYRNE, HENDRA, TEJADA, AND
### THE NEW JERSEY SUB-CLASS)

923.    Plaintiffs Byrne, Hendra, and Tejada incorporate and re-allege each preceding paragraph as though fully set forth herein.

924.    Plaintiffs Byrne, Hendra, and Tejada bring this claim on behalf of themselves and the members of the New Jersey Sub-Class.

925.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

926.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

927.    As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class.

928.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

929.    Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiffs Byrne, Hendra, and Tejada and members of the New Jersey Sub-Class, together with interest, in a manner to be determined by the Court.

**H.    New York Counts**

**COUNT XLIX**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW, ("NYGBL"),**
**N.Y. GEN. BUS. LAW § 349**
**(ON BEHALF OF PLAINTIFFS BELL, GALLO, MASHHAHOOD AND**
**THE NEW YORK SUB-CLASS)**

930.    Plaintiffs Bell, Gallo, and Massahood incorporate and re-allege each preceding paragraph as though fully set forth herein.

931.    Plaintiffs Bell, Gallo, and Massahood bring this count on behalf of themselves and members of the New York Sub-Class.

932.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class purchased or leased their Class Vehicles for personal or household use.

933.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class are permitted to bring this action for injunctive relief and actual damages under the NYGBL.  *See* N.Y. GEN. BUS. LAW § 349(h).

934.    Defendants are engaged in the conduct of "business, trade or commerce" within the meaning of the NYGBL.  *See* N.Y. GEN. BUS. LAW § 349(a).

935.    The NYGBL prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."  *See* N.Y. GEN. BUS. LAW § 349(a).

936.    Defendants violated the NYGBL by engaging in deceptive acts or practices directed to consumers in connection with the sale and/or lease of Class Vehicles.

937.    Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Timing Chain System Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.  Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class could not reasonably have known about the Timing Chain System Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

938.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Timing Chain System Defect with the intent to mislead Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.  Defendants knew, or should have known, that the Timing Chain System Defect was a latent defect and that the Timing Chain System was likely to fail outside of the periods of the manufacturer's warranties.

Defendants also knew, or should have known, that the Timing Chain System Defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating. Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

939.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class because they possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure. Rather than disclose the Defect, Defendants engaged in deceptive acts or practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.

940.    Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain System Defect were intended to mislead consumers, were misleading to reasonable consumers, and misled Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.

941.    At all relevant times, Defendants' deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Timing Chain System Defect and its corresponding safety risk were material to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class. When Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Timing Chain Systems were free from latent defects and would last beyond the periods of the manufacturer's warranties. Had Defendants disclosed that

the Timing Chain System was prone to premature failure and/or an unavoidable safety risk, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Further, had Defendants disclosed that the Timing Chain Systems in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

942.   Defendants had a continuous duty to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class to refrain from unfair and deceptive practices under the NYGBL and to disclose the Timing Chain System Defect. Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Timing Chain System Defect and corresponding safety risk are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment, suppression and/or omission of the Timing Chain System Defect in violation of the NYGBL, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System, essential engine parts or the entire engine, and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive acts or practices in the course of their business.

943.   Defendants' deceptive acts or practices occurred in the conduct of business, trade or commerce.

944.    Defendants have knowingly and willfully engaged in the deceptive acts or practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

945.    Defendants' deceptive acts or practices affect the public interest and present a continuing safety risk to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class as well as the public.

946.    As a direct and proximate result of Defendants' violations of the NYGBL, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have suffered actual damages and/or injury in fact.

947.    As a result of Defendants' unlawful conduct, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class are entitled to actual damages, treble damages, costs of litigation, attorneys' fees, injunctive and other equitable relief.  *See* N.Y. GEN. BUS. LAW § 349(h).

## COUNT L
## FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT
### (ON BEHALF OF PLAINTIFFS BELL, GALLO, MASHHAHOOD AND THE NEW YORK SUB-CLASS)

948.    Plaintiffs Bell, Gallo, and Massahood incorporate and re-allege each preceding paragraph as though fully set forth herein.

949.    Plaintiffs Bell, Gallo, and Massahood bring this claim on behalf of themselves and the members of the New York Sub-Class.

950.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks

with the intent that Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

951.    Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class with a repair or remedy for the Timing Chain System Defect.

952.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

953.    As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiffs Bell,

Gallo, and Massahood and members of the New York Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

954.    The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.  Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

955.    Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods.  Further, Defendants intended to induce Plaintiffs Bell, Gallo, and

Massahood and members of the New York Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class, in order to decrease costs and increase profits.

956.    Defendants acted with malice, oppression, and fraud.

957.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT LI
BREACH OF EXPRESS WARRANTY,
N.Y. U.C.C. LAW §§ 2-313, 2A-103, AND 2A-210
(ON BEHALF OF PLAINTIFFS BELL, GALLO, MASHHAHOOD AND
THE NEW YORK SUB-CLASS)**

958.    Plaintiffs Bell, Gallo, and Massahood incorporate and re-allege each preceding paragraph as though fully set forth herein.

959.    Plaintiffs Bell, Gallo, and Massahood brings this count on behalf of themselves and the New York Sub-Class.

960.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. LAW § 2-104(1), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

961.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§ 2-105(1) and 2A-103(1)(h).

962.    Defendants provided Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

963.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class's decisions to purchase or lease the Class Vehicles.

964.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.

965.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

966.    Under the warranties provided to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

967.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

968.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

969.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

970.    On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

971.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

972.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

973.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs Bell, Gallo, and Massahood and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

974.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

975.    Defendants were further provided notice by Plaintiff Bell of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

976.    Defendants were further provided notice by Plaintiff Gallo of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

977.    Defendants were further provided notice by Plaintiff Massahood of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

978.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Bell, Gallo, and Massahood and

members of the New York Sub-Class.  Among other things, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

979.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

980.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

981.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class purchased or leased their Class Vehicles.

982.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants. Despite the existence of the warranties, Defendants failed to inform Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class that the Class Vehicles contained the Timing

Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.

983.   Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

984.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have been damaged in an amount to be determined at trial.

985.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT LII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, N.Y. U.C.C. §§ 2-314, 2A-103, AND 2A-212 (ON BEHALF OF PLAINTIFFS BELL, GALLO, AND MASHHAHOOD AND THE NEW YORK SUB-CLASS)

986.   Plaintiffs Bell, Gallo, and Massahood incorporate and re-allege each preceding paragraph as though fully set forth herein.

987.   Plaintiffs Bell, Gallo, and Massahood bring this count on behalf of themselves and the New York Sub-Class.

988.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. LAW § 2-104(1), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

989.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§ 2-105(1) and 2A-103(1)(h).

990.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.    At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

991.    A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.Y. U.C.C. LAW §§ 2-314  and 2A-212.

992.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

993.    Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain

System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

994.    Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs Bell, Gallo, and Massahood and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

995.    Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

996.    Defendants were further provided notice by Plaintiff Bell of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

997.    Defendants were further provided notice by Plaintiff Gallo of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

998.    Defendants were further provided notice by Plaintiff Massahood of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

999.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have been damaged in an amount to be proven at trial.

1000.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.  Among other things, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the New York Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1001.   Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

1002.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**COUNT LIII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),**
**15 U.S.C. § 2301 *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,**
**ALTERNATIVELY, ON BEHALF OF PLAINTIFFS BELL, GALLO, AND**
**MASHHAHOOD AND THE NEW YORK SUB-CLASS)**

1003.   Plaintiffs Bell, Gallo, and Massahood incorporate and re-allege each preceding paragraph as though fully set forth herein

1004.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiffs Bell, Gallo, and Massahood brings this count on behalf of themselves and the members of the New York Sub-Class.

1005.   Plaintiffs Bell, Gallo, and Massahood satisfy the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

1006.   Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

1007.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

1008.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

1009.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

1010.   Defendants provided Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).   For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.   Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.   However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1011.   Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.   Among other things, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.   A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the

Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

1012.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

1013.   Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants.  Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

1014.   Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1015.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and

all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

1016.  Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class have not re-accepted their Class Vehicles by retaining them.

1017.  Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

1018.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

1019.  Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT LIV**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFFS BELL, GALLO, AND MASHHAHOOD AND**
**THE NEW YORK SUB-CLASS)**

1020.  Plaintiffs Bell, Gallo, and Massahood incorporate and re-allege each preceding paragraph as though fully set forth herein.

1021.   Plaintiffs Bell, Gallo, and Massahood bring this claim on behalf of themselves and the members of the New York Sub-Class.

1022.   Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

1023.   Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

1024.   As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class.

1025.   Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

1026.   Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiffs Bell, Gallo, and Massahood and members of the New York Sub-Class, together with interest, in a manner to be determined by the Court.

I.    **North Carolina Counts**

**COUNT LV**
**VIOLATION OF THE NORTH CAROLINA UNFAIR & DECEPTIVE TRADE**
**PRACTICES ACT ("NCDTPA")**
**N.C. GEN. STAT. § 75-1.1, *ET SEQ*.,**
**(ON BEHALF OF PLAINTIFF MILLS AND NORTH CAROLINA SUB-CLASS)**

1027.   Plaintiff Mills incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1028.   Plaintiff Mills brings this count on behalf of himself and the members of the North Carolina Sub-Class.

1029.   Defendants engaged in "commerce" in North Carolina within the meaning of the NCDTPA.  *See* N.C. GEN. STAT. § 75-1.1(b).

1030.   The NCDTPA prohibits "unfair or deceptive acts or practices in or affecting commerce."  N.C. GEN. STAT. § 75-1.1(a).

1031.   In violation of the NCDTPA, Defendants employed deceptive and/or unconscionable acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles in North Carolina.  Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Timing Chain System Defect and corresponding safety risk, and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff Mills and members of the North Carolina Sub-Class.

1032.   Defendants intentionally and knowingly misrepresented and omitted facts regarding the Timing Chain System Defect with the intent to mislead Plaintiff Mills and members of the North Carolina Sub-Class.  Defendants knew, or should have known, that the Timing Chain System Defect was a latent defect and that the Timing Chain System Defect was likely to fail

outside of the periods of the manufacturer's warranties.  Defendants also knew, or should have known, that the Timing Chain System Defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle is operating.  Further, Defendants knew, or should have known, that such loss of power could cause the Class Vehicles to become involved in read-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

1033.  Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Mills and members of the North Carolina Sub-Class because it possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Rather than disclose the Defect, Defendants engaged in deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Timing Chain System Defect, damaged engine parts and/or the entire engine to Plaintiff Mills and members of the North Carolina Sub-Class.

1034.  Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the Timing Chain System Defect were intended to mislead consumers and misled Plaintiff Mills and members of the North Carolina Sub-Class.

1035.  At all relevant times, Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations, and/or omissions regarding the Timing Chain System Defect and its corresponding safety risk were material to Plaintiff Mills and members of the North Carolina Sub-Class.  When Plaintiff Mills and members of the North Carolina Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would not contain the Timing Chain System Defect and would not pose an unavoidable

safety risk.  Had Defendants disclosed that the Timing Chain Safety Defect existed in the Class Vehicle and/or presented unavoidable safety risk, Plaintiff Mills and members of the North Carolina Sub-Class would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.  Further, had Defendants disclosed that the Timing Chain System Defect existed in the Class Vehicles and/or presented an unavoidable safety risk, Plaintiff Mills and members of the North Carolina Sub-Class would have demanded repair or replacement during the warranty periods at no cost—as provided for in Defendants' warranties.

1036.  Defendants had a continuous duty to Plaintiff Mills and members of the North Carolina Sub-Class to refrain from unfair and deceptive practices under the NCDTPA and to disclose the Timing Chain System Defect.  Defendants' unconscionable or deceptive acts or practices, affirmative misrepresentations, and/or material omissions regarding the Timing Chain System Defect and its corresponding safety risk are substantially injurious to consumers.  As a result of Defendants' knowing, intentional concealment and/or omission of the Timing Chain System Defect and corresponding safety risk in violation of the NCDTPA, Plaintiff Mills and members of the North Carolina Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Timing Chain System and/or actual damages in the amount of the cost to replace the Timing Chain System Defect, essential engine parts or the entire engine, and damages to be determined at trial.  Owners and lessees of Class Vehicles also suffered an ascertainable loss of the benefit of the bargain they reached at the time of purchase or lease, and diminished value of their vehicles as a result of Defendants' deceptive and unfair acts and practices in the course of their business.

1037.  Defendants' unlawful acts and practices occurred in the conduct of business activities and commerce.

1038.   Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

1039.   Defendants' unlawful acts and practices affect the public interest and present a continuing safety risk to Plaintiff Mills and members of the North Carolina Sub-Class, as well as the public.

1040.   As a direct and proximate result of Defendants' violations of the NCDTPA, Plaintiff Mills and members of the North Carolina Sub-Class have suffered actual financial loss, actual damages, and/or injury-in-fact.

1041.   Plaintiff Mills and members of the North Carolina Sub-Class seeks actual damages and treble damages against Defendants in an amount to be determined at trial because Defendants acted wantonly or with such conscious indifference to the consequences that malice may be inferred.

1042.   Plaintiff Mills and members of the North Carolina Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, awarding costs and attorneys' fees, and any other just and proper relief available under the NCDTPA.

**COUNT LVI**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFF MILLS AND THE NORTH CAROLINA SUB-CLASS)**

1043.   Plaintiff Mills incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1044.   Plaintiff Mills asserts this count on behalf of himself and members of the North Carolina Sub-Class.

1045.   Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Mills and members of the North Carolina Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

1046.   Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Mills and members of the North Carolina Sub-Class with a repair or remedy for the Timing Chain System Defect.

1047.   Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Mills and members of the North Carolina Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

1048.   As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their

vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Mills and members of the North Carolina Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1049. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road. Plaintiff Mills and members of the North Carolina Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

1050. Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would

sell more Class Vehicles and would discourage Plaintiff Mills and members of the North Carolina Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods. Further, Defendants intended to induce Plaintiff Mills and members of the North Carolina Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Mills and members of the North Carolina Sub-Class, in order to decrease costs and increase profits.

1051.   Defendants acted with malice, oppression, and fraud.

1052.   Plaintiff Mills and members of the North Carolina Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Mills and members of the North Carolina Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT LVII**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFF MILLS AND THE NORTH CAROLINA SUB-CLASS)**

1053.   Plaintiff Mills incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1054.   Plaintiff Mills asserts this count on behalf of himself and members of the North Carolina Sub-Class.

1055.   Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Mills and members of the North Carolina Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure. Defendants also made partial disclosures

regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

1056.  Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Mills and members of the North Carolina Sub-Class have suffered actual damages.

1057.  As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Mills and members of the North Carolina Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Mills and members of the North Carolina Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1058.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the

inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

1059. Plaintiff Mills and members of the North Carolina Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles. Plaintiff Mills and members of the North Carolina Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

1060. As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Mills and members of the North Carolina Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT LVIII**
**BREACH OF EXPRESS WARRANTY,**
**N.C. GEN. STAT. §§ 25-2-313 AND 25-2A-103**
**(ON BEHALF OF PLAINTIFF MILLS AND THE NORTH CAROLINA SUB-CLASS)**

1061. Plaintiff Mills incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1062. Plaintiff Mills brings this count on behalf of himself and the North Carolina Sub-Class.

1063.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.C. GEN. STAT. § 25-2-104(1), and "sellers" of motor vehicles under § 25-2-103(1)(d).

1064.   With respect to leases, Defendants are "lessors" of motor vehicles under N.C. GEN. STAT. § 25-2A-103(1)(p).

1065.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. GEN. STAT. §§ 25-2-105(1) and 25-2A-103(1)(h).

1066.   Defendants provided Plaintiff Mills and members of the North Carolina Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1067.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff

Mills and members of the North Carolina Sub-Class's decisions to purchase or lease the Class Vehicles.

1068.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Mills and members of the North Carolina Sub-Class.

1069.   In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

1070.   Under the warranties provided to Plaintiff Mills and members of the North Carolina Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

1071.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Mills and members of the North Carolina Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

1072.   Plaintiff Mills and members of the North Carolina Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by

Defendants. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Mills and members of the North Carolina Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

1073. Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

1074. On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Mills and members of the North Carolina Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

1075. Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

1076. Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

1077. Plaintiff Mills and members of the North Carolina Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Mills and members of the North Carolina Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff

Mills and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1078.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1079.   Defendants were further provided notice by Plaintiff Mills of their breach of express warranties by letter dated February 20, 2020. Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1080.   Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Mills and members of the North Carolina Sub-Class. Among other things, Plaintiff Mills and members of the North Carolina Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of

the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1081.   Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Mills and members of the North Carolina Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1082.   Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Mills and members of the North Carolina Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1083.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Mills and members of the North Carolina Sub-Class purchased or leased their Class Vehicles.

1084.   Plaintiff Mills and members of the North Carolina Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff Mills and members of the North Carolina Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Mills and members of the North Carolina Sub-Class.

1085.   Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1086.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Mills and members of the North Carolina Sub-Class have been damaged in an amount to be determined at trial.

1087.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Mills and members of the North Carolina Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Mills and members of the North Carolina Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT LIX
## BREACH OF IMPLIED WARRANTY,
## N.C. GEN. STAT. §§ 25-2-314, 25-2-315, 25-2A-103, AND 252A-212
## (ON BEHALF OF PLAINTIFF MILLS AND THE NORTH CAROLINA SUB-CLASS)

1088.   Plaintiff Mills incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1089.   Plaintiff Mills brings this count on behalf of himself and the North Carolina Sub-Class.

1090.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.C. GEN. STAT. § 25-2-104(1), and "sellers" of motor vehicles under § 25-2-103(1)(d).

1091.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.C. STAT. GEN. § 25-2A-103(1)(p).

1092.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.C. Stat. Gen. §§ 25-2-105(1) and 25-2A-103(1)(h).

1093.   Plaintiff Mills and members of the North Carolina Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

1094.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to N.C. GEN. STAT. §§ 25-2-314 and 25-2A-212.

1095.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

1096.   Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

1097.   Plaintiff Mills and members of the North Carolina Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of

contract between Defendants, on the one hand, and Plaintiff Mills and members of the North Carolina Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Mills and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1098.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

1099.   Defendants were further provided notice by Plaintiff Mills of their breach of implied warranties by letter dated February 20, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1100.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Mills and members of the North Carolina Sub-Class have been damaged in an amount to be proven at trial.

1101.  Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a

defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Mills and members of the North Carolina Sub-Class.  Among other things, Plaintiff Mills and members of the North Carolina Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Oregon Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1102.   Plaintiff Mills and members of the North Carolina Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

1103.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT LX
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. § 2301 *ET SEQ.*
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF PLAINTIFF MILLS AND THE NORTH CAROLINA SUB-CLASS)

1104.   Plaintiff Mills incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1105.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Mills brings this count on behalf of himself and the members of the North Carolina Sub-Class.

1106.   Plaintiff Mills satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

1107.  Plaintiff Mills and members of the North Carolina Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

1108.  Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

1109.  The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

1110.  The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

1111.  Defendants provided Plaintiff Mills and members of the North Carolina Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1112.  Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are

unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Mills and members of the North Carolina Sub-Class. Among other things, Plaintiff Mills and members of the North Carolina Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

1113.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

1114.   Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect. Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

1115.   Plaintiff Mills and members of the North Carolina Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Mills and members of the North Carolina Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not

intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1116.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

1117.  Plaintiff Mills and members of the North Carolina Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Mills and members of the North Carolina Sub-Class have not re-accepted their Class Vehicles by retaining them.

1118.  Defendants were provided notice by letter dated February 20, 2020 that Plaintiffs would pursue claims on behalf of a class.

1119.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

1120.  Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT LXI
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF MILLS AND THE NORTH CAROLINA SUB-CLASS)

1121.   Plaintiff Mills incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1122.   Plaintiff Mills asserts this count on behalf of himself and members of the North Carolina Sub-Class.

1123.   Plaintiff Mills and members of the North Carolina Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

1124.   Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions, and concealment of the Timing Chain System Defect in the Class Vehicles.

1125.   As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Mills and members of the North Carolina Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Mills and members of the North Carolina Sub-Class.

1126.   Plaintiff Mills and members of the North Carolina Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

1127.   Plaintiff Mills and members of the North Carolina Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Mills and members of the North Carolina Sub-Class, together with interest, in a manner to be determined by the Court.

### J.      Ohio Counts

**COUNT LXII**
**VIOLATION OF THE CONSUMER SALES PRACTICES ACT**
**OHIO REV. CODE § 1345.01, *ET SEQ.*,**
**(ON BEHALF OF PLAINTIFF CUGEL AND OHIO SUB-CLASS)**

1128.   Plaintiff Cugel incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1129.   Plaintiff Cugel brings this count on behalf of himself and the Ohio Sub-Class.

1130.   Plaintiff Cugel and the members of the Ohio Sub-Class are "consumers" pursuant to the Ohio Consumer Sales Practices Act, OHIO REV. CODE ANN. § 1345.01 ("Ohio CSPA").

1131.   Defendants are "suppliers" as defined by the Ohio CSPA.

1132.   The purchases and/or leases of the Class Vehicles by Plaintiff Cugel and the members of the Ohio Sub-Class were "consumer transactions" as defined by the Ohio CSPA.

1133.   By willfully failing to disclose and actively concealing the existence of the Timing Chain System Defect in the Class Vehicles, Defendants engaged in deceptive business practices prohibited by the Ohio CSPA, including:

      (a)      representing that the Class Vehicles have characteristics, uses, benefits, and quality which they do not have;

      (b)      representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

      (c)      advertising the Class Vehicles with the intent not to sell them as advertised; and

      (d)      engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

1134.   In the course of Defendants' business, Defendants failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the defective Timing Chain Systems installed in them as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.   Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that the Class Vehicles have characteristics, uses,   benefits, and qualities which they do not have; representing that Class Vehicles are of a  particular standard and quality when they are not; failing to reveal a material fact, the   omission of which tends to mislead or deceive the consumer, and which fact could not  reasonably be known by the consumer; making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented  or suggested state of affairs to be other than it actually is; and failing to reveal facts  that are material to the transaction in light of representations of fact made in a positive  manner.

1135.   Defendants have known of the Timing Chain System Defect in the Class Vehicles for years and failed to disclose and actively concealed the dangers and risks of costly engine damage and repairs, and the associated safety risks, posed by the Defect.

1136.   By failing to disclose and by actively concealing the Timing Chain System Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair and deceptive business practices in violation of the Ohio CSPA.  Defendants deliberately withheld the information about the propensity of the defective Timing Chain System to prematurely fail, causing engine damage and an associated safety risk, in order to ensure that consumers would purchase the Class Vehicles.

1137.   In the course of Defendants' businesses, they willfully failed to disclose and actively concealed the existence of the Timing Chain System Defect and its associated safety risk discussed above.  Defendants compounded the deception by repeatedly asserting that the Class Vehicles and/or the defective Timing Chain Systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1138.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles, the quality of Defendants' brands, and the true value of the Class Vehicles.

1139.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective Timing Chain Systems installed in them with an intent to mislead the members of the Class.

1140.   Defendants knew or should have known that their conduct violated the Ohio CSPA.

1141.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective Timing Chain Systems installed in them that were either false or misleading.

1142.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective Timing Chain Systems installed in them and their associated safety risk, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

1143.  Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Timing Chain System Defect because Defendants:

      (a)     Possessed exclusive and superior knowledge of the risks posed by the foregoing;

      (b)     Intentionally concealed the foregoing from the Class; and/or

      (c)     Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

1144.  Because Defendants fraudulently concealed the Timing Chain System Defect in the Class Vehicles, and disclosure of their existence would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished.  In light of the stigma attached to the Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1145.  Defendants' failure to disclose and active concealment of the risks posed by the Timing Chain System Defect in the Class Vehicles were material to the members of the Class.  A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than properly remedies them.

1146.  Defendants' actions as set forth above occurred in the conduct of trade or commerce.

1147.  The Ohio Attorney General has made available for public inspection prior state court decisions which have held that the acts and omissions of Defendants in this Complaint, including, but not limited to, the failure to honor implied warranties, the making and distribution

of false, deceptive, and/or misleading representations, and the concealment and/or non-disclosure of a dangerous defect, constitute deceptive sales practices in violation of the Ohio CSPA. These cases include, but are not limited to, the following: *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382); *State ex rel. Montgomery v. Ford Motor Co.* (OPIF #10002123); *State ex rel. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025); *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 WL 533403 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077); *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 WL 431737 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388); *State ex rel. Petro v. Craftmatic Organization, Inc.* (OPIF #10002347); *Cranford, et al. v. Joseph Airport Toyota, Inc.* (OPIF #10001586); *State ex rel. Brown v. Lyons, et al.* (OPIF #10000304); *Brinkman v. Mazda Motor of America, Inc.* (OPIF #10001427); *Khouri v. Lewis* (OPIF #10001995); *Mosley v. Performance Mitsubishi aka Automanage, Inc.* (OPIF #10001326); *Walls v. Harry Williams d/b/a Butch's Auto Sales* (OPIF #10001524); and *Brown v. Spears* (OPIF #10000403).

1148. Plaintiff Cugel and members of the Ohio Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclosure material information. Had they been aware of the Timing Chain System Defect that existed in the Class Vehicles and Defendants' disregard for safety, Plaintiff Cugel and members of the Ohio Sub-Class would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff Cugel and members of the Ohio Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning facts the Defendants had concealed or failed to disclose.

1149. Plaintiff Cugel and members of the Ohio Sub-Class did not receive the benefit of their bargains as a result of Defendants' misconduct.

1150.   Defendants' violations present a continuing risk to Plaintiff Cugel and members of the Ohio Sub-Class, as well as to the general public.  Defendants' unlawful acts and practices complained of herein affect the public interest.

1151.   The repairs instituted by Defendants, if any, have not been adequate.

1152.   As a direct and proximate result of Defendants' violations of the Ohio CSPA, Plaintiff Cugel and members of the Ohio Sub-Class have suffered injury-in-fact and/or actual damage.

1153.   Plaintiff Cugel and members of the Ohio Sub-Class seek monetary relief against Defendants for actual damages, in addition to treble damages.

1154.   Plaintiff Cugel and members of the Ohio Sub-Class also seek declaratory relief, punitive damages, an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, and reasonable attorneys' fees and costs pursuant to OHIO REV. CODE ANN. § 1345.09, as well as other proper and just relief under the Ohio CSPA.

**COUNT LXIII**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFF CUGEL AND THE OHIO SUB-CLASS)**

1155.   Plaintiff Cugel incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1156.   Plaintiff Cugel asserts this count on behalf of himself and members of the Ohio Sub-Class.

1157.   Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Cugel and members of the Ohio Sub-Class rely on Defendants'

misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

1158.   Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff Cugel and members of the Ohio Sub-Class with a repair or remedy for the Timing Chain System Defect.

1159.   Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Cugel and members of the Ohio Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

1160.   As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Cugel

and members of the Ohio Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1161.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.  Plaintiff Cugel and members of the Ohio Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

1162.  Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Cugel and members of the Ohio Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods.  Further, Defendants intended to induce Plaintiff Cugel and members of the Ohio Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair

of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Cugel and members of the Ohio Sub-Class, in order to decrease costs and increase profits.

1163.   Defendants acted with malice, oppression, and fraud.

1164.   Plaintiff Cugel and members of the Ohio Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Cugel and members of the Ohio Sub-Class have suffered actual damages in an amount to be determined at trial.

## COUNT LXIV
## NEGLIGENT MISREPRESENTATION
## (ON BEHALF OF PLAINTIFF CUGEL AND THE OHIO SUB-CLASS)

1165.   Plaintiff Cugel incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1166.   Plaintiff Cugel asserts this count on behalf of himself and members of the Ohio Sub-Class.

1167.   Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Cugel and members of the Ohio Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

1168.   Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed

in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks. As a direct result of Defendants' negligent conduct, Plaintiff Cugel and members of the Ohio Sub-Class have suffered actual damages.

1169. As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Cugel and members of the Ohio Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Cugel and members of the Ohio Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1170. The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic

engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

1171.   Plaintiff Cugel and members of the Ohio Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff Cugel and members of the Ohio Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

1172.   As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Cugel and members of the Ohio Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT LXV**
**BREACH OF EXPRESS WARRANTY,**
**OHIO REV. CODE ANN. §§ 1302.26 AND 1310.01**
**(ON BEHALF OF PLAINTIFF CUGEL AND THE OHIO SUB-CLASS)**

1173.   Plaintiff Cugel incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1174.   Plaintiff Cugel brings this count on behalf of himself and the Ohio Sub-Class.

1175.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under OHIO REV. CODE ANN. §§ 1302.1(A)(5) and 1310.01(A)(20), and "sellers" and "lessors" of motor vehicles under § 1302.1(A)(4) and § 1310.01(A)(20).

1176.   The Class Vehicles are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. §§ 1302.1(A)(8) and 1310.01(A)(8).

1177.   Defendants provided Plaintiff Cugel and members of the Ohio Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1178.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff Cugel and members of the Ohio Sub-Class's decisions to purchase or lease the Class Vehicles.

1179.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Cugel and members of the Ohio Sub-Class.

1180.   In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

1181.   Under the warranties provided to Plaintiff Cugel and members of the Ohio Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

1182.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Cugel and members of the Ohio Sub-Class purchased or leased their Class Vehicles. Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

1183.   Plaintiff Cugel and members of the Ohio Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Cugel and members of the Ohio Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

1184.   Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

1185.   On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Cugel and members of the Ohio Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

1186.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

1187.   Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

1188.   Plaintiff Cugel and members of the Ohio Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Cugel and members of the Ohio Sub-Class, on the other hand.   Nonetheless, privity is not required here because Plaintiff Cugel and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.   The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1189.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and

concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1190.  Defendants were further provided notice by Plaintiff Cugel of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1191.  Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Cugel and members of the Ohio Sub-Class.  Among other things, Plaintiff Cugel and members of the Ohio Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1192.  Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Cugel and members of the Ohio Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1193.   Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Cugel and members of the Ohio Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1194.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Cugel and members of the Ohio Sub-Class purchased or leased their Class Vehicles.

1195.   Plaintiff Cugel and members of the Ohio Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff Cugel and members of the Ohio Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Cugel and members of the Ohio Sub-Class.

1196.   Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1197.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Cugel and members of the Ohio Sub-Class have been damaged in an amount to be determined at trial.

1198.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Cugel and members of the Ohio Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Cugel and members of the Ohio Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT LXVI**
**BREACH OF IMPLIED WARRANTIES,**
**OHIO REV. CODE ANN. §§ 103.27, 1310.01, AND 1310.19**
**(ON BEHALF OF PLAINTIFF CUGEL AND THE OHIO SUB-CLASS)**

1199.  Plaintiff Cugel incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1200.  Plaintiff Cugel brings this count on behalf of himself and the Ohio Sub-Class.

1201.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under OHIO REV. CODE ANN. § 1302.1(A)(5), and "sellers" and "lessors" of motor vehicles under § 1302.1(A)(4) and § 1310.01(A)(20).

1202.  The Class Vehicles are and were at all relevant times "goods" within the meaning of OHIO REV. CODE ANN. §§ 1302.1(A)(8) and 1310.01(A)(8).

1203.  Plaintiff Cugel and members of the Ohio Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

1204.  A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to OHIO REV. CODE ANN. §§ 1302.27 and 1310.19.

1205.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Timing Chain System

Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

1206.   Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

1207.   Plaintiff Cugel and members of the Ohio Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Cugel and members of the Ohio Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Cugel and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1208.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

1209.  Defendants were further provided notice by Plaintiff Cugel of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1210.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Cugel and members of the Ohio Sub-Class have been damaged in an amount to be proven at trial.

1211.  Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Cugel and members of the Ohio Sub-Class.  Among other things, Plaintiff Cugel and members of the Ohio Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Ohio Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1212.  Plaintiff Cugel and members of the Ohio Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

1213.  The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT LXVII
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"),
## 15 U.S.C. § 2301 *ET SEQ.*
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR,
## ALTERNATIVELY, ON BEHALF OF PLAINTIFF CUGEL AND
## THE OHIO SUB-CLASS)

1214.   Plaintiff Cugel incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1215.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Cugel brings this count on behalf of himself and the members of the Ohio Sub-Class.

1216.   Plaintiff Cugel satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

1217.   Plaintiff Cugel and members of the Ohio Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

1218.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

1219.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

1220.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

1221.   Defendants provided Plaintiff Cugel and members of the Ohio Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first;

and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1222.   Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Cugel and members of the Ohio Sub-Class. Among other things, Plaintiff Cugel and members of the Ohio Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

1223.   The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

1224.   Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect.  Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to

premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

1225. Plaintiff Cugel and members of the Ohio Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Cugel and members of the Ohio Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1226. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

1227.  Plaintiff Cugel and members of the Ohio Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Cugel and members of the Ohio Sub-Class have not re-accepted their Class Vehicles by retaining them.

1228.  Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

1229.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

1230.  Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT LXVIII**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF CUGEL AND THE OHIO SUB-CLASS)**

1231.  Plaintiff Cugel incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1232.  Plaintiff Cugel asserts this count on behalf of himself and members of the Ohio Sub-Class.

1233.  Plaintiff Cugel and members of the Ohio Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

1234.  Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

1235.   As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Cugel and members of the Ohio Sub-Class.   It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Cugel and members of the Ohio Sub-Class.

1236.   Plaintiff Cugel and members of the Ohio Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

1237.   Plaintiff Cugel and members of the Ohio Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Cugel and members of the Ohio Sub-Class, together with interest, in a manner to be determined by the Court.

### K.   Oregon Counts

**COUNT LXIX**
**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT,**
**OR. REV. STAT. § 646.605, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF MADORE AND THE OREGON SUB-CLASS)**

1238.   Plaintiff Madore incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1239.   Plaintiff Madore brings this count on behalf of herself and the Oregon Sub-Class.

1240.   Plaintiff Madore, the members of the Oregon Sub-Class, and Defendants are "persons" within the meaning of OR. REV. STAT. § 646.605(4).

1241. The Class Vehicles are "goods" obtained primarily for personal, family, or household purposes within the meaning of OR. REV. STAT. § 646.605(6).

1242.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following:

> Represent[ing] that . . . goods . . . have . . . characteristics . . . uses, benefits, . . . or qualities that [they] do not have; . . . [] [r]epresent[ing] that . . . goods . . . are of a particular standard [or] quality . . . if [they] are of another; . . . [] [a]dvertis[ing] . . . goods or services with intent not to provide [them] as advertised; . . . [and] [] engag[ing] in any other unfair or deceptive conduct in trade or commerce.

OR. REV. STAT. § 646.608(1).

1243.   In the course of Defendants' businesses, Defendants violated the Oregon UTPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles as described above.  Specifically, in marketing, offering for sale, and selling the Class Vehicles with the defective Timing Chain Systems installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices which are proscribed by the Oregon UTPA, including representing that the Class Vehicles with the defective Timing Chain Systems installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent not to sell them as advertised.

1244.   Defendants have known of the Timing Chain System Defect in the Class Vehicles for years and failed to disclose and actively concealed the risks posed by the Class Vehicles.

1245.   By failing to disclose and actively concealing the Timing Chain System Defect in the Class Vehicles, by marking them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair or deceptive business practices in violation of the Oregon UTPA.  Defendants deliberately withheld the information about the propensity of the defective Timing Chain Systems to fail prematurely and

296

cause engine damages and an associated safety risk, in order to ensure that consumers would purchase the Class Vehicles.

1246.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the risks posed by the associated safety issue discussed above. Defendants compounded the deception by repeatedly asserting that Class Vehicles and the defective Timing Chain Systems installed in them were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

1247.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Class, about the true safety and reliability of Class Vehicles and/or the defective Timing Chain Systems installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

1248.   Defendants intentionally and knowingly misrepresented material facts regarding the Class Vehicles and/or the defective Timing Chain Systems installed in them with an intent to mislead the members of the Class.

1249.   Defendants knew or should have known that their conduct violated the Oregon UTPA.

1250.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective Timing Chain Systems installed in them that were either false or misleading.

1251.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the risks posed by the Class Vehicles and/or the defective

Timing Chain Systems installed in them and their associated safety risks, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving these dangerous vehicles.

      (a)    Defendants owed the members of the Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Timing Chain System Defect because Defendants:

      (i)    Possessed exclusive and superior knowledge of the risks posed by the foregoing;

      (ii)    Intentionally concealed the foregoing from the Oregon Sub-Class; and/or

      (iii)    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding materials facts from the Oregon Sub-Class that contradicted these representations.

1252. Because Defendants fraudulently concealed the Timing Chain System Defect in the Class Vehicles, and disclosure of their existence would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

1253. Defendants' failure to disclose and active concealment of the dangers and risks posed by the Timing Chain System Defect in Class Vehicles were material to Plaintiff Madore and members of the Oregon Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

1254.   Plaintiff Madore and members of the Oregon Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information.  Had they been aware of the Timing Chain System Defect that existed in the Class Vehicles, and Defendants' disregard for safety, Plaintiff Madore and members of the Oregon Sub-Class either would have paid less for their vehicles or would not have purchased or leased them at all.  Plaintiff Madore and the members of the Oregon Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

1255.   Plaintiff Madore and the members of the Oregon Sub-Class did not receive the benefit of their bargains as a result of Defendants' misconduct.

1256.   As a direct and proximate result of Defendants' violations of the Oregon UTPA, Plaintiff Madore and the members of the Oregon Sub-Class have suffered injury-in-fact and/or actual damage.

1257.   Pursuant to OR. REV. STAT. § 646.638(1), Plaintiff Madore and the members of the Oregon Sub-Class seek an order awarding damages, treble damages, and any other just and proper relief available under the Oregon UTPA.

**COUNT LXX**
**FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT**
**(ON BEHALF OF PLAINTIFF MADORE AND THE OREGON SUB-CLASS)**

1258.   Plaintiff Madore incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1259.   Plaintiff Madore asserts this count on behalf of herself and members of the Oregon Sub-Class.

1260.   Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class

Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Madore and members of the Oregon Sub-Class rely on Defendants' misrepresentations and omissions. As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

1261. Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods. To date, Defendants have not provided Plaintiff Madore and members of the Oregon Sub-Class with a repair or remedy for the Timing Chain System Defect.

1262. Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Madore and members of the Oregon Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles. Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

1263. As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects

that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Madore and members of the Oregon Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1264.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.  Plaintiff Madore and members of the Oregon Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

1265.  Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Madore and members of the Oregon Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods.

Further, Defendants intended to induce Plaintiff Madore and members of the Oregon Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Madore and members of the Oregon Sub-Class, in order to decrease costs and increase profits.

1266.   Defendants acted with malice, oppression, and fraud.

1267.   Plaintiff Madore and members of the Oregon Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Madore and members of the Oregon Sub-Class have suffered actual damages in an amount to be determined at trial.

## COUNT LXXI
## NEGLIGENT MISREPRESENTATION
## (ON BEHALF OF PLAINTIFF MADORE AND THE OREGON SUB-CLASS)

1268.   Plaintiff Madore incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1269.   Plaintiff Madore asserts this count on behalf of herself and members of the Oregon Sub-Class.

1270.   Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Madore and members of the Oregon Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

1271.   Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Madore and members of the Oregon Sub-Class have suffered actual damages.

1272.   As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules,  or elsewhere, to Plaintiff Madore and members of the Oregon Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Madore and members of the Oregon Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1273.   The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate

speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

1274.   Plaintiff Madore and members of the Oregon Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff Madore and members of the Oregon Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

1275.   As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Madore and members of the Oregon Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT LXXII**
**BREACH OF EXPRESS WARRANTY,**
**OR. REV. STAT. §§ 72.3130, 72A.1030, AND 72A.2100**
**(ON BEHALF OF PLAINTIFF MADORE AND THE OREGON SUB-CLASS)**

1276.   Plaintiff Madore incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1277.   Plaintiff Madore brings this count on behalf of herself and the Oregon Sub-Class.

1278.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under OR. REV. STAT. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" and "lessors" of motor vehicles under § 72.1030(1)(d) and § 72A.1030(1)(p).

1279.   The Class Vehicles are and were at all relevant times "goods" within the meaning of OR. REV. STAT. §§ 72.1050(1) and 72A.1030(1)(h).

1280.   Defendants provided Plaintiff Madore and members of the Oregon Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.   Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1281.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff Madore and members of the Oregon Sub-Class's decisions to purchase or lease the Class Vehicles.

1282.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff Madore and members of the Oregon Sub-Class.

1283.   In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

1284.   Under the warranties provided to Plaintiff Madore and members of the Oregon Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

1285.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Madore and members of the Oregon Sub-Class purchased or leased their Class Vehicles. Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

1286.   Plaintiff Madore and members of the Oregon Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Madore and members of the Oregon Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

1287.   Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

1288.   On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Madore and members of the Oregon Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

1289.   Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

1290.   Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

1291.   Plaintiff Madore and members of the Oregon Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Madore and members of the Oregon Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Madore and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1292.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and

through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1293.  Defendants were further provided notice by Plaintiff Madore of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1294.  Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Madore and members of the Oregon Sub-Class.  Among other things, Plaintiff Madore and members of the Oregon Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1295.  Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Madore and members of the Oregon Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1296.  Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Madore and members of the Oregon Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1297.  Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Madore and members of the Oregon Sub-Class purchased or leased their Class Vehicles.

1298.  Plaintiff Madore and members of the Oregon Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff Madore and members of the Oregon Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Madore and members of the Oregon Sub-Class.

1299.  Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1300.  As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Madore and members of the Oregon Sub-Class have been damaged in an amount to be determined at trial.

1301.  Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Madore and members of the Oregon Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Madore and members of the Oregon Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT LXXIII
## BREACH OF IMPLIED WARRANTY,
## OR. REV. STAT. §§ 72.3140, 72.3150, 72A.1030, AND 72A.2120
## (ON BEHALF OF PLAINTIFF MADORE AND THE OREGON SUB-CLASS)

1302.   Plaintiff Madore incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1303.   Plaintiff Madore brings this count on behalf of herself and the Oregon Sub-Class.

1304.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under OR. REV. STAT. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" and "lessors" of motor vehicles under §§ 72.1030(1)(d) and 72A.1030(1)(p).

1305.   The Class Vehicles are and were at all relevant times "goods" within the meaning of OR. REV. STAT. §§ 72.1050(1) and 72A.1030(1)(h).

1306.   Plaintiff Madore and members of the Oregon Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.   At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.   Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

1307.   A warranty that the Class Vehicles were in merchantable condition and fit for their ordinary purpose is implied by law pursuant to OR. REV. STAT. §§ 72.3140  and 72A-2120.

1308.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

1309.  Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

1310.  Plaintiff Madore and members of the Oregon Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Madore and members of the Oregon Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Madore and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1311.  Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

1312.  Defendants were further provided notice by Plaintiff Madore of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure

their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1313. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Madore and members of the Oregon Sub-Class have been damaged in an amount to be proven at trial.

1314. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Madore and members of the Oregon Sub-Class. Among other things, Plaintiff Madore and members of the Oregon Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Oregon Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1315. Plaintiff Madore and members of the Oregon Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

1316. The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT LXXIV
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. § 2301 *ET SEQ.*
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF PLAINTIFF MADORE AND THE OREGON SUB-CLASS)

1317.   Plaintiff Madore incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1318.   Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Madore brings this count on behalf of herself and the members of the Oregon Sub-Class.

1319.   Plaintiff Madore satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

1320.   Plaintiff Madore and members of the Oregon Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

1321.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

1322.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

1323.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

1324.   Defendants provided Plaintiff Madore and members of the Oregon Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first;

and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles. However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1325. Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Madore and members of the Oregon Sub-Class. Among other things, Plaintiff Madore and members of the Oregon Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

1326. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

1327. Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect. Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to

premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

1328. Plaintiff Madore and members of the Oregon Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Madore and members of the Oregon Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1329. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

1330.  Plaintiff Madore and members of the Oregon Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Madore and members of the Oregon Sub-Class have not re-accepted their Class Vehicles by retaining them.

1331.  Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

1332.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

1333.  Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT LXXV**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF MADORE AND THE OREGON SUB-CLASS)**

1334.  Plaintiff Madore incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1335.  Plaintiff Madore asserts this count on behalf of herself and members of the Oregon Sub-Class.

1336.  Plaintiff Madore and members of the Oregon Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

1337.  Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

1338.  As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Madore and members of the Oregon Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Madore and members of the Oregon Sub-Class.

1339.  Plaintiff Madore and members of the Oregon Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

1340.  Plaintiff Madore and members of the Oregon Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Madore and members of the Oregon Sub-Class, together with interest, in a manner to be determined by the Court.

**L.     Pennsylvania Counts**

**COUNT LXXVI**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1 *ET SEQ.***
**(ON BEHALF OF PLAINTIFF LAPRADE AND THE PENNSYLVANIA SUB-CLASS)**

1341.  Plaintiff LaPrade incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1342.  Plaintiff LaPrade asserts this count on behalf of herself and members of the Pennsylvania Sub-Class.

1343.  Plaintiff LaPrade and members of the Pennsylvania Sub-Class are persons within the context of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 *et seq.* (hereinafter "PUTPCPL"), specifically § 201-2(2).

1344.  Defendants are persons within the context of PUTPCPL, § 201-2(2).

1345.   Defendants are engaged in trade and commerce within the context of PUTPCPL, § 201-2(3).

1346.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class purchased and/or leased Class Vehicles for personal, family or household use.

1347.   Defendants committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of PUTPCPL, §§ 201-2(4)(v), (vii), (ix) and (xxi), *inter alia*.

1348.   Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the class engine's Timing Chain System with intent that Plaintiff LaPrade and members of the Pennsylvania Sub-Class would rely upon their misrepresentations in connection with the sale and/or advertisement of Class Vehicles.

1349.   Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff LaPrade and members of the Pennsylvania Sub-Class the required maintenance and/or maintenance intervals of Class Vehicle engines, including but not limited to the Timing Chain System.

1350.   Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff LaPrade and members of the Pennsylvania Sub-Class the characteristics of Class Vehicle engines with respect to material, manufacture, durability, design, longevity, maintenance and operating costs.  Defendants extensively advertised that Class Vehicles were superior in construction and extolled the quality and virtues of Class Vehicles, including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance, and

also included an engine life exceeding 120,000 miles.  In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

1351.   Defendants actively suppressed the fact that Class Vehicles were prematurely failing because of materials, workmanship, design and manufacture defects, as well as incorrect maintenance recommendations and maintenance intervals.

1352.   Defendants secretly repaired some Timing Chain Systems to prevent dissemination of knowledge concerning class engine defects.

1353.   Although Defendants knew defects in Timing Chain Systems and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

1354.   One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  Rather than conduct an open and fair inspection and repair procedure for all Class Vehicles, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the PUTPCPL.

1355.   Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff LaPrade and members of the Pennsylvania Sub-Class were caused to expend sums of money in purchasing and later repairing their Class Vehicles**.**  As reasonable consumers, Plaintiff LaPrade and members of the Pennsylvania Sub-Class had no reasonable way to know that Class Vehicles contained Timing Chain Systems which were defective in materials, workmanship, design and manufacture.  Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone

possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the engine and Timing Chain System durability.

1356.  If Defendants had not concealed class engine defects from Plaintiff LaPrade and members of the Pennsylvania Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

1357.  Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

1358.  Defendants violated the PUTPCPL by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines were defective in materials, workmanship, design and manufacture and were accompanied by incorrect maintenance recommendations and maintenance intervals.

1359.  Defendants violated the PUTPCPL by failing to inform Class Vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the Timing Chain System.

1360.  Defendants further violated the PUTPCPL by failing to inform prospective Class Vehicle purchasers that Defendants had not properly tested the engines including but not limited to the Timing Chain System.

1361.  Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the PUTPCPL on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations

concerning *inter alia,* the causes of the failures of class engines owned by Plaintiff LaPrade and members of the Pennsylvania Sub-Class.

1362.   The secret warranty programs for class engines initiated by Defendants and other wrongful conduct of Defendants in violation of PUTPCPL occurred within the limitations period set out in the statute and/or the limitations period is tolled by Defendants' conduct.

1363.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff LaPrade and members of the Pennsylvania Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm.

1364.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class experienced premature class engine failure, diminution of Class Vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

1365.   The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

1366.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT LXXVII
## FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT
## (ON BEHALF OF PLAINTIFF LAPRADE AND THE PENNSYLVANIA SUB-CLASS)

1367.   Plaintiff LaPrade incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1368.   Plaintiff LaPrade asserts this count on behalf of herself and members of the Pennsylvania Sub-Class.

1369.   Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff LaPrade and members of the Pennsylvania Sub-Class rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

1370.   Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods.  To date, Defendants have not provided Plaintiff LaPrade and members of the Pennsylvania Sub-Class with a repair or remedy for the Timing Chain System Defect.

1371.   Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff LaPrade and members of the Pennsylvania Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles.  Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

1372.   As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature

failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff LaPrade and members of the Pennsylvania Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1373. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed. No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road. Plaintiff LaPrade and members of the Pennsylvania Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

1374.   Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff LaPrade and members of the Pennsylvania Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods.   Further, Defendants intended to induce Plaintiff LaPrade and members of the Pennsylvania Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff LaPrade and members of the Pennsylvania Sub-Class, in order to decrease costs and increase profits.

1375.   Defendants acted with malice, oppression, and fraud.

1376.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions.  As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff LaPrade and members of the Pennsylvania Sub-Class have suffered actual damages in an amount to be determined at trial.

## COUNT LXXVIII
## BREACH OF EXPRESS WARRANTY
## 13 PA. CONS. STAT. §§ 2313 AND 2A103
## (ON BEHALF OF PLAINTIFF LAPRADE AND THE PENNSYLVANIA SUB-CLASS)

1377.   Plaintiff LaPrade incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1378.   Plaintiff LaPrade brings this count on behalf of herself and the Pennsylvania Sub-Class.

1379.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 PA. CONS. STAT. §§ 2104 and 2A103(a), and "sellers" and "lessors" of motor vehicles under § 2103(a) and § 2A103(1)(p).

1380.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. §§ 2105(a) and 2A103(a).

1381.   Defendants provided Plaintiff LaPrade and members of the Pennsylvania Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1382.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 120,000 miles.  Such representations formed the basis of the bargain in Plaintiff LaPrade and members of the Pennsylvania Sub-Class' decisions to purchase or lease the Class Vehicles.

1383.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect and its corresponding safety risk from Plaintiff LaPrade and members of the Pennsylvania Sub-Class.

1384.   In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 120,000 miles.

1385.   Under the warranties provided to Plaintiff LaPrade and members of the Pennsylvania Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

1386.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff LaPrade and members of the Pennsylvania Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

1387.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff LaPrade and members of the Pennsylvania Sub-Class that the Class Vehicles contained

the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

1388.  Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

1389.  On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff LaPrade and members of the Pennsylvania Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

1390.  Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 120,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

1391.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

1392.  Plaintiff LaPrade and members of the Pennsylvania Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff LaPrade and members of the Pennsylvania Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff LaPrade and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied

warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1393.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1394.   Defendants were further provided notice by Plaintiff LaPrade of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1395.   Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff LaPrade and members of the Pennsylvania Sub-Class.  Among other things, Plaintiff LaPrade and members of the Pennsylvania Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of

the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1396.   Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff LaPrade and members of the Pennsylvania Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1397.   Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff LaPrade and members of the Pennsylvania Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1398.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff LaPrade and members of the Pennsylvania Sub-Class purchased or leased their Class Vehicles.

1399.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff LaPrade and members of the Pennsylvania Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff LaPrade and members of the Pennsylvania Sub-Class.

1400.   Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1401.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff LaPrade and members of the Pennsylvania Sub-Class have been damaged in an amount to be determined at trial.

1402.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff LaPrade and members of the Pennsylvania Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff LaPrade and members of the Pennsylvania Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT LXXIX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,
## 13 PA. CONS. STAT. §§ 2314, 2A103, AND 2A212
## (ON BEHALF OF THE PENNSYLVANIA SUB-CLASS)

1403.   Plaintiff LaPrade incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1404.   Plaintiff LaPrade brings this count on behalf of herself and the Pennsylvania Sub-Class.

1405.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 PA. CONS. STAT. §§ 2104 and 2A103(a), and "sellers" and "lessors" of motor vehicles under § 2103(a) and § 2A103(1)(p).

1406.   The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. §§ 2105(a) and 2A103(a).

1407.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

1408.   A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 PA. CONS. STAT. §  2314.

1409.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect – the Timing Chain System Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

1410.   Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 120,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 120,000 miles by omitting the Timing Chain System from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

1411.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff LaPrade and members of the

Pennsylvania Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff LaPrade and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1412. Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

1413. Defendants were further provided notice by Plaintiff LaPrade of their breach of implied warranties by letter dated January 17, 2020. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1414. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff LaPrade and members of the Pennsylvania Sub-Class have been damaged in an amount to be proven at trial.

1415. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a

defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff LaPrade and members of the Pennsylvania Sub-Class. Among other things, Plaintiff LaPrade and members of the Pennsylvania Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Pennsylvania Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1416. Plaintiff LaPrade and members of the Pennsylvania Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

1417. The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

### COUNT LXXX
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. § 2301 *ET SEQ.* (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF PLAINTIFF LAPRADE AND THE PENNSYLVANIA SUB-CLASS)

1418. Plaintiff LaPrade incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1419. Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff LaPrade brings this count on behalf of herself and the members of the Pennsylvania Sub-Class.

1420. Plaintiff LaPrade satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

1421.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

1422.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

1423.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

1424.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

1425.   Defendants provided Plaintiff LaPrade and members of the Pennsylvania Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1426.   Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are

unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff LaPrade and members of the Pennsylvania Sub-Class. Among other things, Plaintiff LaPrade and members of the Pennsylvania Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

1427.  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

1428.  Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect. Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

1429.  Plaintiff LaPrade and members of the Pennsylvania Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff LaPrade and members of the Pennsylvania Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not

335

intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1430.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

1431.  Plaintiff LaPrade and members of the Pennsylvania Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff LaPrade and members of the Pennsylvania Sub-Class have not re-accepted their Class Vehicles by retaining them.

1432.  Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

1433.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

1434.  Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT LXXXI
## UNJUST ENRICHMENT
## (ON BEHALF OF PLAINTIFF LAPRADE AND THE PENNSYLVANIA SUB-CLASS)

1435.   Plaintiff LaPrade incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1436.   Plaintiff LaPrade asserts this count on behalf of herself and members of the Pennsylvania Sub-Class.

1437.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

1438.   Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

1439.   As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff LaPrade and members of the Pennsylvania Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff LaPrade and members of the Pennsylvania Sub-Class.

1440.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

1441.   Plaintiff LaPrade and members of the Pennsylvania Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff LaPrade and members of the Pennsylvania Sub-Class, together with interest, in a manner to be determined by the Court.

**M.**    **Washington Counts**

### COUNT LXXXII
### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT,
### WASH. REV. CODE §§ 19.86.010 *ET SEQ.*
### (ON BEHALF OF PLAINTIFF MORGAN AND THE WASHINGTON SUB-CLASS)

1442.   Plaintiff Morgan incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1443.   Plaintiff Morgan asserts this count on behalf of herself and members of the Washington Sub-Class.

1444.   Plaintiff Morgan and members of the Washington Sub-Class are persons within the context of the Washington Consumer Protection Act, WASH. REV. CODE §§ 19.86.010 *et seq.* (hereinafter "WCPA") who purchased and/or leased class vehicles for personal, family or household use, specifically § 19.86.010(1).

1445.   Defendants are persons within the context of WCPA § 19.86.010(1).

1446.   The sale of Class Vehicles in Washington constitutes trade and commerce of consumer goods affecting the people of the state of Washington within the context of WCPA § 19.86.010(2).

1447.   Defendants violated WCPA § 19.86.020 and § 19.86.093 by representing that Class Vehicles have characteristics, uses, benefits and/or qualities they do not possess.  This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons, and/or has the capacity to injure other persons.

1448.   Defendants violated WCPA § 19.86.020 and § 19.86.093 by representing that Class Vehicles are of a particular standard, quality, or grade, when they are not.  This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons, and/or has the capacity to injure other persons.

1449.   Defendants violated WCPA § 19.86.020 and § 19.86.093 by failing to state a material fact that deceives or tends to deceive.  This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons, and/or has the capacity to injure other persons.

1450.   Defendants violated WCPA § 19.86.020 and § 19.86.093 by advertising Class Vehicles without intent to sell or lease as advertised.  This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons, and/or has the capacity to injure other persons.

1451.   Defendants violated WCPA § 19.86.020 and § 19.86.093 by selling class vehicles knowing that a service, replacement or repair was needed.  This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons, and/or has the capacity to injure other persons.

1452.   Defendants violated WCPA § 19.86.020 and § 19.86.093 by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts concerning class vehicles with the intent to deceive Plaintiff Morgan and members of the Washington Sub-Class.  This conduct is injurious to the public interest because it injured other persons, had the capacity to injure other persons, and/or has the capacity to injure other persons.

1453.   Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the WCPA as described in this complaint in violation of WCPA § 19.86.020 and § 19.86.093.

1454.   Defendants committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and

the knowing concealment, suppression and omission of material facts concerning the Class Vehicles' Timing Chain Systems in connection with the sale and/or advertisement of Class Vehicles to the Plaintiff Morgan and members of the Washington Sub-Class.

1455. Defendants fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff Morgan and members of the Washington Sub-Class the required maintenance and/or maintenance intervals of class vehicle engines, including but not limited to the Timing Chain System.

1456. Defendants fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff Morgan and members of the Washington Sub-Class the characteristics of class vehicle engines with respect to materials, manufacture, durability, design, longevity, maintenance and operating costs. Defendants extensively advertised that class vehicles were superior in construction and extolled the quality and virtues of Class Vehicles including superior materials, workmanship, design, manufacture, safety, durability, reliability and performance including an engine life exceeding 110,000 miles. In fact, class engines contained a known defect as described in this complaint that caused class engines to prematurely fail.

1457. Defendants actively suppressed the fact that class engines were prematurely failing because of materials, workmanship, design and manufacture defects and incorrect maintenance recommendations and maintenance intervals.

1458. Defendants intended that Plaintiff Morgan and members of the Washington Sub-Class would, in the course of their decision to expend monies in purchasing, leasing and/or repairing class vehicles, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of class engines with respect to materials, workmanship, design, manufacture and information in the owner's manuals and USA Warranty

and Maintenance pamphlet, as well as any potential defects inherent in the engine components, including the Timing Chain System.

1459.  Although Defendants knew defects in class engines and misinformation in the owner's manuals were causing premature class engine failures, Defendants denied any liability and attempted to shift the responsibility and cost for repairs to individual vehicle owners.

1460.  One scheme included blaming class engine failures on owners for poor or improper maintenance and other conditions for which Defendants were not allegedly responsible.  In fact, it was the concealed defects in the Timing Chain System that caused the class engine failures.

1461.  Rather than conduct an open and fair inspection and repair procedure for all class engines, Defendants employed unfair and deceptive trade practices to deny repairs or repair reimbursements in violation of the WCPA.

1462.  Information regarding a vehicle's Timing Chain System Defect as described in this complaint is important to consumers in that the Defect causes engine failures and necessitates expensive repairs, and, hence, is likely to affect a consumer's choice of vehicle to purchase or lease.  Consumers typically will reasonably rely upon the manufacturers and sellers to provide accurate information as to quality and character of the vehicle they are considering purchasing or leasing.

1463.  If Defendants had not concealed class engine defects from Plaintiff Morgan and members of the Washington Sub-Class within the express warranty period, class engines would have been repaired without cost to purchasers as promised under the original warranty.

1464.  Defendants fraudulently concealed unmistakable manifestations of impending class engine failures within the express warranty period without inspecting, repairing or replacing damaged internal class engine components.

1465.   Defendants violated the WCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines were defectively designed and manufactured and were accompanied by incorrect maintenance recommendations and maintenance intervals.

1466.   Defendants violated the WCPA by failing to inform class vehicle owners prior to purchase and/or during the warranty period that class engines contained defects and would require regular replacement of expensive internal engine components such as the timing chain system.

1467.   Defendants further violated the WCPA by failing to inform prospective class vehicle purchasers that the Defendants had not properly tested the engines, including but not limited to the timing chain system.

1468.   Defendants committed unfair and deceptive trade practices as described in this complaint.  Defendants repeatedly violated the WCPA on multiple occasions with their continuous course of conduct, including omissions of material fact and misrepresentations concerning *inter alia*, the causes of the failures of class engines owned by Plaintiff Morgan and members of the Washington Sub-Class.

1469.   The secret warranty programs for class engines initiated by the Defendants along with other wrongful conduct of the Defendants in violation of the WCPA occurred within the limitations period set out in the statute and/or is tolled by Defendants' conduct.

1470.   As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff Morgan and members of the Washington Sub-Class purchased or leased class vehicles and sustained an ascertainable loss and financial harm.

1471.  Plaintiff Morgan and members of the Washington Sub-Class experienced premature class engine failure, diminution of class vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

1472.  The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to class vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

1473.  Plaintiff Morgan and members of the Washington Sub-Class demand judgment against the Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT LXXXIII
## FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT
## (ON BEHALF OF PLAINTIFF MORGAN AND THE WASHINGTON SUB-CLASS)

1474.  Plaintiff Morgan incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1475.  Plaintiff Morgan asserts this count on behalf of herself and members of the Washington Sub-Class.

1476.  Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks with the intent that Plaintiff Morgan and members of the Washington Sub-Class rely on

Defendants' misrepresentations and omissions. As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

1477. Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained the Timing Chain System Defect during the warranty periods. To date, Defendants have not provided Plaintiff Morgan and members of the Washington Sub-Class with a repair or remedy for the Timing Chain System Defect.

1478. Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Morgan and members of the Washington Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and made a partial disclosure regarding the safety of the Class Vehicles. Rather than disclose the Defect, Defendants intentionally and knowingly concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the presence of the Timing Chain System Defect and corresponding safety risk, to sell additional Class Vehicles and avoid the cost of repair or replacement.

1479. As a result of Defendants' failure to disclose to members of the Classes the material fact that the Timing Chain System installed in Class Vehicles is defective and prone to premature failure, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss. The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Morgan

and members of the Washington Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1480.  The fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.  Plaintiff Morgan and members of the Washington Sub-Class would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect, or would have paid less for the Class Vehicles.

1481.  Defendants knew their false misrepresentation, concealment, and suppression of material facts was false and misleading and knew the effect of concealing those material facts.  Defendants knew their concealment and suppression of the Timing Chain System Defect would sell more Class Vehicles and would discourage Plaintiff Morgan and members of the Washington Sub-Class from seeking replacement or repair of the Timing Chain System within the warranty periods.  Further, Defendants intended to induce Plaintiff Morgan and members of the Washington Sub-Class into purchasing or leasing the Class Vehicles and discourage them from seeking

replacement or repair of the Timing Chain System within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff Morgan and members of the Washington Sub-Class, in order to decrease costs and increase profits.

1482.    Defendants acted with malice, oppression, and fraud.

1483.    Plaintiff Morgan and members of the Washington Sub-Class reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the Timing Chain System Defect, Plaintiff Morgan and members of the Washington Sub-Class have suffered actual damages in an amount to be determined at trial.

**COUNT LXXXIV**
**NEGLIGENT MISREPRESENTATION**
**(ON BEHALF OF PLAINTIFF MORGAN AND THE WASHINGTON SUB-CLASS)**

1484.    Plaintiff Morgan incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1485.    Plaintiff Morgan asserts this count on behalf of herself and members of the Washington Sub-Class.

1486.    Defendants owed a duty to disclose the Timing Chain System Defect and its corresponding safety risk to Plaintiff Morgan and members of the Washington Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Timing Chain System's failure.  Defendants also made partial disclosures regarding the safety of the Class Vehicles while knowing that Class Vehicles possessed the Timing Chain System Defect and failing to disclose its existence and its corresponding safety hazard.

1487.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Timing Chain System installed

in the Class Vehicles is defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiff Morgan and members of the Washington Sub-Class have suffered actual damages.

1488.  As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules, or elsewhere, to Plaintiff Morgan and members of the Washington Sub-Class the material fact that the Timing Chain System installed in the Class Vehicles is defective and prone to premature failure, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Timing Chain System, other engine parts and/or the entire engine, or sell their vehicles at a substantial loss.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Timing Chain System before the end of the useful life of the engine, and because Plaintiff Morgan and members of the Washington Sub-Class had a reasonable expectation that the vehicles would not suffer from a premature failure of the Timing Chain System that would present a safety risk.

1489.  The fact that the Timing Chain System installed in the Class Vehicles is prone to premature failure is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Timing Chain System fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure.  Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  No reasonable consumer expects a vehicle to contain a defect in design, manufacture, materials or workmanship, such as the Timing Chain System Defect, that can cause catastrophic

engine failure with little to no warning or time to take preventative measures or safely remove the vehicle from the road.

1490.  Plaintiff Morgan and members of the Washington Sub-Class would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Timing Chain System Defect and corresponding safety risk, or would have paid less for the Class Vehicles.  Plaintiff Morgan and members of the Washington Sub-Class justifiably relied upon Defendants' negligent false representations and omissions of material facts.

1491.  As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Timing Chain System Defect, Plaintiff Morgan and members of the Washington Sub-Class have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

**COUNT LXXXV**
**BREACH OF EXPRESS WARRANTY,**
**WASH. REV. CODE §§ 62A.2-313, 62A.2A-103, AND 62A.2A-210**
**(ON BEHALF OF PLAINTIFF MORGAN AND THE WASHINGTON SUB-CLASS)**

1492.  Plaintiff Morgan incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1493.  Plaintiff Morgan brings this count on behalf of herself and the Washington Sub-Class.

1494.  Defendants are and were at all relevant times "merchants" with respect to motor vehicles under WASH. REV. CODE §§ 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" and "lessors" of motor vehicles under § 62A.2-313(1)-(2) and § 62A.2A-103(1)(p).

1495.  The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under WASH. REV. CODE § 62A.2-313(1).

1496.   The Class Vehicles are and were at all relevant times "goods" within the meaning of WASH. REV. CODE §§ 62A.2-105(1) and 62A.2A-103(1)(h).

1497.   Defendants provided Plaintiff Morgan and members of the Washington Sub-Class with one or more express warranties.  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1498.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Timing Chain System prior to 110,000 miles.  Such representations formed the basis of the bargain in Plaintiff Morgan and members of the Washington Sub-Class's decisions to purchase or lease the Class Vehicles.

1499.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Timing Chain System Defect

and its corresponding safety risk from Plaintiff Morgan and members of the Washington Sub-Class.

1500.   In connection with the purchase or lease of each of the Class Vehicles, Defendants provide maintenance schedules and warranty guides which omit any mention of the Timing Chain Systems as requiring routine inspection, service, or replacement within the first 110,000 miles.

1501.   Under the warranties provided to Plaintiff Morgan and members of the Washington Sub-Class, Defendants promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Timing Chain System Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time.  As alleged herein, Defendants breached these warranties.

1502.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Morgan and members of the Washington Sub-Class purchased or leased their Class Vehicles.  Given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of the Timing Chain System failures (and corresponding engine damage) occur outside of the warranty periods.

1503.   Plaintiff Morgan and members of the Washington Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect and associated safety risk, which were known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff Morgan and members of the Washington Sub-Class that the Class Vehicles contained the Timing Chain System Defect and failed to provide a suitable repair or replacement of the Timing Chain System free of charge within a reasonable time.

1504.  Defendants breached the express warranty promising to repair and correct a manufacturing defect or defect in materials or workmanship of any parts it supplied.

1505.  On information and belief, Defendants have not suitably repaired or replaced the defective Timing Chain System free of charge for Plaintiff Morgan and members of the Washington Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

1506.  Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or maintenance schedule that incorporated no inspection and service intervals for the Timing Chain System for the first 110,000 miles although Defendants knew of the Timing Chain System Defect and that the Timing Chain System required periodic inspection and service.

1507.  Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and/or manufacturing defects which cause engine failure and/or failure to perform as warranted.

1508.  Plaintiff Morgan and members of the Washington Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Morgan and members of the Washington Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiff Morgan and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty

agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1509.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and have failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1510.   Defendants were further provided notice by Plaintiff Morgan of their breach of express warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1511.   Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here.   Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff Morgan and members of the Washington Sub-Class.  Among other things, Plaintiff Morgan and members of the Washington Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1512.   Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Morgan and members of the Washington Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

1513.   Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Plaintiff Morgan and members of the Washington Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

1514.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff Morgan and members of the Washington Sub-Class purchased or leased their Class Vehicles.

1515.   Plaintiff Morgan and members of the Washington Sub-Class experienced the existence of the Timing Chain System Defect within the warranty periods but had no knowledge of the existence of the Defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiff Morgan and members of the Washington Sub-Class that the Class Vehicles contained the Timing Chain System Defect during the warranty periods, and, thus, wrongfully transferred the costs of repair or replacement of the Timing Chain System and damaged engine parts to Plaintiff Morgan and members of the Washington Sub-Class.

1516.   Because of the Timing Chain System Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

1517.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff Morgan and members of the Washington Sub-Class s have been damaged in an amount to be determined at trial.

1518.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff Morgan and members of the Washington Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff Morgan and members of the Washington Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT LXXXVI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,
### WASH. REV. CODE §§ 62A.2-314, 62A.2A-103 AND 62A.2A-212
### (ON BEHALF OF PLAINTIFF MORGAN AND THE WASHINGTON SUB-CLASS)

1519.   Plaintiff Morgan incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1520.   Plaintiff Morgan brings this count on behalf of herself and the Washington Sub-Class.

1521.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under WASH. REV. CODE §§ 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" and "lessors" of motor vehicles under § 62A.2-313(1)-(2) and § 62A.2A-103(1)(p).

1522.   The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under WASH. REV. CODE § 62A.2-313(1).

1523.   The Class Vehicles are and were at all relevant times "goods" within the meaning of WASH. REV. CODE §§ 62A.2-105(1) and 62A.2A-103(1)(h).

1524.   Plaintiff Morgan and members of the Washington Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales,

or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

1525. A warranty that the Class Vehicles and/or the defective Timing Chain Systems installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to WASH. REV. CODE §§ 62A.2-314 and 62A.2A-212.

1526. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Timing Chain System Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

1527. Through their maintenance schedules, Defendants further represented that the defective Timing Chain System would not need periodic inspection, repair or replacement before 110,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Timing Chain System before 110,000 miles by omitting the Timing Chain System from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

1528. Plaintiff Morgan and members of the Washington Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff Morgan and members of the Washington Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff Morgan and each of the other members of the Classes are intended third-party

beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1529.   Defendants were provided notice of the Timing Chain System Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Timing Chain System Defect and, on information and belief, have refused to repair or replace the defective Timing Chain System free of charge within a reasonable time.

1530.   Defendants were further provided notice by Plaintiff Morgan of their breach of implied warranties by letter dated January 17, 2020.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Timing Chain System free of charge within a reasonable time.

1531.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Morgan and members of the Washington Sub-Class have been damaged in an amount to be proven at trial.

1532.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to Plaintiff Morgan and

members of the Washington Sub-Class.  Among other things, Plaintiff Morgan and members of the Washington Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and Plaintiff Morgan and members of the Washington Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain System Defect posed a safety risk.

1533.  Plaintiff Morgan and members of the Washington Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

1534.  The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

### COUNT LXXXVII
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. § 2301 *ET SEQ.*
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF PLAINTIFF MORGAN AND THE WASHINGTON SUB-CLASS)

1535.  Plaintiff Morgan incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1536.  Plaintiffs bring this count on behalf of themselves and the Nationwide Class or, alternatively, Plaintiff Morgan brings this count on behalf of herself and the members of the Washington Sub-Class.

1537.  Plaintiff Morgan satisfies the MMWA jurisdictional requirement because she alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

1538.  Plaintiff Morgan and members of the Washington Sub-Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

1539.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

1540.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

1541.   The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

1542.   Defendants provided Plaintiff Morgan and members of the Washington Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  For illustrative purposes, Defendants currently provide: (1) a New Vehicle Limited Warranty which includes "virtually bumper to bumper coverage for 3 years or 36,000 miles, whichever occurs first" or 4 years or 50,000 miles, whichever occurs first or 6 years or 72,000 miles, whichever occurs first; and/or (2) a Powertrain Limited Warranty for "5 years or 60,000 miles whichever occurs first, from the date the vehicle was first placed in service," which covers "all internal [engine] parts" including the Timing Chain System.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the Timing Chain System, at no cost to owners and lessees of the Class Vehicles.  However, given the latent nature of the Timing Chain System Defect, Defendants knew or should have known that the majority of Timing Chain System failures occur outside of the warranty periods.

1543.   Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect.  The time limits contained in Defendants' warranty periods were also

unconscionable and inadequate to protect Plaintiff Morgan and members of the Washington Sub-Class. Among other things, Plaintiff Morgan and members of the Washington Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Timing Chain Systems would fail well before their useful lives.

1544. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

1545. Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Timing Chain System Defect. Without limitation, the Class Vehicles share a common Timing Chain System Defect in design, material, manufacturing, and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants. Through their issuance of TSBs to their authorized dealers, Defendants have acknowledged that the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Timing Chain System Defect.

1546. Plaintiff Morgan and members of the Washington Sub-Class have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiff Morgan and members of the Washington Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty

agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

1547.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Timing Chain System Defect, but failed to repair or replace the Timing Chain System and/or disclose the Timing Chain System Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

1548.  Plaintiff Morgan and members of the Washington Sub-Class would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff Morgan and members of the Washington Sub-Class have not re-accepted their Class Vehicles by retaining them.

1549.  Defendants were provided notice by letter dated January 17, 2020 that Plaintiffs would pursue claims on behalf of a class.

1550.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

1551.  Plaintiffs, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT LXXXVIII**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFF MORGAN AND THE WASHINGTON SUB-CLASS)**

1552.   Plaintiff Morgan incorporates and re-alleges each preceding paragraph as though fully set forth herein.

1553.   Plaintiff Morgan asserts this count on behalf of herself and members of the Washington Sub-Class.

1554.   Plaintiff Morgan and members of the Washington Sub-Class conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Timing Chain System Defect.

1555.   Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles.

1556.   As a proximate result of Defendants' false representations, omissions and concealment of the Timing Chain System Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff Morgan and members of the Washington Sub-Class.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiff Morgan and members of the Washington Sub-Class.

1557.   Plaintiff Morgan and members of the Washington Sub-Class are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

1558.   Plaintiff Morgan and members of the Washington Sub-Class seek an order requiring Defendants to disgorge their gains and profits to Plaintiff Morgan and members of the Washington Sub-Class, together with interest, in a manner to be determined by the Court.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and Sub-Classes, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Classes, and Plaintiffs' counsel as counsel for the Class and Sub-Classes;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Timing Chain System in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Classes for all costs and economic losses;

D.    Appropriate injunctive and equitable relief;

E.    A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

F.    An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, overpayment damages, and out-of-pocket costs in an amount to be determined at trial;

G.    An order awarding any applicable statutory and civil penalties;

H.    A declaration that Defendants are required to engage in corrective advertising;

I.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

J.      An award of costs, expenses and attorneys' fees as permitted by law; and

K.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## X.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: March 6, 2020                    Respectfully submitted,

_/s/ James E. Cecchi_____
James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

Joseph H. Meltzer
Melissa L. Troutner
Natalie Lesser
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
nlesser@ktmc.com

Gary S. Graifman
**KANTROWITZ GOLDHAMER &**
  **GRAIFMAN, P.C.**
210 Summit Avenue
Montvale, New Jersey 07645
Telephone: (201) 391-7000

Thomas P. Sobran
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, MA 02043
Telephone: (781) 741-6075

*Attorneys for Plaintiffs*