# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

MATTHEW OPHEIM, et al.,

    **Plaintiffs,**

    **v.**

**VOLKSWAGEN AKTIENGESELLSCHAFT; VOLKSWAGEN GROUP OF AMERICA, INC.; AUDI AKTIENGESELLSCHAFT; and AUDI OF AMERICA, INC.,**

    **Defendants.**

Civ. No. 20-02483 (KM) (ESK)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiffs in this putative class action purchased Volkswagen or Audi vehicles with an allegedly defective yet concealed engine part, *i.e.*, a timing chain. Plaintiffs sued Volkswagen Aktiengesellschaft ("VW AG"), Volkswagen Group of America, Inc. ("VW America"), Audi Aktiengesellschaft ("Audi AG"), and Audi of America, Inc. ("Audi America"). Plaintiffs, who hail from fourteen states, assert contract, tort, and statutory claims under their respective states' laws, as well as federal claims under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* Audi AG moves to dismiss the complaint for lack of personal jurisdiction, *see* Fed. R. Civ. P. 12(b)(2). (DE 48.)[1] VM

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Am. Compl. = Amended Complaint (DE 29)

    VW Mot. = VW America's Brief in Support of its Motion to Dismiss (DE 45-1)

    Opp. to VW Mot. = Plaintiffs' Opposition to VW America's Motion to Dismiss (DE 54)

    Opp. to Audi Mot. = Plaintiffs' Opposition to Audi AG's Motion to Dismiss (DE 53)

America moves to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and, as to the MMWA claims, for lack of subject-matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1). (DE 45.) Audi AG joins in VM America's motion to dismiss.

For the following reasons, Audi AG's motion (DE 48) is **DENIED** without prejudice to renewal following jurisdictional discovery. VW America's motion, joined by Audi AG, is **GRANTED IN PART** and **DENIED IN PART**. In sum, the MMWA claims, fraud claims based on affirmative misrepresentations, implied warranty claims under Illinois and Oregon law, and negligent misrepresentation claims under Georgia and Oregon law are dismissed. VW America's motion to dismiss is otherwise denied.

## I. BACKGROUND

This case is about an allegedly defective engine part in certain Audi and Volkswagen models.[2] (Am. Compl. ¶¶ 1–2.) Specifically, this case concerns a timing chain system, which contains multiple components. (*Id.* ¶ 62.) To simplify, a typical car engine requires that fuel and air mix and combust, while releasing waste products from combustion. (*Id.* ¶ 54.) To that end, a timing chain system controls the opening and closing of an engine's intake valves (for introducing fuel and air) and exhaust valves (for releasing byproducts). (*Id.* ¶ 55.) Plaintiffs allege that the timing chain system at issue malfunctions and can cause the engine to lose power. (*Id.* ¶ 6.)

Despite knowledge of the defect, Defendants never disclosed it. (*Id.* ¶ 7.) Further, a timing chain system should usually last for 120,000 miles, and the maintenance schedules that came with the cars did not state that the timing chain system would need replacing early. (*Id.* ¶¶ 7, 10.) The New Vehicle Limited Warranty ("NVLW") provided with the vehicles promised repairs or

---

Palmer Decl. = Declaration of Neal Palmer (DE 49)

Importer Agmt. = Sample Importer Agreement (DE 53-2)

[2] The Amended Complaint approaches 2,000 paragraphs, so I offer only a summary of allegations pertinent to the current motions.

replacement only for four/five years or 50,000/60,000 miles (depending on the exact model). (*Id.* ¶ 11.) Although the timing chain system was of course present in the vehicles when Plaintiffs purchased them and the warranty began, its defects often did not manifest themselves until later. (*Id.* ¶ 12.) Defendants knew that the defect would emerge later, but concealed the defect so that they would not have to repair it under the NVLWs. (*Id.*) This had the effect of shifting the repair costs to consumers. (*Id.*)

Plaintiffs purchased these vehicles from dealerships, some of them new and some used. (*See id.* ¶ 1.) They sued Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of the MMWA, unjust enrichment, and violations of consumer fraud and unfair and deceptive trade practices statutes. (*Id.* ¶ 16.) Because Plaintiffs live in different states, they allege their claims under their respective states' laws (except for the federal MMWA claim). They seek to represent a nationwide class of purchasers, as well as sub-classes of purchasers in each state. They invoke jurisdiction for their state-law claims under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1441, 1446). (Am. Compl. ¶¶ 19, 189.)

For defendants, Plaintiffs named (1) VW AG, the manufacturer of Volkswagen vehicles, which is based in Germany; (2) VW America, VW AG's American subsidiary; (3) Audi AG, the manufacturer of Audi vehicles, which is based in Germany; and (4) Audi America, Audi AG's American counterpart. (*Id.* ¶¶ 43–48.) These entities are all within the same corporate family. (*Id.*) Although the cars are manufactured in Germany, VW America, which is incorporated in New Jersey and based in Virginia, acts as VW AG and Audi AG's distributor in the United States. (*Id.*)

For example, Audi AG has importer agreements with VW America, pursuant to which Audi AG manufactures cars to serve the American market, and VW America serves as Audi AG's "importer, distributor, and marketer" in the United States by creating and contracting with a network of dealerships to

sell Audi cars to consumers. (Importer Agmt. at 4.) Audi AG and VW America's relationship is expressly "based upon mutual understanding, cooperation, trust, and confidence." To that end, the Agreement obligates Audi AG to, *e.g.*, (1) consult with VW America to develop a "sales network" in the U.S. (*id.* § 10(a)); (2) consult with VW America about agreements with dealerships (*id.* § 10(b)); (3) work with VW America "to plan and effectively utilize [Audi AG's] production capacity," (*id.* § 11(a)); (4) deliver products to VW America based on specific purchase orders (*id.* § 11(e)); (5) establish guidelines for VW America's marketing and public relations efforts (*id.* § 15(a)); and (6) receive reports from VW America regarding business in the American region (*id.* § 21(b)). Audi America is an operating unit of VW America; it is not a subsidiary of Audi AG and has no independent existence. (Palmer Decl. 10–11.)

Audi AG moves to dismiss for lack of personal jurisdiction, and VW America moves to dismiss for failure to state a claim, in which Audi AG joins in the alternative. Given that Audi America has no independent existence, VW America moves on its behalf. VW AG had not been served when the motions were filed. (VW Mot. at 1 n.1)

## II.    STANDARDS OF REVIEW

### A. Personal Jurisdiction

On a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing sufficient facts to show that jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) (citation omitted). If the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

## B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III. DISCUSSION

I take up Audi AG's personal jurisdiction motion first. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before [the court] can resolve a case."). Concluding that I cannot dismiss Audi AG, I turn to the Rule 12(b)(6) motion.

### A. Personal Jurisdiction over Audi AG

Audi AG moves to dismiss all claims against it for lack of personal jurisdiction. A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). Plaintiffs do not

argue that the Court has general jurisdiction (*see* Opp. to Audi Mot. at 5–7), so I focus on specific jurisdiction.[3]

A court has specific jurisdiction when the defendant has contacts with the forum, and a plaintiff's claims "arise out of or relate to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (citation omitted). To apply that principle, the Third Circuit uses a three-part test, requiring the plaintiff to show that (1) the defendant purposefully availed itself of the forum, (2) the claims arise out of or relate to at least one of the defendant's activities, and (3) exercising personal jurisdiction comports with fair play and substantial justice. *O'Connor*, 496 F.3d at 317. I discuss each prong in turn.

### 1. Purposeful Availment

To start, the plaintiff must show that the defendant took "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024 (citation omitted). "[W]hat is necessary is a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317. "[R]andom, isolated, or fortuitous" contacts with the forum will not do. *Ford*, 141 S. Ct. at 1024 (citation omitted).

To show purposeful availment, Plaintiffs point to, among other things, the sample Importer Agreement between Audi AG and VW America. (Opp. to Audi Mot. at 7–12.) The obligations in that Agreement make it plausible that discovery will reveal facts showing that Audi AG deliberately targets New Jersey consumers. When allegations and evidence "suggest with reasonable particularity the possible existence of the requisite contacts between [Audi AG] and the forum state, [Plaintiffs'] right to conduct jurisdictional discovery should

---

[3]    In any event, the Court lacks general jurisdiction over Audi AG. A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). A corporation is "at home" at least where it is incorporated or has its principal place of business. *Id.* (citation omitted). Audi AG is organized under German law and headquartered in Germany. (Am. Compl. ¶ 45.)

be sustained." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (cleaned up). The Importer Agreement reveals that Audi AG does not simply ship a lump number of cars to VW America to then distribute in the United States independently. Rather, the Agreement evinces a collaborative relationship in which Audi AG is attuned to the needs and realties of the American market.

Moreover, some of the obligations suggest that Audi AG works with specific sub-markets in mind. For example, Audi AG must consult with VW America about developing a sales network and dealership agreements. It is plausible, then, that Audi AG at least knows which states it is serving. Indeed, VW America and "Audi" maintain a "regional" office in New Jersey. (Am. Compl. ¶ 20 (citing Volkswagen Group of America Locations, Volkswagen Group of America, https://www.volkswagengroupofamerica.com/locations).)

Further, Audi AG delivers products to VW America based on specific orders, and one can infer that those orders may specify dealerships or sub-markets. This means that, although VW America serves as a middleman, Audi AG effectively ships its products to specific markets within the US. Accordingly, Audi AG is not some arms-length supplier.

Given the Importer Agreement, I cannot say that Audi AG's contacts with the New Jersey market are "random, isolated, or fortuitous." *Ford*, 141 S. Ct. at 1024 (citation omitted). Instead, it is plausible that Audi AG worked with VW America to supply the American market, and that work could at times be forum-specific, such as by sending cars earmarked for certain regions. True, the Third Circuit has held that efforts to reach the American market writ large do not show purposeful availment as to the specific forum. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 779 (3d Cir. 2018); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 104 (3d Cir. 2009). But, while the Importer Agreement may not be enough on its own to establish jurisdiction, it still indicates that forum-specific facts could exist. That is sufficient to deny the motion to dismiss in favor of discovery. *Toys "R" Us*, 318 F.3d at 456.

Regardless, Plaintiffs have another theory of purposeful availment available to them: VW America is incorporated in New Jersey, so by doing business with a New Jersey-incorporated company, Audi AG purposefully directed its activities at New Jersey. This argument resembles one I recently addressed in *Rickman v. BMW of North America LLC*, Civ. No. 18-4363, 2021 WL 1904740 (D.N.J. May 11, 2021). The defendants there were a German car manufacturer (BMW AG) and its American distributor (BMW NA), headquartered in New Jersey. *Id.* at *1–2. The plaintiffs sued both, alleging that they falsely marketed vehicles as ones producing "low emissions." *Id.* I held that jurisdictional discovery was warranted, reasoning that because "BMW AG serves the American market through BMW NA," then "significant coordination between the two is plausible." *Id.* at *5.

The Audi AG-VW America relationship is similar to the BMW AG-BMW NA relationship—with one key difference: The New Jersey connection in *Rickman* was that BMW NA was headquartered there, while the New Jersey connection here is that VW America is incorporated in New Jersey. VW America's headquarters, however, are in Virginia.

Is this a distinction with a difference? On one hand, it is easier to see deliberate targeting of the forum when the theory of personal jurisdiction is that a foreign defendant worked closely with a defendant headquartered in the forum. One can readily infer that communications were sent into the forum and that the foreign defendant knew it was doing business with a forum-based entity. The physical presence of the co-defendant in the forum means that efforts to contact or work with that defendant are more tied to the forum. The same is not necessarily true when a defendant is merely incorporated in the state. Can a foreign defendant then be said to have targeted a forum by transacting with a co-defendant incorporated in that forum?

Principles of corporate law and personal jurisdiction suggest yes. The Supreme Court's go-to commentary on general jurisdiction explains:

> The law treats corporations like legal persons, and the place of incorporation and the principal place of business are both

> analogous to domicile . . . . [T]he corporation . . . cannot ever be
> absent from the state of incorporation . . . [E]ven if a corporation
> neither does business nor maintains an office in the incorporating
> state, the incorporation process itself provides notice of the
> potential for judicial jurisdiction.

Brilmayer, et al., *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 733–34 (1988) (cited favorably by, *e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)). Accordingly, the theory of personal jurisdiction here becomes straightforward and plausible. The minimal facts provided thus far suggest that Audi AG has an ongoing, substantial relationship with VW America as its gateway into the American market. The law views VW America as a New Jersey "person," so by regularly transacting with VW America, Audi AG deliberately targeted New Jersey. *Cf. Meridian Consulting I Corp. v. Eurotec Canada Ltd.*, Civ. No. 19-22197, 2021 WL 689132, at *4–7 (D.N.J. Feb. 22, 2021) (Canadian company's substantial business with New Jersey company could subject it to personal jurisdiction in New Jersey). Plaintiffs have at least made out a prima facie showing for purposeful availment on this theory as well.

### 2. "Arise out of or relate to"

Even if the defendant has sufficient contacts with a forum, the plaintiffs' claims must "arise out of or relate to" those contacts. *Ford*, 141 S. Ct. at 1025 (citation omitted). This used to mean, in the Third Circuit's view, that a causal connection existed between the contacts and the claims. I have concluded that that causation requirement does not survive the Supreme Court's holding in *Ford. Rickman*, 2021 WL 1904740, at *8. (I do not repeat that discussion here.)

Freed from a strict causation requirement, Plaintiffs lean heavily on *Ford* as factually analogous. There, Ford did not prevail on its argument that plaintiffs had to show that "the company had designed, manufactured, or . . . sold in the State the particular vehicle involved in the accident." 141 S. Ct. at 1023. The Court, however, looked not to the particular vehicle, but to facts showing that Ford extensively served the market in Minnesota and Montana. *Id.* at 1028. Accordingly, the Supreme Court held that Ford's

contacts in the forums (promoting and selling cars there) were sufficiently related to the claims (arising from an accident involving a Ford car in the forum). *Id.*

This case is sufficiently analogous. The Importer Agreement at least shows how Audi AG, in conjunction with VW America, serves the American market, and it is plausible that those efforts entail forum-specific contacts, including those directed at New Jersey. Next, the New Jersey plaintiffs purchased their cars here and experience the "injury" here, *i.e.*, owning/using a defective car. The "relate to" prong is thus satisfied because Audi AG "serves a market for a product in the forum State and the product malfunctions there." *Ford*, 141 S. Ct. at 1027. "Or said another way, if [Audi AG's] business deliberately extended into [New Jersey] (among other States), then [New Jersey's] courts could hold [it] accountable for a car's [malfunctioning] there— even though the vehicle had been designed and made overseas . . . ." *Id.*

There is a harder question as to whether I have jurisdiction over the claims asserted by non-New Jersey residents. They did not purchase their cars in New Jersey, and they have not experienced any injury in New Jersey. Nonetheless, Plaintiffs' alternative theory of jurisdiction suffices for the non-New Jersey plaintiffs. Pursuant to the Importer Agreement, Audi AG retained some control over what vehicles were shipped to the United States and how they were marketed and distributed. There is, then, plausibly some coordination between Audi AG and VW America. The claims here are that defects were not disclosed by the written materials accompanying the cars or defendants' advertisements. (*E.g.*, Am. Compl. ¶¶ 81–83.) It is plausible, given the obligations in the Importer Agreement, that Audi AG directed or collaborated with VW America regarding how the models would be sold and promoted. The non-New Jersey plaintiffs' claims would have stemmed from decisions made within that relationship, which necessarily touched New Jersey because VW America is a New Jersey corporation. Thus, there is a plausible connection between the non-New Jersey plaintiffs' claims and New Jersey. *See*

*Rickman*, 2021 WL 1904740, at *9–10 (discovery was warranted to develop how German manufacturer interacted with American distributor to promote vehicles in the US when plaintiffs claimed those promotions were misleading); *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 217 (D.N.J. 2020) (when marketing decisions were made in New Jersey, the court could exercise jurisdiction over non-New Jersey plaintiffs' claims).

### 3. Fair Play and Substantial Justice

I conclude that jurisdictional discovery is warranted to develop facts regarding minimum contacts. There are uncommon cases, however, in which "other considerations would render jurisdiction unreasonable." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (citation omitted). So I briefly address whether considerations of fair play and substantial justice would defeat jurisdiction and thus obviate the need for jurisdictional discovery. They do not.

In this connection I consider (1) Audi AG's burden, (2) New Jersey's interest, (3) Plaintiffs' interest, (4) efficiency, and (5) other forums' interests. *Id.* Although Audi AG is a foreign company, it extensively targets the American market and has a substantial relationship to a New Jersey company. So it cannot complain of a severe burden. *See Rickman*, 2021 WL 1904740, at *7; *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 327 (S.D.N.Y. 2020). New Jersey has an interest in giving its residents a forum to vindicate their legal interests for injuries occurring here. Plaintiffs have an interest in litigating here because some of them are New Jersey residents. As to the fourth and fifth factors, the alternative to litigating here would seem to be a separate suit against Audi AG in Germany, and that is plainly inefficient for the remaining parties. Audi AG has made no argument that Germany has a stronger interest.

Thus, there is no "compelling case" for dismissal that would moot the need for jurisdictional discovery. *See Carteret*, 954 F.2d at 150.

* * *

All said, this is not a case in which the Court can resolve its jurisdiction over a key defendant based on allegations and preliminary facts. Better, I think, to understand the relationship more fully between Audi AG and VW America before proposing to dismiss Audi AG from this case. Audi AG's motion to dismiss for lack of personal jurisdiction will be denied without prejudice to renewal following jurisdictional discovery, under the supervision of the Magistrate Judge assigned to the case.

## B. Rule 12(b)(6)

I address VW America's arguments for dismissal as to each type of claim (*e.g.*, implied warranty, fraud, etc.). Before I do so, I deal with three clean-up matters.

First, VW America mostly relies on general principles that cut across different states' laws. Unless otherwise noted, VW America does not argue that any particular point of law differs state-to-state. As a result, I discuss VW America's arguments for dismissal mostly in terms of New Jersey law or general principles.

Second, Plaintiffs, in their Opposition brief, state that they withdraw three of their state-law claims.[4] (Opp. at 2 n.5.) Having heard no opposition, I treat the statement in the brief as a voluntary dismissal and grant leave to dismiss those claims. *See* Fed. R. Civ. P. 41(a).

Third, VW America asks that all claims be dismissed on "group pleading" grounds, because the factual allegations of the Amended Complaint do not adequately distinguish among defendants. (VW Mot. at 6–7.) But, as the discussion on personal jurisdiction indicates, the entities here are intertwined, and more discovery is needed to determine the precise role of each. In such circumstances, there is no need to dismiss the complaint. *In re Volkswagen*

---

[4]     These claims are for negligent misrepresentation under Georgia law (Count 27), negligent misrepresentation under Oregon law (Count 80), and implied warranty under Oregon law (Count 81).

*Timing Chain Prod. Liab. Litig.*, Civ. No. 16-2765, 2017 WL 1902160, at *9
(D.N.J. May 8, 2017).

I turn to the main arguments.

### 1. Implied Warranty

VW America offers four reasons to dismiss the implied warranty claims:
(a) they are barred by the statute of limitations, (b) they are barred by the
NVLWs, (c) they do not allege that the cars fell below merchantability
standards, and (d) Plaintiffs fail to satisfy some states' privity requirements.
(VW Mot. at 7–18.) With one minor exception, these reasons do not justify
dismissal.

### a. Statute of Limitations

VW America moves to dismiss the implied warranty claims as untimely.
(VW Mot. at 7–11.) A court may dismiss a claim as untimely "only when the
statute of limitations defense is apparent on the face of the complaint."
*Wisniewski v. Fisher*, 857 F.3d 152, 158 (3d Cir. 2017). Plaintiffs do not contest
that their claims fall outside of the applicable limitation periods. Instead, they
argue that the statute of limitations be tolled based on fraudulent concealment
of the defect. (Opp. to VW at 10–11.) That doctrine tolls a claim when the
defendant concealed facts necessary for a plaintiff to discover he had a claim.
*Timing Chain*, 2017 WL 1902160, at *14; *see O'Keeffe v. Snyder*, 416 A.2d 862,
872 (N.J. 1980); *Lopez v. Swyer*, 300 A.2d 563, 567 n.2 (N.J. 1973). VW
America offers two reasons why the doctrine does not apply here, but neither is
persuasive.

First, VW America argues that two plaintiffs, who purchased *used*
vehicles, did not purchase their vehicles within the limitations period, which
began when the *original* owner purchased the vehicle. (VW Mot. at 9–11.) For
this argument, they rely on an affidavit from a VW America employee attesting
to VW America's "vehicle records" and state department of motor vehicle forms.
(*Id.*) Neither is appropriate to consider now, on a Rule 12(b)(6) motion. The
affidavit is plainly improper. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir.
2014). As for the DMV forms, while a court may take judicial notice of some

public records, *id.*, the forms are bare, and Plaintiffs may be able to argue for different inferences to be taken therefrom, so to draw conclusive facts from them is premature, *see S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999) (distinguishing between taking notice of existence of documents versus the facts or arguments asserted therein).

Next, VW America argues that the Amended Complaint fails to allege that VW America took affirmative steps to conceal the defect, as required for the doctrine to apply. (VW Mot. at 10–11.) But "a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense" like the statute of limitations. *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citation omitted). Here, "the allegations [do] not rule out the possibility that the statute of limitations should have been tolled." *Wiesniewski*, 857 F.3d at 158. The facts regarding VW America's affirmative actions will need to be developed in discovery.

### b. NVLW

VW America next argues that Plaintiffs did not experience any problems with the timing chain system during the implied warranty period, as limited by the NVLW. (VW Mot. at 12–14.) Plaintiffs respond that the Court should not enforce that limitation at this time because the Amended Complaint alleges that the NVLW is unconscionable. (Opp. to VW Mot. at 12–14.)

A plaintiff may avoid the durational limits of a warranty if allegations indicate that the warranty is unconscionable. *Timing Chain*, 2017 WL 1902160, at *11; *see also DeFrank v. Samsung Elecs. Am., Inc.*, Civ. No. 19-21401, 2020 WL 6269277, at *17 (D.N.J. Oct. 26, 2020). Plaintiffs must plead (1) substantive unconscionability, *i.e.*, the contract "involving an exchange of obligations so one-sided as to shock the court's conscience," and (2) procedural unconscionability, *i.e.*, "an inequality of bargaining power." *DeFrank*, 2020 WL 6269277, at *18 (citations omitted). Plaintiffs adequately allege both here. Courts have held that a warranty is substantively unconscionable when a car manufacturer knew "that class engines would fail after the end of the warranty

period but before the vehicle's expected useful life." *Gelis v. Bayerische Motoren Werke Aktiengesellschaft*, Civ. No. 17-7386, 2018 WL 6804506, at *18 (D.N.J. Oct. 30, 2018). Plaintiffs allege just that. (Am. Compl. ¶¶ 123, 132–33, 136.) Courts have held that a warranty is procedurally unconscionable when the manufacturer knew of the defect and concealed it while the consumer had no means to negotiate the warranty. *DeFrank*, 2020 WL 6269277, at *18 (collecting cases).[5] The same is alleged here. Because Plaintiffs plausibly allege that the NVLW is unconscionable, its durational limit cannot be invoked to bar their implied warranty claims at the motion to dismiss stage. Whether the NVLWs are truly unconscionable, as claimed, must await development in discovery.

### c. Merchantability

VW America argues that the implied warranty claims fail because the implied warranty of merchantability provides only for a minimum level of quality, and the fact that Plaintiffs drove their cars for years problem-free show that the cars met the requisite level of quality. (VW Mot. at 14–16.) "In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the general purpose for which it was manufactured and sold." *Argabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 484 (D.N.J. 2017) (citations omitted). As applied to cars, this means that the car must "provide safe, reliable transportation." *Nelson v. Nissan N. Am., Inc.*, 894 F. Supp. 2d 558, 567 (D.N.J. 2012) (citations omitted); *see also In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 112 (E.D. Mich. 2019) (collecting cases across jurisdictions). Plaintiffs allege that the defect presents a

---

[5]     The only binding case VW America relies on is *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 673 (3d Cir. 2002), where the Third Circuit noted that car purchasers do not necessarily lack bargaining power, because they have freedom to purchase other cars with different warranties or purchase an extended warranty. But *Werwinski* does not require rejection of Plaintiffs' unconscionability theory at this early stage because its discussion did not arise in the context of unconscionability. *See id.* (discussing whether the economic loss doctrine should apply when a plaintiff sues a car manufacturer in tort).

safety risk because it can cause the engine to lose power and thus the ability to accelerate, maintain speed, or brake. (Am. Compl. ¶ 6.) Plaintiffs have thus satisfied the Rule 12(b)(6) standard because they provide factual allegations sketching out how the defect renders the vehicle unsafe. *See Nelson*, 894 F. Supp. 2d at 567 (allegations of transmission failure are sufficient to state a claim).

### d. Privity

VW America argues that claims under California, Florida, Georgia, Illinois, New York, North Carolina, Ohio, and Washington law must be dismissed because those states require vertical privity. (VW Mot. at 16–18.) Vertical privity means that Plaintiffs must have purchased the product directly from the manufacturer, not a dealership. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (California law). Plaintiffs acknowledge the privity requirement but argue that most states recognize that a third-party beneficiary of the contract between the manufacturer and dealership, *i.e.*, the consumer, can still bring a claim. (Opp. to VW Mot. at 17.) Along the same lines, some states recognize that a dealership may act as an agent of the manufacturer such that the plaintiff's purchase from the dealership creates a "direct nexus" to the manufacturer. *Wilson v. Volkswagen Grp. of Am., Inc.*, Civ. 17-23033, 2018 WL 9850223, at *4 (S.D. Fla. Nov. 30, 2018) (citations omitted). While not all these states have precedent clearly endorsing such exceptions to the privity requirement, a persuasive consensus of courts has emerged to recognize the exceptions.[6] Moreover, it is basic contract law that third parties may, in certain circumstances, enforce a contract. *See* Restatement (Second) of Contracts § 302 (Am. Law Inst. 1979). Accordingly,

---

[6] *Wilson*, 2018 WL 9850223, at *4 (Florida); *Amin v. Mercedes-Benz USA, LLC*, 349 F. Supp. 3d 1338, 1356 (N.D. Ga. 2018) (Georgia); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983–85 (N.D. Cal. 2014) (California and North Carolina); *Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek Int'l Corp.*, 300 A.D.2d 1051, 1052 (N.Y. App. Div. 2002) (New York); *Bobb Forest Prods., Inc. v. Morbark Indus. Inc.*, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002) (Ohio); *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*, 831 P.2d 724, 730 (Wash. 1992) (Washington).

Plaintiffs plausibly are in privity with the manufacturers here because either they, as end-users, are the beneficiaries of the manufacturers' contracts with dealerships, or the dealerships can be said to act as agents for the manufacturer.[7] Again, this defense, whatever its merits, is unsuitable for adjudication on a Rule 12(b)(6) motion.

The exception, however, is Illinois. The Illinois Supreme Court has strictly enforced the privity requirement and refused to create exceptions. *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (collecting cases). In other words, the Illinois privity requirement, being categorical as a matter of law, may furnish a basis for a Rule 12(b)(6) dismissal.[8] *See Quitno v. Gen. Motors, LLC*, No. 18-cv-7598, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18, 2020). Accordingly, Count 36 will be dismissed.

\* \* \*

For the reasons above, the motion to dismiss the implied warranty claims will be denied except as to Count 36, which will be dismissed.

### 2. Express Warranty

VW America makes four arguments why the express warranty claims should be dismissed: (1) they are time-barred as to some Plaintiffs, (2) defects did not manifest during the warranty period, (3) the NVLWs do not cover the defects alleged, and (4) some Plaintiffs have not alleged that the NVLW was the basis for their bargain.

---

[7] VW America argues that certain Plaintiffs did not purchase their cars from authorized dealerships, so they are too far removed to be third party beneficiaries. (VW Mot. at 18.) But those are facts outside the Amended Complaint. VW America also argues that Plaintiffs must allege more facts to show a third-party beneficiary or agency relationship. But one can infer the manufacturers must have agreements with dealerships, and no additional details are needed at this time. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) (a plaintiff need not plead a prima facie case, *i.e.*, every element of a claim, but only "enough facts to raise a reasonable expectation that discovery will reveal evidence of each necessary element").

[8] The cases Plaintiffs point to (Opp. to VW Mot. at 18 n.25) arose under the MMWA and reached a different result under Illinois law. *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029–30 (Ill. 1988).

### a. Statute of Limitations

VW America argues that claims under California, Colorado, Massachusetts, New York, North Carolina, and Ohio law are time-barred because, under those states' law, the limitations period for claims arising from NVLW-type warranties runs from the date of delivery—regardless of when the defect is discovered. (VW Mot. at 19–20.) *See, e.g., Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 323–24 (1st Cir. 2008). But VW America overlooks that, despite this strict accrual rule, tolling may still be available under the separate fraudulent concealment doctrine. *E.g., New Eng. Power Co. v. Riley Stoker Corp.*, 477 N.E.2d 1054, 1059 (Mass. Ct. App. 1985); *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 509–10 (S.D. Ohio 2012). Indeed, VW America cites no authority for the proposition that tolling is unavailable for the express warranty claims, so any such argument is forfeited. Because Plaintiffs have a viable fraudulent concealment theory, I cannot dismiss the express warranty claims on the pleadings. (*See* Section III.B.1.a, *supra.*)

### b. Warranty Period

VW America argues that an express warranty claim must fail if, as here, the defect did not become apparent during the warranty period. (VW Mot. at 20–25.) But, as I explained, Plaintiffs put forward enough allegations to raise an inference that the NVLW is unconscionable, so the fact that the engines did not fail during the warranty period is not fatal at this stage. (*See* Section III.B.1.b, *supra.*) *See also Timing Chain*, 2017 WL 1902160, at *11.

### c. NVLW Coverage

VW America argues that the express warranty claims fail because the NVLWs do not cover the design defects which form the basis of Plaintiffs' claims. (VW Mot. at 25–27.) Rather, the NVLWs "cover[] any repair or replacement to correct a defect in manufacturer's material and workmanship." (NVLW at 7; *see also* Am. Compl. ¶ 11.)

The Third Circuit interpreted near-identical warranty language in *Coba v. Ford Motor Co.*, 932 F.3d 114 (3d Cir. 2019), *as amended* (July 26, 2019). The

Court held that the terms "material and workmanship" do not encompass design defects. *Id.* at 121. Based on the ordinary meaning of the terms, "defects in 'workmanship' and 'materials' are flaws pertaining to the construction or manufacture of a product, while defects in 'design' are shortcomings that arise in the plans for a product's creation." *Id.* In other words, "a 'design' defect is a flaw inherent in the product's intended operation and construction." *Id.* Applying that understanding, the Court held that claims arising from a car manufacturer's use of certain fuel-tank coatings were not covered by the warranty because "[t]he fundamental nature of the defect relates to the overall plan of construction and operation of the fuel tanks" and all fuel-tanks suffered from the problem. *Id.* at 123 (quotation marks and citation omitted).

Whether *Coba* requires dismissal of the claims here is a close call. On one hand, the thrust of Plaintiffs' claims is aimed at the design of the timing chain system. The Amended Complaint goes into detail about how the timing chain system fails and which components may be the culprit. (Am. Compl. ¶¶ 61–78.) Further, problems with the timing chain affect a large swath of cars. (*Id.* ¶ 111.) These allegations suggest a design defect claim because Plaintiffs take issue with how the timing chain operates and do not strongly suggest that anything in the manufacturing process is to blame. *See Coba*, 932 F.3d at 123.

*Coba* affirmed my own decision rejecting a design defect claim on just these grounds, but that decision was in the context of a motion for summary judgment. *Coba v. Ford Motor Co.*, Civ. No. 12-1622, 2016 WL 5746361, at *8 (D.N.J. Sept. 30, 2016). At the motion to dismiss stage, the preference in this District has been to let Plaintiffs develop facts in discovery to flesh out the precise source of the problem and their theory of the case. *In re Subaru Battery Drain Prods. Liab. Litig.*, Civ. No. 20-3095, 2021 WL 1207791, at *12 (D.N.J. Mar. 31, 2021); *Timing Chain*, 2017 WL 1902160, at *12; *Alin v. Am. Honda Motor Co.*, Civ. No. 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 21, 2010). That is, the Amended Complaint identifies ways in which the timing chain system does not work. But the Amended Complaint does not pinpoint whether

that malfunction is only a consequence of design choices or, as perhaps discovery would reveal, a consequence of some problem in the manufacturing process. For example, the Amended Complaint alleges that one part, the ratchet pawl, fails. (Am. Compl. ¶ 67.) But the Amended Complaint does not say whether the ratchet pawl fails because of how it is designed or how it is manufactured. Because it may be the latter, more facts are necessary, and dismissal is inappropriate. *Timing Chain*, 2017 WL 1902160, at *12.

VW America responds that the Amended Complaint does not adequately allege that the timing chain system's flaw stems from the manufacturing process. (VW Mot. at 27.) True, some courts have required "more specific allegations to the effect that . . . failures could have been caused by a flaw in . . . [the] manufacturing process." *Garcia v. Chrysler Grp., LLC*, 127 F. Supp. 3d 212, 227 (S.D.N.Y. 2015). But principles of Rule 12(b)(6) counsel that the better course is to deny the motion to dismiss. On a Rule 12(b)(6) motion, a court must keep in mind the nature of the plaintiff's claim and asymmetries in access to relevant information. *See Garrett v. Wexford Health*, 938 F.3d 69, 92–93 (3d Cir. 2019). We cannot expect car owners to know the precise source of problems with their cars, *i.e.*, whether a manufacturer purposefully designed a car to function in a certain way or whether something in the manufacturing process affected functionality. Those facts are in the hands of Defendants, so the lack of specific allegations along those lines should not be fatal.

Moreover, whether the timing chain system's defect is one of design or manufacturing is not just a factual, but a legal conclusion. A plaintiff is not bound by the legal theories in a complaint, and they can change with discovery. *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam) ("Federal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); *Alin*, 2010 WL 1372308, at *4–5 (complaint did not require dismissal because the court need not adopt, at the pleading stage, any particular characterization of the claim). Accordingly, it is plausible (though by no means certain) that

discovery will reveal the manufacturing process to be the source of the timing chain system, Plaintiffs do not exclusively press a design defect theory which would not be covered by the NVLW. *Timing Chain*, 2017 WL 1902160, at *12.

### d. Basis of the Bargain

VW America argues that a plaintiff must allege that an express warranty was "part of the basis of the bargain" of his/her purchase, yet Plaintiffs who purchased *used* cars fail to allege that they purchased their cars while the NVLW was in effect. (VW Mot. at 27.) Under New York and Illinois law, which apply to the relevant claims, an express warranty requires "an affirmation of fact or promise" that "becomes part of the basis of the bargain between the parties." *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 905 (N.D. Ill. 2013); *accord Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 473 (S.D.N.Y. 2010). Plaintiffs expected that if, pursuant to the NVLW, VW America discovered a defect during the warranty period—and VW America allegedly did—then VW America would repair the defect. VW America, however, did not perform such repairs, and now Plaintiffs have defective vehicles. Under this theory, Plaintiffs thus relied on the NVLW *having been* complied with, even if it expired prior to their purchase. VW America points to no New York or Illinois case foreclosing that theory.

\* \* \*

For the reasons above, the motion to dismiss the express warranty claims will be denied.

### 3. MMWA

VW America moves to dismiss the MMWA claim on the ground that the statute does not allow claims by fewer than 100 named plaintiffs. (VW Mot. at 28–29.) The MMWA is a federal statute that provides a federal cause of action for consumers to assert breach of warranty claims, by incorporation of state law. *DeFrank*, 2020 WL 6269277, at *17 (citing 15 U.S.C. § 2310(d)(1)). The statute allows a consumer to bring a claim "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3)." § 2310(d)(1).

Paragraph 3, in turn, provides that "[n]o claim shall be cognizable" if, among other things, "the action is brought as a class action, and the number of named plaintiffs is less than one hundred." § 2310(d)(3)(C).

VW America contends that Plaintiffs' claim flunks the paragraph 3 requirement because there are fewer than 100 *named* plaintiffs here. Plaintiffs respond that CAFA provides a basis for jurisdiction that is an "alternative" to the MMWA and does not require 100 *named* plaintiffs. (Opp. to VW Mot. at 25.) CAFA grants federal courts jurisdiction over class actions when (1) the parties are minimally diverse, (2) the *class* consists of at least 100 members, and (3) the amount in controversy exceeds $5 million. *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)). The issue presented, then, is whether this Court has jurisdiction over Plaintiffs' MMWA claim in light of the 100-named-plaintiffs requirement, considering its interplay with CAFA. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 402 (3d Cir. 2004) (characterizing the MMWA's 100-named-plaintiffs requirement as jurisdictional).

The Third Circuit has not addressed this issue. Until recently, no other Court of Appeals had either, at least precedentially. In that silence, a consensus emerged in this District that CAFA provided a way around the MMWA's 100-named-plaintiff requirement. *E.g.*, *McCalley v. Samsung Elecs. Am., Inc.*, Civ. No. 07-2141, 2008 WL 878402, at *4–5 (D.N.J. Mar. 31, 2008) (Greenaway, J.); *McGee v. Cont'l Tire N. Am., Inc.*, Civ. No. 06-6234, 2007 WL 2462624, at *4 (D.N.J. Aug. 27, 2007). Things changed last year when the Ninth Circuit became the first Court of Appeals to precedentially hold that CAFA does not provide an alternative basis for jurisdiction in MMWA class actions with fewer than 100 named plaintiffs. *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020). Following *Floyd*, the consensus in this District eroded. Every court to address *Floyd* has followed it. *Subaru Battery*, 2021 WL 1207791, at *20; *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 885 (D.N.J. 2020). Faced with no binding authority and a shifting landscape of

non-binding authority, I analyze the statute myself, guided by the courts that have done so before me.

I begin with the plain language of the MMWA. *BP P.L.C. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1537 (2021). Plaintiffs do not dispute that, because this is an MMWA action brought in a "district court of the United States," it is "subject to paragraph (3)," which requires that this action, "as a class action," have more than 100 "named plaintiffs." § 2310(d)(1)(B), (3)(C). Although Plaintiffs do not raise the argument, plaintiffs in other cases have tried to skirt paragraph 3's requirements by arguing that their case is one brought "in any court of competent jurisdiction in any State" under subsection (A), such that paragraph 3 does not apply. *E.g.*, *Chapman v. Gen. Motors, LLC*, --- F. Supp. 3d ----, ----, No. 19-CV-12333, 2021 WL 1286612, at *24–25 (E.D. Mich. Mar. 31, 2021) ("'[A]ny court of competent jurisdiction,' is broad—there is no indication that it is restricted to only state courts, or conversely that federal courts are excluded." (quoting § 2310(d)(1)(A))). That argument is unpersuasive because it renders the subsection referring to federal courts superfluous. Courts avoid interpreting statutes in ways that render language or parts of the statutory scheme superfluous. *Aristy-Rosa v. Att'y Gen. U.S.*, 994 F.3d 112, 166 n.4 (3d Cir. 2021); *City of Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021). Interpreting "court of competent jurisdiction" to include federal courts would do just that; if "any" court is covered, then subsection (B), referring to "district court[s] of the United States" is unnecessary. Moreover, pulling federal courts into subsection (A) would nullify the limits on federal jurisdiction which Congress sought to impose via paragraph 3. I hold that this is not a case under subsection (A), so the 100-named-plaintiffs requirement is in play. *E.g.*, *Powell*, 502 F. Supp. 3d at 885.

The question becomes whether CAFA provides an escape hatch from that requirement. In other words, did CAFA, the later-enacted statute, impliedly repeal or modify the MMWA's requirements? Implied repeals are generally disfavored. *Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323

(2020). Rather, "[w]hen confronted with two Acts of Congress allegedly touching on the same topic, this Court . . . strive[s] 'to give effect to both.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)).

There is a way to harmonize the two statutes: CAFA does not modify the MMWA's requirements because CAFA applies to suits brought under diversity jurisdiction, which MMWA suits are not. The MMWA creates a federal cause of action, so federal courts hearing MMWA claims are exercising their federal-question jurisdiction. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377, 380 (2012) (when a statute creates a federal cause of action, the statute furnishes federal-question jurisdiction, even if it also provides that claims can be brought in state court). In contrast, CAFA modifies jurisdictional requirements in diversity-jurisdiction cases so that more class actions based only on state law can be brought in federal court. *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014); *see also* S. Rep. No. 109-14, at 10 (2005). Because an MMWA claim creates a federal-question case, CAFA does not apply to that claim. Indeed, there is nothing in CAFA's legislative history indicating that Congress sought to modify class-action requirements for class actions pressing *federal* claims. *Floyd*, 966 F.3d at 1066. In short, CAFA and MMWA cases have distinct requirements. Plaintiffs do not satisfy the MMWA requirements, so their MMWA claims must be dismissed.

The motion to dismiss the MMWA claims (Counts 8, 15, 22, 30, 37, 43, 49, 56, 62, 69, 76, 83, 89, and 96) will be granted.

### 4. Fraud

Plaintiffs bring fraud claims, under either common law or a state statute, depending on how the particular state recognizes fraud claims. VW America identifies flaws underlying all or most fraud claims as well as flaws specific under individual states' laws.

### a. Cross-Cutting Arguments

VW America identifies grounds for dismissal applicable to all fraud claims, arguing that Plaintiffs' allegations of (i) affirmative representations,

(ii) omissions, (iii) pre-sale knowledge, and (iv) grounds for equitable relief are insufficient.

### i. Affirmative Misrepresentations

VW America argues that Plaintiffs' fraud claims based on affirmative representations fail because the statements are not actionable, and Plaintiffs do not plead causation or reliance. (VW Mot. at 30–35.) Fraud-based claims are subject to a heightened pleading standard. Fed. R. Civ. P. 9(b); *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 272 (3d Cir. 2006). Plaintiffs must plead "the who, what, when, where, and how of the events at issue." *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (citation omitted). Many of Plaintiffs' allegations do not meet this standard because they simply allege that "Defendants" made "misrepresentations." (*E.g.*, Am. Compl. ¶¶ 129–30.) *See Frederico v. Home Depot*, 507 F.3d 188, 201 (3d Cir. 2007) (Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements" (citation omitted)). Plaintiffs' more particular allegations that "Defendants" promoted the "high quality," "reliability," "superior performance," and "safety" of their vehicles (*e.g.*, Am. Compl. ¶¶ 142, 457) fare no better because they "constitute merely vague and ill-defined opinions or puffery" and "are not assurances of fact and thus do not constitute misrepresentations" for purposes of a fraud claim. *Argabright*, 201 F. Supp. 3d at 608 (quotation marks and citation omitted); *see also, e.g., Tatum v. Chrysler Grp. LLC*, Civ. No. 10-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (car manufacturer's advertising claims that vehicles were "reliable" and "durable" were not affirmative misrepresentations).

That leaves Plaintiffs with only a few particularized allegations of affirmative misrepresentations. These remaining allegations stem from alleged misrepresentations in the maintenance schedules and warranty booklets that came with the cars. For example, the maintenance schedules and warranty booklets allegedly stated that the timing chain needed replacing every 120,000–130,000 miles. (Am. Compl. ¶ 10, Ex. C at 4.) The maintenance schedules and warranty booklets thus did not accurately represent that, as Defendants knew,

the timing chain would fail far earlier in a vehicle's lifetime. (*Id.* ¶ 15.) Similarly, some maintenance schedules listed parts that would need to be replaced but never listed the timing chain. (*Id.*, Ex. C.)

Assuming that these qualify as affirmative misrepresentations, under New Jersey law Plaintiffs must plead that they suffered a loss "as a result of" the misrepresentations in the materials. *Dugan v. TGI Fridays, Inc.*, 171 A.3d 620, 637 (N.J. 2017). Other states require more: Plaintiffs must have justifiably *relied* on the misrepresentations to make the purchase. *E.g.*, *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438–49 (Pa. 2004). Still further, Plaintiffs' allegations of causation and reliance must satisfy Rule 9(b).

They do not. Plaintiffs merely plead in fact-free fashion that they "relied" on "misrepresentations" "at the time of purchase." (Am. Compl. ¶ 129.) Those are legal conclusions not entitled to credit. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 526–27 (D.N.J. 2008). There are no factual allegations, then, sketching out the relationship between the misrepresentations and Plaintiffs' losses. For example, Plaintiffs do not allege "at what point—if ever—each Plaintiff was exposed to one or more of the statements." *Id.* Plaintiffs must "inject precision or some measure of substantiation into" their fraud claims, *Frederico*, 507 F.3d at 200, and that requires facts to show how individual plaintiffs considered the maintenance schedules and warranty booklets. *E.g.*, *Dewey*, 558 F. Supp. 2d at 527; *Luppino v. Mercedes-Benz USA, LLC*, Civ. No. 09-5582, 2010 WL 3258259, at *6 (D.N.J. Aug. 16, 2010). Because they do not, fraud claims relying on affirmative misrepresentations will be dismissed.

### ii. Omissions

VW America moves to dismiss claims based on a failure to disclose the timing chain defect because Plaintiffs do not allege that, prior to their purchase, they were exposed to "any advertisements, statements or literature from Defendants that should have contained the allegedly omitted disclosure." (VW Mot. at 36.) As a result, Plaintiffs cannot show causation or reliance.

VW America misapprehends the standard:

> [P]laintiffs need not identify specific samples of representations on which they relied which did not contain the allegedly omitted information, a standard which technically might encompass every statement of the defendants. Rather, a plaintiff typically need only allege that the defendant failed to disclose material information, and that omission induced the plaintiff to enter into a transaction.

*DeFrank*, 2020 WL 6269277, at *7 (cleaned up). Plaintiffs have done just that. (*E.g.*, Am. Compl. ¶ 39.) As a result, their fraud-by-omission claims are adequately alleged. *See Dewey*, 558 F. Supp. 2d at 527–28 (omissions claims survived while affirmative misrepresentation claims did not because the standards differed).

### iii.    Pre-Sale Knowledge

VW America asserts that all Plaintiffs' fraud claims require allegations that Defendants had knowledge of the alleged defect at the time of sale. (VW Mot. at 40–41.) VW America acknowledges that Plaintiffs have included allegations attempting to speak to pre-sale knowledge, but VW America says that they are inadequate. (*Id.* at 41–49.)

VW America is correct that fraud claims usually require knowledge, but allegations of knowledge are only subject to a plausibility—not particularity— standard. *DeFrank*, 2020 WL 6269277, at *12; *see also* Fed. R. Civ. P. 9(b) ("[K]nowledge[] and other conditions of a person's mind may be alleged generally."). VW America also overlooks that, in assessing pre-sale knowledge under this standard, courts consider "the totality of allegations . . . collectively" and do not, as VW America's brief does, attack each allegation one-by-one. *Ponzio*, 447 F. Supp. 3d at 227.

Under the correct standard, Plaintiffs' allegations suffice. The Amended Complaint marshals multiple sources to permit an inference of knowledge: (1) service bulletins over the past decade describing timing chain issues, (2) consumer complaints made to regulators and dealerships, and (3) a redesign of the chain. (Am. Compl. ¶¶ 68, 89–119.) VW America quibbles with details about these sources, going through each individually in an attempt to show it does not speak directly to every plaintiff's model or purchase. (VW Mot.

at 41–49.) But courts assess such allegations at a higher level, asking whether, together, they can establish a general knowledge. *Ponzio*, 447 F. Supp. 3d at 228. Plaintiffs' allegations allow an inference that Defendants knew the timing chain, at least generally, was a problem. That is all they need for now.

### iv.   Equitable Relief

VW America argues that Plaintiffs cannot seek equitable relief for their fraud or consumer-protection claims without pleading that there is no adequate remedy at law. (VW Mot. at 38–40.) But, as a general matter, courts only dismiss *claims* not *remedies* at this early stage. *Wright-Phillips v. United Airlines, Inc.*, Civ. No. 20-14609, 2021 WL 1221111, at *20 (D.N.J. Apr. 1, 2021); *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402, 424–25 (D.N.J. 2015). We still need to decide, *e.g.*, liability before the viability of injunctive relief comes into play. *Riddell*, 121 F. Supp. 3d at 424–25. I will not dismiss Plaintiffs' prayers for relief at this time.

### b.  State-Specific Arguments

VW America next makes arguments specific to individual states' requirements for a fraud claim.

### i.   Fraudulent Concealment under Florida, Georgia, Illinois, Massachusetts, New Jersey, New York, and Ohio Law

For fraudulent concealment claims under Florida, Georgia, Illinois, Massachusetts, New Jersey, New York, and Ohio law, VW America argues that those states either do not impose a duty to disclose on remote manufacturers or distributors, or Plaintiffs do not allege facts establishing a duty to disclose. (VW Mot. at 50–52.) Under all those states' laws, however, a plaintiff pleads a fraudulent concealment claim when (1) the defendant allegedly knew of a safety defect and failed to disclose it, or (2) the defendant made a partial, misleading disclosure. *Timing Chain*, 2017 WL 1902160, at *19–20 (collecting cases). Plaintiffs have alleged as much, so their allegations suffice for these states' duty-to-disclose elements. (*See* Sections III.B.1.c, III.B.4.a.i, *supra*.) *See Majdipour v. Jaguar Land Rover N. Am., LLC*, Civ. No. 12-07849, 2013 WL 5574626, at *17–18 (D.N.J. Oct. 9, 2013).

### ii. Missing Necessary Elements under Massachusetts, Michigan, New Jersey, North Carolina, and Ohio Law

For certain states, VW America argues that Plaintiffs fail to plead additional, necessary elements specific to those states.

Under Massachusetts law, VW America argues that there must be a closer relationship between the parties than that here, where the dealerships intervene between manufacturer and purchaser. (VW Mot. at 55.) The Massachusetts courts have not defined how closely involved the plaintiff and defendant must have been. They have said that "[p]rivity is not required," but the relationship must be more than "minor," "insignificant," or "trivial." *Reisman v. KPMG Peat Marwick LLP*, 787 N.E.2d 1060, 1078 (Mass. Ct. App. 2003) (citation omitted). As explained, the precise relationship between the manufacturing Defendants here and the dealerships is not yet clear. Plaintiffs do not and cannot know what materials or direction Defendants provided to the dealerships. So dismissal in advance of discovery is premature. *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 417–18 (S.D.N.Y. 2017) (allowing Massachusetts claim to proceed even when plaintiffs purchased cars from dealerships).

Under Michigan law, VW America argues that "conduct specifically authorized under laws administered by a regulatory board or officer" is exempt from liability. (VW Mot. at 53–54 (quoting Mich. Comp. Laws § 445.904(1)).) But VW America has not pointed to any laws that "specifically" "authorized" its conduct, *i.e.*, using a specific timing chain system and failing to disclose its known flaws. Yet VW America bears the burden of showing this exemption's applicability, and Michigan courts scrutinize the relied-upon statute vis-à-vis the conduct to ensure that defendants cannot escape liability simply by claiming that they are subject to a regulatory agency. *See In re Gen. Motors Air Conditioning Mktg. & Sales Pracs. Litig.*, 406 F. Supp. 3d 618, 642 (E.D. Mich. 2019); *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 520–21 (Mich. 2007). Absent a more specific argument, VW America's invocation of the exemption fails.

Under New Jersey law, VW America argues that Plaintiffs have not pleaded an "ascertainable loss" because the allegedly defective component outperformed its warranty period. (VW Mot. at 55–56.) True, "[t]here are federal cases in New Jersey which have limited [New Jersey Consumer Fraud Act or "NJCFA"] claims to defects which occur within the warranty period." *DeFrank*, 2020 WL 6269277, at *10. But courts have still agreed that safety hazards, like those alleged here, can give rise to a NJCFA claim "regardless of the duration of the warranty." *Id.* at *11. In addition, in cases where, as here, plaintiffs allege that defendants concealed a defect and limited the warranty accordingly, the plaintiffs have adequately pleaded a NJCFA claim. *Maniscalco v. Bro. Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 501–02 (D.N.J. 2009). Also significant is that those cases dismissing NJCFA claims have done so by concluding that plaintiffs suffered no damages. *Id.* at *10. Here, Plaintiffs allege a diminution in value and costs of replacements, damages sufficient to satisfy the requirement of an ascertainable loss. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 446 (D.N.J. 2012). I reject VW America's argument.

Under North Carolina law, VW America argues that Plaintiffs must plead "egregious or aggravating circumstances." (VW Mot. at 52–53 (quoting *Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012)).) "Egregious or aggravating circumstances," however, signifies only that the claim cannot be based on a mere breach of contract. *Ellis*, 699 F.3d at 787 (citing *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 910–11 (N.C. Ct. App. 2002)). "Aggravating circumstances include conduct of the breaching party that is deceptive." *Id.* (quoting *Becker*, 561 S.E.2d at 911). Plaintiffs have alleged deceptive practices in that Defendants failed to disclose a defect within their knowledge. *Ferro v. Volvo Penta of the Ams., LLC*, 731 F. App'x 208, 210 (4th Cir. 2018) (per curiam).

Under Ohio law, VW America argues that an alleged defect that manifests after the warranty period cannot support a claim. (VW Mot. at 55.) The only case VW America cites for this proposition, *Eisert v. Kantner*, No. 2-10-13, 2010

WL 3836205, at *6–7 (Ohio Ct. App. Oct. 4, 2010), is inapposite because it does not involve allegations, like those here, that defendants concealed a defect and limited the warranty accordingly. Nor did *Eisert* "confront the issue of safety concerns and is therefore not persuasive on this point." *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 871 (S.D. Ohio 2012). Given the allegations present here that were not addressed in *Eisert*, I decline to conclude that *Eisert* compels dismissal of Plaintiffs' Ohio claims.

### iii. Availability of Class-Wide Relief under Colorado, Georgia, and Ohio Law

Under Colorado and Georgia law, VW America argues that Plaintiffs cannot seek monetary relief on a class-wide basis. (VW Mot. at 56–57 (citing Colo. Rev. Stat. § 6-1-113; Ga. Code Ann. § 10-1-399).) Under Ohio law, VW America argues that Plaintiffs can only maintain a class action if they satisfy certain pre-suit requirements, which they have not. (*Id.* at 57–59 (citing Ohio Rev. Code § 1345.09(B)).) These arguments involve a complicated issue: whether a state law's prohibitions or limitations on proceeding as a class action applies in *federal* court, where Federal Rule of Civil Procedure 23 governs class actions. *Compare Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1337 (11th Cir. 2015) (analyzing the Supreme Court's fractured decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), to hold that Rule 23 displaces a state's contrary bar), *with In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416–17 (D.N.J. 2018) (disagreeing with *Lisk*'s analysis of *Shady Grove* and holding). VW America's opening brief does not even mention *Shady Grove*. This is a thorny issue requiring more development. That development will occur in connection with class certification. Even if Plaintiffs cannot maintain their Colorado, Georgia, Ohio claims as a class, they will likely revert to maintaining them individually. It is thus unnecessary to decide this issue now, so I decline to dismiss the Colorado, Georgia, and Ohio claims. *Timing Chain*, 2017 WL 1902160, at *24.

### iv. Applicability of the Economic Loss Rule under Pennsylvania and Florida Law

Under Pennsylvania and Florida law, VW America argues that the economic loss rule bars claims for common-law fraudulent concealment that assert only economic harm. (VW Mot. at 59–60.) More recent authority suggests that the rule only applies to negligence claims under Pennsylvania law. *Earl v. NVR, Inc.*, 900 F.3d 310, 313 (3d Cir. 2021); *Knight v. Springfield Hyundai*, 81 A.3d 940, 951–52 & n.9 (Pa. Super. Ct. 2013). Regardless, the rule does not apply when fraud is extrinsic to the contract or fraud induced the plaintiff to enter a contract. *Timing Chain*, 2017 WL 1902160, at *17. By alleging that Defendants fraudulently concealed the defect, Plaintiffs' allegations cross the hazy line into fraud-in-the-inducement claims. *Id.*

### v. Timeliness of Claims under California, Florida, Ohio, and Oregon Law

VW America argues that fraud claims under California, Florida, Ohio, and Oregon law are all untimely. But those claims' timeliness turns on when precisely the defect was discovered and the nature of Defendants' alleged fraudulent concealment. *See Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 882 (Cal. 2013); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 543 (C.D. Cal. 2012); *Farmers Ins. Exch. v. First Choice Chiro. & Rehab.*, 2014 WL 3591558, at *12 (D. Or. July 18, 2014); *Ponzio*, 447 F. Supp. 3d at 251. It is thus premature to dismiss claims as untimely. (Section III.B.1.a, *supra.*)

\* \* \*

For the foregoing reasons, VW America's motion to dismiss the fraud claims is granted to the extent those claims rely on affirmative misrepresentations, but the motion is otherwise denied.

## 5. Negligent Misrepresentation

VW America puts forward several grounds to dismiss certain negligent misrepresentation claims.

First, VW America argues that, under Illinois, Florida, and California law, claims for negligent misrepresentation are barred by the economic loss rule.

(VW Mot. at 61.) But "those states allow claims to proceed when the tort claim is based on conduct that is either independent of a contract or where there is a risk of personal injury." *Timing Chain*, 2017 WL 1902160, at \*21 (collecting cases). Plaintiffs have alleged as much here.

Second, VW America argues that, under Colorado, North Carolina, Ohio, and California law, a negligent misrepresentation claim cannot be based on an omission. (VW Mot. at 62.) However, Plaintiffs plead that Defendants misrepresented the need to repair the timing chain in the maintenance schedules and warranty booklets. (Section III.B.4.a.i, *supra*.) Defendants do not raise reliance or causation problems that would prevent Plaintiffs from relying on these misrepresentations for a negligent misrepresentation claim.

Third, VW America argues that, under New Jersey and Washington law, there is no duty to disclose that can form the basis of a negligent misrepresentation claim unless disclosure is necessary to make a previous statement true or the parties share a special relationship. (VW Mot. at 64.) Plaintiffs allege that defendants made misrepresentations in maintenance schedules and warranty booklets but did not amend them despite their knowledge of the defect. Thus, Plaintiffs' allegations satisfy the rule VW America puts forward.

Fourth, VW America argues that, under Massachusetts law, Plaintiffs have not adequately pleaded reliance. (VW Mot. at 64.) But to the extent Plaintiffs' claims negligent misrepresentation claims rely on omissions, they adequately plead reliance. (*See* Section III.B.4.a.ii, *supra*.) In any event, Massachusetts law leaves reliance, once pled, to the jury. *First Marblehead Corp. v. House*, 473 F.3d 1, 11 (1st Cir. 2006) (citing *Nota Constr. Corp. v. Keyes Assocs.*, 694 N.E.2d 401, 405 (Mass. Ct. App. 1998)).

Finally, VW America argues that, under California law, the negligent misrepresentation claim is untimely. (VW Mot. at 65.) Again, timeliness depends on the time of discovery, Cal. Code Civ. P. § 338(d), which cannot be decided now. (Section III.B.1.a, *supra*.)

VW America's motion to dismiss the negligent misrepresentation claims will be denied.

### 6. Unjust Enrichment

VW America puts forward several reasons to dismiss the unjust enrichment claims.

First, VW America argues that Plaintiffs cannot pursue unjust enrichment claims, which are equitable, without showing that they lack an adequate legal remedy. (VW Mot. at 65–66.) Similarly, VW America argues that Plaintiffs cannot pursue unjust enrichment claims when they have an express contract. (*Id.* at 68–69.) But Plaintiffs may plead unjust enrichment claims in the alternative to their claims at law. *Gap Props., LLC v. Cairo*, Civ. No. 19-20117, 2020 WL 7183509, at *4 (D.N.J. Sept. 17, 2020) (citations omitted); *see also Timing Chain*, 2017 WL 1902160, at *22.

Second, VW America argues that some of the unjust enrichment claims are untimely. (VW Mot. at 67–68.) Again, deciding timeliness is premature. (Section III.B.1.a, *supra*.)

Third, VW America argues that some states do not recognize unjust enrichment claims by purchasers from third-party entities because those purchasers did not confer a direct benefit upon the manufacturer-defendant. (VW Mot. at 67–68.) Similarly, VW America argues that New Jersey requires a direct relationship between the parties. (*Id.* at 70.) But the precise nature of the benefit here and relationships underlying it requires factual development. *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) ("The critical inquiry is whether the plaintiff's detriment and the defendant's benefit are related to, and flow from, the challenged conduct."). That is, the nature of the dealerships and manufacturers' relationship is not yet clear. In any event, "Defendant benefited, at Plaintiffs' expense, when they sold Plaintiffs a vehicle that would not operate properly until the end its purported usual lifespan." *Timing Chain*, 2017 WL 1902160, at *22.

Finally, VW America argues that the unjust enrichment claims fail because they are predicated on the fraud conduct, which VW America views as

inadequately alleged. (VW Mot. at 69.) I disagree and find some fraud allegations plausible, so this argument fails. (Section III.B.4.a.ii, *supra*.)

For those reasons, the motion to dismiss the unjust enrichment claims will be denied.

## IV. CONCLUSION

For the reasons set forth above, Audi AG's motion to dismiss for lack of personal jurisdiction is denied without prejudice to renewal following jurisdictional discovery. VW America's motion to dismiss is granted as to the MMWA claims, fraud claims based on affirmative misrepresentations, implied warranty claims under Illinois and Oregon law, and negligent misrepresentation claims under Georgia and Oregon law. The motion is otherwise denied.

A separate order will issue.

Dated: June 25, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**